## UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| KAISER GROUP INTERNATIONAL, INC., *et al.,* | : | Case No. 00-2263 (MFW) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | |
| KAISER INTERNATIONAL, INC., *et al.,* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Adv. No. 01-928 (MFW) |
| NOVA HUT a.s. and INTERNATIONAL FINANCE CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## STATEMENT AND MOTION IN SUPPORT OF APPEAL OR GRANTING LEAVE TO APPEAL OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004, OR ALTERNATIVELY A BILL OF EQUITABLE DISCOVERY, DIRECTING EXAMINATION OF, AND PRODUCTION OF DOCUMENTS BY THE INTERNATIONAL FINANCE CORPORATION, NOVA HUT, AND RELATED PARTIES

### INTRODUCTION

This appeal, indeed this case, is about discovery denied. The matters involved have been before the Bankruptcy Court, the District Court and the Court of Appeals for more than six years, but the Debtors have not had discovery. This appeal may be the last chance to correct that injustice.

For more than six years, the Debtors and one of their nondebtor subsidiaries, have been in a dispute with Nova Hut a.s. ("Nova Hut") and the International Finance Corporation (the "IFC"). On numerous occasions, they have sought discovery of a kind that is a fixture of present

day federal practice and has been a basic element of bankruptcy practice for almost a century. Each time Nova Hut and the IFC have resisted with vigor and determination and no discovery has occurred.

Most recently, the Debtors filed a motion for An Order Pursuant to Federal Rule of Bankruptcy Procedure 2004, or Alternatively a Bill of Equitable Discovery, Directing the Examination of, and Production of Documents by the International Financial Corporation, Nova Hut and Related Parties (the "Discovery Motion"). On June 1, 2007, the Bankruptcy Court entered an order denying the Discovery Motion (the "Discovery Order"), and it is from this denial that the Debtors appeal. A copy of the Discovery Order is attached hereto as **Exhibit "A"** and incorporated by reference herein. The appeal is taken as of right from the Discovery Order pursuant to 28 U.S.C. § 158(a)(1) or, in the alternative, leave to appeal is hereby requested pursuant to 28 U.S.C. § 158(a)(3).

## I.     FACTS NECESSARY TO AN UNDERSTANDING OF THE QUESTIONS TO BE PRESENTED ON APPEAL.

The Mini-Mill. The underlying dispute has its origin in the construction of a mini-mill by Kaiser Netherlands, a non-debtor subsidiary of the Debtors, for Nova Hut in the Czech Republic, and the failure of Nova Hut to pay the balance due on the construction contract. The Debtors provided certain financial support for the project. The IFC provided financial accommodations to, and was directly involved in the affairs of, Nova Hut. There are indications that the IFC had other relationships with Nova Hut, but the Debtors have been unable to investigate them.

Debtors. Kaiser Group International, Inc. (formerly known as ICF Kaiser International, Inc.) and a number of affiliates (together, the "Debtors") filed a pre-packaged bankruptcy case on June 9, 2000, and their plan of reorganization was confirmed and became effective on December 18, 2000. During the bankruptcy case, on June 9, 2000, Nova Hut and the IFC each

-2-

filed proofs of claim against the Debtors and, later, the Debtors filed an adversary proceeding against each. Nova Hut and the IFC ultimately filed motions to withdraw their proofs of claim, which were granted over the objection of the Debtors, but the Bankruptcy Court retained jurisdiction over the adversary proceeding and Nova Hut and the IFC were barred from asserting any claims against the Debtors.

IFC Moves to Dismiss Adversary Proceeding. Thereafter, the IFC moved to dismiss the adversary proceeding on the basis of sovereign immunity and asserted such immunity as protection from responding to discovery. The motion was denied by the Bankruptcy Court, but the ruling was reversed by the District Court on the ground that the IFC had sovereign immunity. The decision of the District Court was reversed by the Court of Appeals on the ground that, by filing its proof of claim, the IFC had waived sovereign immunity. The Court of Appeals directed that the IFC be treated as any other litigant, and that the adversary proceeding proceed on the merits.

Nova Hut Seeks Arbitration of Debtors' Claims. Nova Hut moved to require arbitration of the Debtors' claims in the adversary proceeding on the basis of the Kaiser Netherlands/Nova Hut construction contract, which provided for arbitration, even though the Debtors were not parties to the contract. The Bankruptcy Court denied arbitration holding that it was "significant that the contract, the only document signed between the debtors and Nova Hut contains no arbitration clause. I find [it] deafening by [its] silence on that point, but find that it does significantly evidence the parties' intent not to require that their disputes go to arbitration." *Nova Hut a.s. v. Kaiser Group Int'l, Inc. (In re Kaiser Group Int'l, Inc.)*, 307 B.R. 449, 453 (D. Del. 2004) (quoting transcript of bankruptcy court opinion). Moreover, the Bankruptcy Court found that a letter from the Debtors indicating that it may submit to arbitration was

-3-

"unconvincing." *Id.* The District Court, however, reversed the decision of the Bankruptcy Court holding that the Debtors' claims against Nova Hut and the IFC arose from an agreement between Nova Hut and Kaiser Netherlands that contained an arbitration clause, and therefore, there was a sufficient basis for arbitration. The District Court acknowledged, however, that "this case presents an extremely close call." *In re Kaiser Group Intern., Inc.*, 307 B.R. at 457. The Nova Hut/Debtors arbitration has not yet taken place.

IFC Seeks Arbitration of Debtors' Claims. Still later, after losing its sovereign immunity motion, the IFC moved to require arbitration of the Debtors' claims on the basis of the same Kaiser Netherlands/Nova Hut contract. This request was quite unusual in that neither the IFC nor the Debtors was a party to any contract which required arbitration. Nevertheless, the Bankruptcy Court viewed the issue as akin to the District Court decision to require arbitration between Nova Hut and the Debtors, and granted arbitration. The IFC/Debtors arbitration has not yet taken place.

Kaiser Netherlands/Nova Hut Arbitration. Meanwhile, non-debtor Kaiser Netherlands did commence an arbitration against Nova Hut pursuant to the specific arbitration provisions of the construction contract. That arbitration ultimately resulted in a decision largely in favor of Nova Hut but with certain claims of Kaiser Netherlands granted as well. More recently, Nova Hut moved to lift the stay pending arbitration and sought summary judgment in the adversary proceeding on the ground that Kaiser Netherlands and the Debtors were in privity and the arbitration decision was entitled to res judicata effect. The Debtors view is that, by the motion for summary judgment, Nova Hut waived any right to insist on arbitration and waived the benefits of the stay granted by the District Court, and the Debtors have a right to discovery pursuant to Federal Rule 56(e).

Debtors' Efforts to Obtain Discovery. Throughout this process, the Debtors have made numerous attempts to obtain discovery. Most recently, the Debtors filed the Discovery Motion against the IFC and Nova Hut asserting a right to discovery on three separate grounds. First, as described in the Discovery Motion and below, there are a number of serious question relating to the integrity of the arbitration proceeding, including the posting of a description of the arbitration result on the Cleary Gottlieb website, which posting is dated prior to the date the decision was released. (Cleary Gottlieb claims that it was posted later but, of course, that is open to dispute, and the Debtors do not have the facts.) Second, there are numerous questions relating to the IFC's apparent control of the litigation and matters relating to a critical completion test (which the arbitrators found Kaiser Netherlands had failed but Nova Hut said that it had passed). Third, the Debtors sought discovery in connection with the arbitrations directed by the Court since, under applicable arbitration procedures, no discovery is available as of right and little or no discovery will likely to be available at all (certainty not depositions).

The Discovery Motion provoked strenuous opposition from Nova Hut and the IFC, and a motion for sanctions by Nova Hut against Saul Ewing on the ground that the Debtors were somehow required to accept Cleary Gottlieb's version of events before seeking discovery notwithstanding its website posting, which clearly was dated as of a day prior to the release of the arbitration decision. After a hearing, the Bankruptcy Court denied the Discovery Motion. The Court did not really rule on the Discovery Motion itself and did not even mention the alternative request for an equitable bill of discovery, but instead, found that the relief sought was essentially precluded by the prior decisions granting arbitration. The Court held that "the arguments are similar to the arguments that were made in connection with the" motions to stay the adversary proceedings in favor of arbitration and "for the reasons the District Court decided

those motions, I'm going to also decline to extend the right of the Debtor to conduct

discovery . . . ." Transcript, *Kaiser Group Intern'l Inc. v. Nova Hut, A.S.*, 01-928 at 38 (Bankr.

D. Del. April 25, 2007). It is from this decision that the Debtors appeal.

The Need for Discovery. For almost a century, discovery, first under section 21a of the

Bankruptcy Act and, more recently, Bankruptcy Rule 2004, has been a basic element of

bankruptcy procedure. And, for more than seventy years, discovery has been a basic right of

litigants in the federal courts, and since then, the Supreme Court has constantly protected the

right to discovery and severely constrained attempts to curtail such right. *Hickman v. Taylor*,

329 U.S. 495, 507 (1947) ("Mutual knowledge of all the relevant facts is essential to proper

litigation"). Moreover, in situations where necessary discovery might be outside of the

parameters of the established procedures, courts protected parties in need of discovery by

granting equitable relief in the form of a bill of discovery.

It is hard to imagine how Nova Hut and the IFC, both of which filed proofs of claim in

the Debtors' bankruptcy case and are subject to the jurisdiction of the Bankruptcy Court, have

been able to avoid all discovery for more than six years. The inability of the Debtors to obtain

discovery is even more difficult to understand since the facts available to the Debtors show a

clear need for discovery, and such facts are in the control of Nova Hut and the IFC and not

available to the Debtors.

The Debtors have sought discovery to investigate the relationship between Nova Hut and

the IFC and, more recently, serious questions relating to the integrity of the Nova Hut/Kaiser

Netherlands arbitration. Nova Hut has sought to enforce this award against the Debtors in the

Bankruptcy Court. As shown in more detail in the Discovery Motion, although neither Rule

-6-

2004 nor federal practice requires some showing of probable cause or necessity for discovery, the facts clearly establish both a need and probable cause.[1]

First, the IFC repeatedly inserted itself into the relationship between the Debtors and Nova Hut, and may have tortiously interfered with that relationship. The IFC provided significant financing to Nova Hut, such financing appears to have been at risk, and the IFC assumed significant control over Nova Hut's affairs and its relationship with the Debtors. On a number of occasions, the IFC called meetings, stated publicly that Nova Hut had nothing to say because it was in default, and stated that the IFC was making decisions connected with the Debtors and Kaiser Netherlands. On some occasions, Nova Hut was not even invited to such meetings. In addition, although Nova Hut had stated in writing to the IFC and orally at a dinner with Kaiser Netherlands that the mini-mill had passed the performance test. Nova Hut took the position that Kaiser Netherlands did not pass the test. In the course of the performance test Nova Hut suddenly refused to sign documents relating to the performance test, Nova Hut representatives said that they had been told by management both to continue the test but not to sign documents, and stated that they did not know why. Ultimately, after initially sending a letter to the IFC stating unequivocally that the test had been passed, Nova Hut began to deny that the performance test had been passed. The IFC specifically told representatives of Kaiser Netherlands that it, the IFC, would decide whether Kaiser Netherlands had passed the test, and such statements were borne out by the events described above. In a later attempt to settle the issues, Nova Hut initially said it would be making a settlement proposal, but the next day the IFC

---

[1]    The discussion below is a summary of the Discovery Motion and the Declaration of Nicholas Burakow, Phd. in Support OF (I) Debtors' Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004, or Alternatively a Bill of Equitable Discovery, Directing Examination of, and Production of Documents by the International Finance Corporation, Nova Hut, and Related Parties and (II) Debtors' Memorandum of Law in Opposition to Motion of Mittal Steel Ostrava, A.S. (Formerly Nova Hut, A.S.) for Summary Judgment and in Support of Debtors' Cross-Motion for Summary Judgment.

-7-

refused to permit it to do so, and at a meeting in Washington at which representatives of Nova Hut were not present, the IFC stated it would decide whether the performance test had been passed. Still later, various proposals were made by the IFC without involvement of Nova Hut. The above facts, which were never denied in the course of voluminous opposition to the Discovery Motion, clearly cry out for further inquiry as to improper influence and tortuous interference. Only through discovery can the Debtors discern the nature pf the relationship between the IFC and Nova Hut, and there simply is no other way to obtain the information.

Second, for the reasons stated above, the Debtors' need discovery with respect to matters connected to the construction of the mini-mill, the IFC's conduct with respect to the Debtors and issues raised in the Adversary Proceedings, which the Debtors have been directed to arbitrate. The Debtors have no right to discovery in the arbitrations, any actual discovery is solely discretionary with the arbitrators and tends to be severely restricted to production of documents that can be identified or not allowed at all. Depositions, however, are critical in a situation such as this. Both Nova Hut and the IFC have argued that (a) Rule 2004 discovery should not be permitted because of the pending litigation and (b) discovery is not permitted because of the pending arbitration. Both of these arguments are fallacious. The rule that Bankruptcy Rule 2004 discovery should not be permitted in pending litigation is applied to cases where discovery is available in pending litigation (virtually always, because of provisions in or similar to the Federal Rules), and one party seeks to use bankruptcy discovery to avoid limitations in available discovery. That doctrine is not applicable to the Debtors because discovery is not available in the pending arbitrations, and the Debtors' request is *not* an effort to avoid limitations in

otherwise available discovery.[2] The rule that discovery is not permitted if there is an agreement to arbitrate is based on the premise that, by agreeing to arbitrate, a party has accepted and agreed to the procedures (including discovery) in the arbitration and cannot try to avoid them by resort to the courts.[3] This rule is not applicable here because the Debtors never signed an agreement to arbitrate and never agreed to arbitrate. Waiver is the intentional relinquishment of a known right, and the Debtors never waived existing rights to discovery in their bankruptcy case. There is simply no reason to deny discovery.

Third, the Debtors believe that the IFC and/or Nova Hut may have improperly exerted influence over the decision of the arbitration tribunal, and there are serious questions about the integrity and impartiality of the award. The most telling evidence that there are serious issues here is the Cleary Gottlieb press release (which is attached hereto as **Exhibit "B"**), the strenuous denials of wrongdoing, and the almost frenetic attempt of Nova Hut and the IFC to avoid discovery. The undisputed facts are that the press release is dated three weeks before the award was released and clearly shows a knowledge of the award (facts which are not denied). The IFC and Nova Hut have suggested that the release really appeared much later and after the award was released and the press release was, in effect, backdated, and has offered a number of technical arguments as to how this might have occurred. The simple facts are that (a) the explanation defies common sense because press releases are not ordinarily backdated, and certainly, not backdated to a date prior to the release of the decision, (b) the Debtors have had no chance even to inquire as to a number of separate computer steps which allegedly show the award was placed

---

[2]     *See, e.g., In re International Fibercom, Inc.*, 283 B.R. 290, 293 (Bank. D. Ariz. 2002); *In re Best Craft Gen. Contractor and Design Cabinet, Inc., v. Wong*, 239 B.R. 462, 465 (Bankr. E.D.N.Y. 1999); *In re Table Talk Inc.*, 51 B.R. 143, 145 ( Bankr. D. Mass. 1985).

[3]     *See, e.g., In re Board of Hopewell Int'l Ins. Inc.*, 258 B.R. 580 (Bankr. S.D.N.Y. 2001) (holding that parties agreeing voluntarily to arbitrate their dispute in Bermuda cannot superimpose U.S. discovery scheme).

on the web site after its date, (c) there are serious technical questions whether, if there was improper action, such could be established by computer experts, but it is clear that *any* attempt to determine the "true" facts would require the Debtors to verify and confirm the Cleary explanation, and (d) the issues are complex and at present only one side of the story has been told, and there is a clear need for discovery.

Moreover, the dating issue may have somewhat obscured the undisputed content of the press release, which certainly raises significant doubts regarding the integrity of the arbitration. The release states that Nova Hut "had not strongly opposed Kaiser's claim that it successfully completed the performance tests, and even though the facility has achieved record production volumes, the Cleary Gottlieb team was able to convince the [arbitrators] that Kaiser manipulated the figures in order to claim successful completion of the tests." The release concluded by describing the result as an "unexpected outcome." Coming from counsel for the successful party, this speaks for itself regarding the need for inquiry about the integrity of the award.

## II.    QUESTIONS TO BE PRESENTED ON APPEAL AND RELIEF SOUGHT.

### (a)    Questions Presented.

1.    Did the Bankruptcy Court commit reversible error by failing to grant discovery under Bankruptcy Rule 2004 under the circumstances and facts in the Discovery Motion?

2.    Did the Bankruptcy Court commit reversible error by failing to grant an equitable bill of discovery under the circumstances presented in the Discovery Motion?

3.    Can creditors of bankrupt debtors successfully avoid discovery by a sequence of motions relating to sovereign immunity and arbitration such that the Debtors can be compelled to arbitrate disputes as to which they have never had discovery and never executed an arbitration agreement?

4.      Did the Bankruptcy Court commit reversible error by failing to consider, or if did consider, denying, the separate request for the granting of a Bill of Discovery in Equity?

**(b)      Relief Sought.**

If leave to appeal is granted, the Debtors will respectfully request on appeal that the District Court: (i) reverse the Discovery Order denying the Discovery Motion; (ii) order that the Debtors are entitled to discovery against the IFC and Nova Hut; and (iii) remand this matter to the Bankruptcy Court for further proceedings consistent with the District Court's opinion.

## III.    REASONS WHY APPEAL SHOULD BE GRANTED.

### 1.      The Discovery Order is a Final Order and Appealable as a Matter of Right.

The District Court's "jurisdiction over an appeal from a bankruptcy court order is prescribed by 28 U.S.C. § 158(a), which grants the Court plenary power to hear appeals from "final judgments, orders, and decrees . . . ." 28 U.S.C. § 158(a)(1). In traditional litigation, a final order is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988). The unique nature of a bankruptcy proceeding, however, requires a more flexible definition of finality. *See, e.g., Kaiser Aluminum Corp. v. Baron & Budd, P.C.,* 327 B.R. 554, 558 (D. Del. 2005) (citing *Baron & Budd, P.C. v. Unsecured Asbestos Claimants C'tee*, 321 B.R. 147, 155 (D.N.J. 2005)). "It is well settled in the Third Circuit, however, that 'considerations unique to bankruptcy appeals have lead consistently in those cases to construe finality in a more pragmatic and functional sense than with the typical appeal,' . . . ." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants C'tee*, 321 B.R. at 155. Thus, "concepts of finality are not restrictively applied because it would be impractical to wait until the conclusion of the entire bankruptcy case or until a plan is confirmed before hearing any appeals of a discrete issue within

-11-

the bankruptcy proceeding." *United Jersey Bank v. Collated Prods. Corp. (In re Collated Prods. Corp.)*, 121 B.R. 195, 200 (D. Del. 1990) (citing *In re Jeanette Corp.*, 832 F.2d 43, 45 (3d Cir. 1987)); *In re Brown*, 803 F.2d 120, 122 (3d Cir. 1986). An order of the bankruptcy court need not "resolve all of the issues raised in a bankruptcy case to be considered a final order, it need only dispose of discrete issues within the case." *Gache v. Balaber-Strauss*, 198 B.R. 662, 664 (S.D.N.Y. 1996).

### (a)    The Discovery Order Fits Within a Recognized Exception to the Final Order Rule.

In traditional civil litigation, an order granting or denying discovery is generally treated as interlocutory and, therefore, not immediately appealable. *See Smith v. BIC Corp.*, 869 F.2d 194, 198 (3d Cir. 1989); *Rouse Construction Int'l, Inc. v. Rouse Construction Corp.*, 680 F.2d 743, 745 (11th Cir. 1982). There is, however, a well recognized exception: where the court denying discovery is in a different federal circuit than the court where the main proceeding is pending, an appeal of an order denying discovery is permitted as of right. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 712 (1st Cir. 1998); *Barrick Group, Inc. v. Mosse*, 849 F.2d 70, 72 (2d Cir. 1988); *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1020-22 (Fed. Cir. 1986); *Ariel v. Jones*, 693 F.2d 1058, 1059 (11th Cir. 1982); *see also*, 8 Wright & Miller, *Federal Practice & Procedure Civ. 2d* § 2006 (rev. 2007).[2] The exception is based on the notion that there can be no effective review of the determination under such circumstances unless the interlocutory appeal is allowed:

---

[2]    In an ordinary litigation, this exception may be limited to discovery proceedings brought against non-parties on the theory that the court hearing the main action does not have jurisdiction over the non-party to the case. However, the real touchstone of the exception is the avoidance of a cumbersome appellate process that could, in essence, deny a party's right to appeal. This is precisely the risk of denying an immediate appeal in this case. *Republic Gear Co.*, 381 F.2d at 554.

> [E]ven if the appellate court in the jurisdiction in which discovery is sought awaited a final decision in the main proceeding before acting at all it would be necessary to return to the ancillary appellate court to argue the discovery issue. And if, upon appeal, the party were successful in reversing the lower court's order and thus obtained discovery, he would be required to go back to the court where the main case had already been tried, and there, with the discovered evidence now admissible on the merits, move to retry the case. The impracticality of this cumbersome procedure compels us to grant immediate appellate review of an order which, in another context, we might properly hold to have been an interlocutory order.

*Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 554 (2d Cir.1967).

The rationale set out by the *Republic Gear* court is particularly applicable here. The arbitrations between the Debtors and the IFC and the Debtors and Nova Hut will take place under the auspice of the International Court of Claims (the "ICC"), which is in Europe, and waiting to appeal the Discovery Order until the arbitrations are complete would promote piecemeal appeals. The Debtors would be forced first to arbitrate their claims in front of the ICC arbitrator, then, if the Debtors lose, wait for a motion in the bankruptcy court to enforce the arbitration ruling. If the bankruptcy court did enforce the arbitration ruling, the Debtors could then appeal the arbitration order itself, and within the context of that appeal, challenge the Discovery Order, but would face arguments that the Court should not overturn a completed arbitration if there was not substantial prejudice. In short, there are numerous steps that would be required to even reach the discovery issue, and there is a strong chance that an appellate court would never reach it. Even if the Court did grant discovery, it would then require a new ICC arbitration followed by further enforcement proceedings in the bankruptcy court. This cumbersome process would be a waste of the Court's and the Debtors' resources and is precisely the fact pattern that prompted courts to treat these discovery orders as final orders in *Republic Gear*, and the other cases cited above.

### (b)    An Order Denying Rule 2004 Discovery is Inherently Final.

Orders denying discovery pursuant to Bankruptcy Rule 2004, unlike traditional discovery orders, are inherently final. Underlying the notion that discovery orders in conventional litigation generally are interlocutory is the principle "that decisions relating to discovery issues normally can be reviewed effectively on appeal from final judgments." *Barrick Group, Inc.*, 849 F.2d at 72. Where a discovery order cannot be appealed, courts have construed the order to be final and immediately appealable. *See, e.g., Rouse*, 680 F.2d at 745-46 (holding and order denying post-judgment discovery was a final order and immediately appealable).

There is a serious question whether the principles underlying the treatment of discovery orders in civil litigation apply to an order granting or denying discovery under Bankruptcy Rule 2004. "Unlike routine discovery orders entered in litigation under the Federal Rules, Rule 2004 examinations do not take place within the context of a single litigated dispute." *Intercontinental Enterprises, Inc. v. Keller (In re Blinder Robinson & Co., Inc.)*, 127 B.R. 267, 277 (D. Co. 1991). Thus, [w]here the dispute has been narrowed and there is no indication that further action from the bankruptcy court will be forthcoming, an order concerning Rule 2004 examinations should properly be considered final." *Id.* at 772-73, *Aetna Casualty & Surety Co. v. Glinka*, 154 B.R. 862, 866 (D. Vt. 1993); *Towers Financial Corp. v. Hoffenberg,* 164 B.R. 719, 720 (S.D.N.Y. 1994); *see also, Buckner v. Oklahoma (In re Buckner)*, 271 B.R. 213 (B.A.P. 10th Cir. 2001) (holding discovery order in chapter 13 reorganization case entered after confirmation order was final and immediately appealable); 9 L. King, et al., *Collier on Bankruptcy* ¶ 2004.01[5] n.7 (15th ed. rev. 2004). Moreover, the denial of the request for an equitable bill of discovery is not only inherently final, but is final. A request for an equitable bill of discovery is analogous to a separate lawsuit. In denying the Discovery Motion, the request has been denied and the spate lawsuit is over. Thus, the Discovery Order is necessarily final.

-14-

The Bankruptcy Court fully and completely resolved the question of discovery in this case. The Bankruptcy Court, in its oral ruling, sated that "I'll just deny the motions. I don't think anything more need be said." Transcript at 39. The Bankruptcy Court further made clear that any further argument regarding discovery issues should proceed in front of the arbitration panel, ". . . and I don't think it's proper for me to interfere with the arbitration proceeding or any appeal, using that term generically, of the arbitration proceeding by permitting discovery under bankruptcy rules." *Id.* Thus, the Bankruptcy Court made clear that the Discovery Order would be the final word on discovery issues and that the Bankruptcy Court would not entertain any further argument until after the arbitrations.[4] The dispute has been narrowed and there is not further action anticipated by the Court. Therefore, the Discovery Order is a final order.

### (c)    The Discovery Order is a Collateral Order and Therefore Immediately Appealable.

The collateral order doctrine "relaxes the strict standard of finality by permitting us to entertain appeals from certain orders that would not otherwise be appealable final decisions." *Martin v. Brown*, 63 F.3d 1252, 1258 (3d Cir. 1995). An order becomes appealable under the collateral order doctrine where the order being appealed:

> Did not make any step toward final disposition on the merits of the case and will not be merged in the final judgment. When the time comes, it will be too late effectively to review the present order, and the rights conferred by the [Rule], if it is applicable, will have been lost, probably irreparably.

*Cohen v. Beneficial Indus. Corp.*, 337 U.S. 541, 546 (1949). In the context of a general litigation case, the Third Circuit has held that discovery orders fall within the collateral order doctrine. *See, e.g., Martin v. Brown*, 63 F.3d 1252 (3d Cir. 1995); *Smith v. BIC Corp.*, 869 F.2d 194, 198

---

[4]  Indeed, under the ruling of the Bankruptcy Court, it is not even clear that the court would permit the Debtors to seek review of an ruling on the Discovery motion <u>after</u> an adverse arbitration ruling. Thus, there may <u>never</u> be any review of the decision of the Bankruptcy Court.

-15-

(3d Cir. 1989). The Third Circuit has established three criteria for determining whether an order

is reviewable under the collateral order doctrine:

> First, the order must conclusively determine the disputed question. Second, the
> order must resolve an important issue completely separate from the merits of the
> action. Third and finally, the order must be effectively unreviewable on appeal
> from a final judgment.

*BIC Corp.*, 869 F.2d at 198.

### (i)    *The Bankruptcy Court Order Conclusively Determined the Discovery Issue.*

The conclusiveness prong examines whether "any further consideration [of the issue] is

contemplated by the court." *Martin*, 63 F.3d at 1259. Thus, the collateral order doctrine will not

apply to any order that is "tentative, informal or incomplete." *Id.* (collecting cases).

As discussed above, the Discovery Order may well be the final word from the

Bankruptcy Court on this issue. During the bench ruling, the Bankruptcy Court expressly denied

the Debtors' request for relief in its entirety: "I'll just deny the motions. I don't think anything

more need be said . . . and I don't think it's proper for me to interfere with the arbitration

proceeding or any appeal, using that term generically, of the arbitration proceeding by permitting

discovery under bankruptcy rules." Transcript at 39. There was no room for reconsideration of

the Debtors' request for discovery against the IFC and Nova Hut and the Court left nothing to be

done. The Discovery Order is, therefore, a paradigmatic example of an order that resolves "an

important issue completely separate from the merits of the action." *BIC Corp.*, 869 F.2d at 198.

### (ii)    *The Order Denying the 2004 Motion Can be Reviewed Separate From Any Consideration On the Merits.*

The second criteria for the collateral order doctrine examines whether the district court's

review "now is less likely to force the courts to consider approximately the same (or a very

similar) matter . . . ." *Johnson v. Jones*, 515 U.S. 304, 311 (1995). Separateness "means that

review now is less likely to force the appellate court to consider approximately the same (or a very similar) matter more than once, and also seems less likely to delay trial court proceedings (for, if the matter is truly collateral, those proceedings might continue while the appeal is pending)." *Martin*, 63 F.3d at 1260. (internal quotations omitted). An order will not be considered collateral where the subject of the order is "too intertwined with the merits of the underlying litigation to permit immediate review . . . ." *Id.*. The court must also determine whether the issue is "too important to be denied review." *Id.*

The question of whether a debtor in a bankruptcy case has a right to discovery against its creditors is entirely separate from the underlying arbitration case. Indeed, a debtor's right to discovery under Bankruptcy Rule 2004 or for an equitable bill of discovery is not affected by any other procedural rulings made by the arbitration panel. The arbitration is free to continue while the question of discovery under either Bankruptcy Rule 2004, which is undoubtedly the province of the bankruptcy court, or an equitable bill of discovery is resolved. Moreover, there is little chance that the issues in this discovery action could be asserted a second time as the question of a debtor's entitlement to discovery is not tied to the merits of an arbitration on a breach of contract claim.

At the center of this dispute is the very scope of available discovery in a bankruptcy case. In an ordinary case, the Debtors would have received discovery nearly six years ago. In the present case, however, the IFC and Nova Hut have taken multiple steps in order to avoid discovery: (i) the IFC and Nova Hut filed proofs of claim, (ii) the Debtors brought an adversary proceeding, *inter alia*, challenging the validity of the proofs of claim and sought discovery, the IFC argued that discovery was unavailable in the adversary proceeding as the IFC was entitled to sovereign immunity and that discovery was unavailable under Bankruptcy Rule 2004 as a result

-17-

of the adversary proceeding; and (iii) the IFC and Nova Hut withdrew their claims and then the IFC argued that discovery under Bankruptcy Rule 2004 remained unavailable as a result of sovereign immunity. It then took over a year to determine that the IFC was not protected by sovereign immunity, and before the Debtors could seek any meaningful discovery, the IFC and Nova Hut moved for arbitration and again resisted discovery that is common in adversary proceedings as well as bankruptcy cases under Rule 2004.

This question of whether a debtor is entitled to discovery prior to an arbitration where the counter-parties have successfully resisted discovery for six years is too important an issue to deny review. Open access to discovery is fundamental to the American court system. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("Mutual knowledge of all the relevant facts is essential to proper litigation"). For the almost six years that this case has been pending, the Debtors have not received any meaningful discovery from either the IFC or Nova Hut, even though each filed claims and the IFC has been specifically held to be subject to bankruptcy jurisdiction, which necessarily includes Rule 2004. Denial of this appeal will allow these parties to have escaped, entirely, their obligation to provide basic information to a debtor in bankruptcy.

### (iii)    Failure to review the Court's Order at this Time Renders the Order Effectively Unreviewable.

The final criteria for a collateral order is whether the court's order would be rendered "effectively unreviewable on appeal from a final judgment" if not reviewed at this time. *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276 (1988) (internal quotations omitted). This prong examines whether "review postponed will, in effect, be review denied." *Martin*, 63 F.3d at 1261. Thus, the reviewing court must consider whether it can correct any harm after entry of a final judgment. *See, e.g., Rhone-Poulenc Rorer Inc. v. The Home Indemnity Company*, 32 F.3d 851, 860-61 (3d Cir. 1994) (holding that discovery order not

-18-

appealable under collateral order doctrine because appellate court could correct any mistakes after final judgment); *BIC Corp.*, 869 F.2d at 199 (holding discovery order requiring release of trade secret information is a collateral order because once trade secrets are made public "they can obviously never be secrets again").

Here, failure to grant leave to appeal at this time could render the Discovery Order effectively unreviewable. As noted above, in order to review the Discovery Order as a final order, the Debtors must wait for a motion in the Bankruptcy Court to enforce the arbitration ruling. If the bankruptcy court enforced the arbitration rulings, the Debtors would have to appeal the arbitration order, and within the context of that appeal, challenge the Discovery Order, but it is not clear they would be permitted to do so or whether discovery would be allowed because of an absence of substantial prejudice or because of considerations relating to the arbitration. In short, there are numerous steps that would be required to even reach the discovery issue, and there is a strong chance that an appellate court would never reach it. Thus, any delay in granting discovery is likely to be "effectively unreviewable." Finally, as discussed above, the order denying an equitable bill of discovery is, essentially, a separate proceeding which is not final and, unless reviewed now, probably cannot be reviewed.

## 2.     The Court Should Grant Leave to Appeal.

The District Court also has jurisdiction to hear an appeal of an interlocutory order. 28 U.S.C. § 158(a)(3). Section 158 of the Judicial Code does not set forth any standards for granting leave to appeal. Courts in the Third Circuit have adopted the criteria set forth in 28 U.S.C. § 1292(b) in determining whether leave should be granted. See *In re Sandenhill, Inc.*, 304 B.R. 692, 693-94 (E.D. Pa. 2004); *Official Bondholders Comm. v. Chase Manhattan Bank (In re Marvel Entm't Group, Inc.)*, 209 B.R. 832, 837 (D. Del. 1997); *EDP Med. Computer Sys.*,

*Inc. v. United States (In re EDP Med. Computer Sys., Inc.)*, 178 B.R. 57, 59-60 (M.D. Pa. 1995).

Under Section 1292(b), the movant must show three criteria:

(1) a controlling question of law is involved; (2) the question is one where there is a substantial ground for difference of opinion; and (3) an immediate appeal would materially advance the ultimate termination of the litigation

*Patrick v. Dell Financial Services*, -- B.R. --, 2007 WL 1056722 at *5 (M.D. Pa.

March 29, 2007) (citing *EDP Med. Computer Sys., Inc.*, 178 B.R. at 607. The Third Circuit has

"noted that the exercise of discretion to allow appeal of interlocutory orders should be informed

by the practical application of the policies informing interlocutory appeals: 'the avoidance of

harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of

possible wasted trial time and litigation expense.'" *First American Bank of New York v.

Southwest Gloves and Safety Equipment, Inc.*, 64 B.R. 963, 967 (D. Del. 1986) (citing *Katz v.

Carte Blanche Corporation*, 496 F.2d 747, 755 (3d Cir. 1974), cert. denied, 419 U.S. 885

(1974)).

### *(i)     A Controlling Question of Law is Involved.*

The first requirement of an interlocutory appeal requires the movant to show the

existence of some "controlling question of law." This element tests whether "on appeal, a

determination that the decision contained error would lead to reversal." *Simon v. Farmland

Industries*, 505 F. Supp. 59 (E.D. Pa. 1980). "[C]ontrolling means serious to the conduct of the

litigation, either practically or legally." *Bradburn Parent Teacher Store, Inc. v. 3M*, 2005 WL

1819969, at *3 (E.D.Pa. Aug. 2, 2005) (quoting *Katz* 496 F.2d at, 755).

The question here is whether a debtor in bankruptcy is entitled to take advantage of the

broad grant of the right to discovery in the Bankruptcy Rules. The Bankruptcy Rules embody a

policy of broad disclosure, and the court here would have to examine the scope of that discovery.

There is also a controlling question whether any party which files a proof of claim can avoid

bankruptcy discovery. These are clear legal issues which have been decided against the Debtors.

### (ii)    There is a Substantial Ground for a Difference of Opinion.

In satisfying this criteria, the movant must only show that the order appealed arises "out

of genuine doubt as to the correct legal standard . . . ." *Patrick*, -- B.R. --, 2007 WL 1056722 at

\*6 (citations omitted). Here there is no question that the Bankruptcy Court created significant

doubt regarding the standard for discovery under Bankruptcy Rue 2004. Case law would suggest

that 2004 discovery is readily available and liberally granted where a debtor is investigating its

potential claims, especially where fraud may be present. *See, e.g., In re Recoton Corp.*, 307 B.R.

751, 756-57 (Bankr. S.D.N.Y. 2004); *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002);

*In re Sun Medical Mgmt.*, 104 B.R. 522, 524 (Bankr. M.D. Ga. 1989); *In re Hammond*, 140 B.R.

197, 204 (S.D. Ohio 1992). Indeed, this principal applies even where there is the potential for

later lawsuits. *See, e.g., In re International Fibercom, Inc.*, 283 B.R. 290, 293 (Bank. D. Ariz.

2002); *In re Best Craft Gen. Contractor and Design Cabinet, Inc., v. Wong*, 239 B.R. 462, 465

(Bankr. E.D.N.Y. 1999).

By entering the Discovery Order and denying the Debtors' request for discovery, the

Bankruptcy Court has cast doubt whether the mere potential of an arbitration forecloses on a

legitimate Rule 2004 examination. The notion that the Debtors waived their right to discovery as

a result of the pending arbitration is also inconsistent with the facts of this case because the

Debtors have not agreed to arbitration with Nova Hut or the IFC and thus have not consented to

any arbitration procedures. Moreover, the Court has foreclosed all discovery in this case, which

is fundamentally at odds with the federal practice and policy in bankruptcy cases. Finally, the

Bankruptcy Court implicitly ruled against the availability of an equitable bill of discovery,

notwithstanding its clear availability in federal practices in special circumstances, such as those which are present here.

### (iii)    Hearing this Appeal Now Would Materially Advance the Litigation.

The final element for granting leave to hear an interlocutory appeal tests whether "(1) whether the need for trial would be eliminated; (2) whether the trial would be simplified by the elimination of complex issues; and (3) whether discovery could be conducted more expeditiously and at less expense to the parties." *Patrick*, -- B.R. --, 2007 WL 1056722 at *7 (citations omitted).

In this case, an order granting discovery now would allow the Debtors to quickly and efficiently receive the documents and depositions it needs in order to better evaluate its claims and to deal with issues relating to the integrity of the prior arbitration. It may very well be that after an examination, the Debtors would not want to proceed with the arbitrations and questions regarding the prior arbitrations will be resolved. It is also likely that discovery would help to significantly advance the issues. Indeed, this case is not one where "discovery is complete and the case is ready for trial" such that "an interlocutory appeal can hardly advance the ultimate termination of the litigation." *Bradburn Parent Teacher Store*, 2005 WL 1819969, at *4 (quoting *FDIC v. Parkway Executive Office Ctr.*, 1997 WL 611674, at *3 (E.D.Pa. Sept.24, 1997).

Any arbitration without discovery, and any consideration of the integrity of the prior arbitration is likely to be inherently unfair and inequitable because the Debtors, who are under the protection of the Bankruptcy Courts, have been denied access to the key facts necessary both to carry out their fiduciary responsibilities to creditors and shareholders to maximize the assets of their estates. The IFC and Nova Hut have resisted discovery so long and so strongly that one can

only ask what they are attempting to hide.  Perhaps nothing, but only discovery can answer the

question

Respectfully submitted,

SAUL EWING, LLP

Mark Minuti (No. 2659)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899
302-421-6840

and-

George E. Rahn, Jr.
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
215-972-7165

and-

Jonathan M. Landers
Robert K. Dakis
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York. NY  10166
212-351-4000

Attorneys for Debtors
and Debtors in Possession

Dated:  June 8, 2007

# Exhibit "A"

Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| KAISER GROUP INTERNATIONAL, INC., *et al.*, | : | Case No. 00-2263 (MFW) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Related to Docket No. 1941 |
| | : | |
| KAISER INTERNATIONAL, INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Adv. No. 01-928 (MFW) |
| | : | |
| NOVA HUT a.s. and INTERNATIONAL FINANCE CORPORATION, | : | |
| | : | |
| | : | Related to Docket Nos. 281, 282, 283, 299, |
| Defendants. | : | 303, 304, 305, 306 and 310 |

## ORDER DENYING DEBTORS' MOTION FOR AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004, OR ALTERNATIVELY A BILL OF EQUITABLE DISCOVERY, DIRECTING EXAMINATION OF, AND PRODUCTION OF DOCUMENTS BY THE INTERNATIONAL FINANCE CORPORATION, NOVA HUT, AND RELATED PARTIES

AND NOW, this 31st day of May 2007, the Court having considered the Debtors'

Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004, or Alternatively a

Bill of Equitable Discovery, Directing Examination of, and Production of Documents by the

International Finance Corporation, Nova Hut, and Related Parties (the "Motion"), the

oppositions (the "Oppositions") to the Motion filed by the International Finance Corporation and

Mittal Steel Ostrava, a.s. (formerly Nova Hut, a.s.), and the additional pleadings and declarations

filed in connection with the Motion and Oppositions; and the Court having conducted a hearing

(the "Hearing") on the Motion on April 25, 2007; and the Court finding that good and sufficient

notice of the Motion having been given; and the Court otherwise being fully advised in the

premises; it is HEREBY ORDERED that the Motion is DENIED for the reasons set forth on the

record at the Hearing.

HONORABLE MARY WALRATH
UNITED STATES BANKRUPTCY JUDGE

# Exhibit "B"



## NEWS & PUBLICATIONS

NEWS DETAIL

### Mittal Steel Ostrava in ICC Arbitration Victory
April 26, 2006

Cleary Gottlieb successfully represented Mittal Steel Ostrava, the Czech subsidiary of Mittal Steel Holdings N.V., in an International Chamber of Commerce arbitration commenced in 2004 by Kaiser Netherlands, a Dutch corporation.

The arbitration arose from a June 1997 contract for the design and construction by Kaiser Netherlands of a steel mill at the Mittal Steel facility in Ostrava. Mittal Steel Ostrava terminated the contract in early 2001 and the resolution of the opposing claims turned on whether Kaiser had delivered a facility that conformed to the contract requirements and passed a series of final performance tests.

Kaiser requested an award in the amount of more than $50 million in principal, arguing that it delivered a steel mill in compliance with the contract. Mittal Steel Ostrava denied Kaiser Netherlands' claim and requested an award for $46 million in liquidated damages for lost profits that Mittal suffered because the delivered steel mill did not conform to the contract's terms.

Even though Mittal Steel Ostrava had not strongly opposed Kaiser's claim that it successfully completed the performance tests, and even though the facility has achieved record production volumes in recent months, the Cleary Gottlieb team was able to convince the ICC Tribunal that Kaiser manipulated the figures in order to claim successful completion of the tests.

In its award, the ICC Arbitral Tribunal upheld Mittal Steel Ostrava's defense that the steel mill delivered by Kaiser Netherlands did not comply with the contractual requirements, dismissed Kaiser Netherlands' entire claim and granted Mittal Steel Ostrava's counterclaim. The unexpected outcome is an approximately $5 million net debt from Kaiser Netherlands to Mittal Steel Ostrava.

Practice Groups: Litigation and Arbitration

© Cleary Gottlieb Steen & Hamilton LLP, 2007. All rights reserved.
Under the rules of certain jurisdictions, this Web site may constitute Attorney Advertising.

## UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| KAISER GROUP INTERNATIONAL, | : | Case No. 00-2263 (MFW) |
| INC., *et al.,* | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Related to Docket No. _____ |

| | | |
|---|---|---|
| KAISER INTERNATIONAL, INC., *et al.,* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Adv. No. 01-928 (MFW) |
| NOVA HUT a.s. and INTERNATIONAL | : | |
| FINANCE CORPORATION, | : | |
| | : | Related to Docket No. _____ |
| Defendants. | : | |

ORDER GRANTING LEAVE TO APPEAL OF DEBTORS' MOTION FOR AN ORDER
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004,
OR ALTERNATIVELY A BILL OF EQUITABLE DISCOVERY, DIRECTING
EXAMINATION OF, AND PRODUCTION OF DOCUMENTS
BY THE INTERNATIONAL FINANCE CORPORATION,
NOVA HUT, AND RELATED PARTIES

THE COURT having considered the Statement and Motion in Support of Leave to

Appeal of Debtors' Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure

2004, or Alternatively a Bill of Equitable Discovery, Directing Examination of, and Production

of Documents by the International Finance Corporation, Nova Hut, and Related Parties (the

"Motion"), and any response(s) thereto, and the Court finding that notice of the Motion was

appropriate under the circumstances, and good cause having been shown, IT IS ORDERED that

1.    The Motion is GRANTED.

2.    The Debtors are granted leave to appeal the Bankruptcy Court's Discovery Order

(as defined in the Motion).


_____
United States District Court Judge

Dated: _____ _____, 2007

**IN THE UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| KAISER GROUP INTERNATIONAL, | : | Case No. 00-2263 (MFW) |
| INC., *et al.,* | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Related to Docket No. 1941 |
| | : | |
| KAISER INTERNATIONAL, INC., *et al.,* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Adv. No. 01-928 (MFW) |
| | : | |
| NOVA HUT a.s. and INTERNATIONAL | : | |
| FINANCE CORPORATION, | : | |
| | : | Related to Docket Nos. 281, 282, 283, 299, |
| Defendants. | : | 303, 304, 305, 306 and 310 |

**ORDER DENYING DEBTORS' MOTION FOR AN ORDER PURSUANT
TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004, OR ALTERNATIVELY
A BILL OF EQUITABLE DISCOVERY, DIRECTING EXAMINATION OF, AND
PRODUCTION OF DOCUMENTS BY THE INTERNATIONAL FINANCE
CORPORATION, NOVA HUT, AND RELATED PARTIES**

AND NOW, this 31st day of May 2007, the Court having considered the Debtors'

Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004, or Alternatively a

Bill of Equitable Discovery, Directing Examination of, and Production of Documents by the

International Finance Corporation, Nova Hut, and Related Parties (the "Motion"), the

oppositions (the "Oppositions") to the Motion filed by the International Finance Corporation and

Mittal Steel Ostrava, a.s. (formerly Nova Hut, a.s.), and the additional pleadings and declarations

filed in connection with the Motion and Oppositions; and the Court having conducted a hearing

(the "Hearing") on the Motion on April 25, 2007; and the Court finding that good and sufficient

notice of the Motion having been given; and the Court otherwise being fully advised in the

premises; it is HEREBY ORDERED that the Motion is DENIED for the reasons set forth on the

record at the Hearing.

_Mary t Walrath_

HONORABLE MARY WALRATH
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

## APPEAL TRANSMITTAL SHEET

Case Number: _____    ○ BK    ○ AP
   If AP, related BK Case Number: _____


Title of Order Appealed:

_____
      Docket Number: _____    Date Entered: _____

Item Transmitted:    ○ Notice of Appeal              ○ Motion for Leave to Appeal
               ○ Amended Notice of Appeal    ○ Cross Appeal
           Docket Number: _____    Date Filed: _____

*Appellant/Cross Appellant:                    *Appellee/Cross Appellee

_____    _____
Counsel for Appellant:                    Counsel for Appellee:

_____    _____
_____    _____
_____    _____
_____    _____
_____    _____

*If additional room is needed, please attach a separate sheet.

Filing Fee paid?    ○ Yes    ○ No

IFP Motion Filed by Appellant?    ○ Yes    ○ No

Have Additional Appeals to the Same Order been Filed?    ○ Yes    ○ No
   If so, has District Court assigned a Civil Action Number?    ○ Yes    ○ No    Civil Action # _____

Additional  Notes:

_____



_____
Date

By: _____
       Deputy Clerk

_____
                       FOR USE BY U.S. BANKRUPTCY COURT

Bankruptcy Court Appeal (BAP) Number: _____
7/6/06