# UNITED STATES BANKRUPTCY COURT
# FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| KAISER GROUP INTERNATIONAL, INC., *et al.*, | : : | Case No. 00-2263 (MFW) Adv. No. 01-928( (MW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| KAISER INTERNATIONAL, INC., *et al.*, | : : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | C.A. No. 07-124 (JJF) |
| | : | |
| MITTAL STEEL OSTRAVA a.s., formerly known as NOVA HUT a.s. and INTERNATIONAL FINANCE CORPORATION, | : : : : | |
| | : | |
| Appellees. | : | |
| KAISER INTERNATIONAL, INC., *et al.*, | : : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 07-125 (JJF) |
| | : | |
| MITTAL STEEL OSTRAVA a.s., formerly known as NOVA HUT a.s. and INTERNATIONAL FINANCE CORPORATION, | : : : : | |
| | : | |
| Defendants. | : | |

**DEBTORS' MOTION FOR LEAVE TO SUPPLEMENT THE RECORD OR, ALTERNATIVELY, TO REMAND THE CASE TO THE BANKRUPTCY COURT FOR RECONSIDERATION BASED ON NEWLY DISCOVERED EVIDENCE <u>PURSUANT TO RULE 60(b)(2)</u>**

557053.1 3/6/08

The Debtors submit this motion for leave to supplement the record or, alternatively, to remand the case to the United States Bankruptcy Court for reconsideration based on newly discovered evidence pursuant to Federal Rule of Civil Procedure 60(b)(2). In support of this motion, the Debtors state as follows:

1. The International Finance Corporation ("IFC") is an arm of the World Bank. This case is not the first time there have been allegations of corruption at the World Bank and its affiliate, the IFC. Indeed, corruption is such a problem at the World Bank that the President of the Bank appointed a special committee to examine the Bank's procedures and recommend changes to root out and control corruption. This commission, headed by Paul A. Volcker, issued its 46-page report on September 13, 2007. Paul A. Volcker, *et al.*, *Independent Panel Review of The World Bank Group Department of Institutional Integrity*, (Sept. 13, 2007). This report recommended sweeping changes to weed out corruption in this organization and its affiliate, the IFC.

2. The former President of the World Bank, Paul Wolfowitz, who was brought in to expose and eliminate corruption, was forced to resign just last year because of allegations of impropriety, and the new leader has initiated an internal investigation of corruption at the World Bank. As a further example, since 2005, there have been significant allegations concerning corruption at a World Bank-funded health care project in India. Specifically, two reports were made public in September 2007 concerning the effectiveness of the World Bank's anti-corruption unit known as INT. In addition, the INT itself issued a report in September 2007 that described widespread corruption at a Bank-funded health project in India, including allegations of systematic bribery of government officials and agencies, falsification of performance certificates, collusion among bidders, and coercion of other companies.

3. There have been reports of corruption involving a project in Kazakhstan. In this instance, a Mittal Steel entity, with the financial assistance from the World Bank, purchased the Karmet Steel Works from the Kazakhstan government under what have been suggested as suspect conditions. Additional reports of corruption by the IFC's parent organization are expected to surface over the next few months.

4. These new reports of corruption at the IFC and its parent organization provide support for Debtors' belief that the IFC may have acted improperly in this matter, and that the Debtors have claims against the IFC related to this conduct.

5. The Debtors filed a motion in United States Bankruptcy Court for the District of Delaware seeking an order pursuant to Federal Rule of Bankruptcy Procedure 2004, or alternatively a bill of equitable discovery, directing examination of, and production of documents by the IFC, Nova Hut and related parties. That motion seeks to take limited discovery concerning the conduct, integrity and impartiality of an arbitration award sought to be enforced by defendant Mittal Steel Ostrava, a.s. (formerly Nova Hut, a.s.) ("Nova Hut"), and concerning the involvement of the IFC in that arbitration and in the affairs of Nova Hut.

6. The Debtors need this discovery because the facts relating to the underlying conduct are within the possession and control of Nova Hut and the IFC.

7. The Bankruptcy Court denied the Debtors' motion on May 31, 2007.

8. On June 26, 2007, the Debtors filed an appeal of the Bankruptcy Court's order. The appeal seeks reversal of the order denying the discovery motion and an order that the Debtors are entitled to discovery against the IFC and Nova Hut.

9. The appeal and the motion in the Bankruptcy Court set forth the facts known to the Debtors at the time of the motion. The Debtors' investigation has continued. The Debtors

have retained a major and reputable international investigation firm to investigate the IFC and its involvement with Nova Hut, Mittal Steel, and the Czech Government. The Debtors also have asked the Czech government authorities to initiate an investigation into possible corruption surrounding the privatization of Nova Hut. These officials are considering such an investigation.

10. Since the Bankruptcy Court's order, the Debtors have uncovered evidence through this investigation that was not available at the time of the Bankruptcy Court proceedings. This information could not have been discovered before the Bankruptcy Court's order, and the Debtors believe this information may change the result in the Bankruptcy Court.

11. Pursuant to Federal Rule of Civil Procedure 60(b)(2), a party can seek relief within a reasonable period of time from a judgment or order based upon "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Granting of a motion for relief pursuant to Rule 60(b) is within the court's discretion. Wife B. v. Husband B., 395 A.2d 358, 359 (Del. Super. 1978). The standard for deciding a Rule 60(b)(2) motion is as follows: (1) the evidence must come to the moving party's knowledge after the entry of the final order; (2) the exercise of reasonable diligence would not have brought the evidence to light prior to the entry of the final order; (3) the evidence is material and relevant such that it would probably change the result; and (4) the evidence is not merely cumulative or impeaching and there is a reasonable possibility that the evidence would be produced at a new trial. Monsanto Co. v. Aetna Casualty and Surety Co., No. 88C-JA-118, 1994 Del. Super. LEXIS 239 (Del. Super. May 9, 1994; Joseph v. Shell Oil Co., No. 7450, 1985 Del. Ch. LEXIS 462 at * 3-4 (Del. Ch. June 6, 1985); Poole v. N.V. Deli Maatschappij, 257 A.2d 241, 243 (Del. Ch. 1969); In re Missouri-Kansas Pipe Line Co., 2 A.2d 273, 278 (Del. Ch. 1938).

12. Newly discovered evidence is described as evidence "in existence and hidden at the time of judgment." Bachtle v. Bachtle, 494 A.2d 1253 (Del. 1985); Ryan v. United States Lines Co., 303 F.2d 430, 434 (2d Cir. 1962) (results of new physical examinations not considered newly discovered evidence); see Brown v. Pennsylvania Railroad, 282 F.2d 522, 527 (3d Cir. 1960) (describing newly discovered facts as facts in existence at the time of trial of which the aggrieved party was excusably ignorant). Further, in analyzing reasonable diligence pursuant to Rule 60(b), the U.S. Court of Appeals for the Third Circuit has held that if a witness was identified by the moving party prior to trial, any deficiency in the party's proof at trial would be the result of lack of diligence on his part. Plisco v. Union Railroad Co., 379 F.2d 15, 17 (3d Cir. 1967). Therefore, due diligence consists of a party's duty to fully investigate information and question witnesses of which they are aware. Id.

13. The Debtors have discovered evidence that the IFC was involved in all aspects of Nova Hut's affairs, including the sale of the company. This evidence makes it more probable that the IFC was involved in the arbitration and steel mill project that is the subject of this litigation, and supports the need for discovery in those areas. The evidence also supports the Debtors' belief that the IFC tortuously interfered with the business relationships between the Debtors and Nova Hut.

14. If accessible through discovery, the IFC's internal Nova Hut project documentation reports could provide direct evidence of corruption that would support the Debtors' allegation of tortuous interference by the IFC to protect its own financial interests.

15. The Debtors' investigation, through the international investigation firm that it has hired, has shown that the IFC and Mittal Steel have had significant dealings over the years and that the IFC seems to have favored Mittal Steel in business transactions. For example, in 1994,

the IFC approved $90 million in loans and a $6 million equity investment for an Indian steel mill controlled by Mittal Steel. In 1995, the IFC invested $25 million in environmental upgrades at a Trinidad & Tobago steel mill owned by Mittal Steel. In 1997, the IFC issued $132.5 in debt to a Kazakh steel mill that was wholly owned by Mittal Steel. In 2003, the IFC loaned $25 million to an Algerian steel mill that was 70% owned by Mittal Steel. And in 2004, the IFC offered Mittal Steel a $100 million loan for "use in developing member countries."

16.     The Debtors' third amended complaint alleges that the IFC interfered with the business relationship and opportunities between the Debtors and Nova Hut. The Debtors have uncovered evidence that suggests improper conduct by the IFC and undue influence on the part of the IFC relating to the Nova Hut mill in Ostrava, Czech Republic. The IFC's conduct may have affected Nova Hut's conduct and ultimately caused Nova Hut to breach its contract with the Debtors resulting in significant detriment to the Debtors and their creditors.

17.     Nova Hut, like all industries in the Czech Republic, was at one time owned by the Czech government. In the mid-1990s, both the Czech government and Nova Hut's management realized that the steel mill would have to dramatically modernize its production facilities. Nova Hut announced a $650 million modernization plan in 1996, the cornerstone of which was a $255 million new hot-rolled-coil mini-mill with a planned capacity of over one million tons of steel per year. The Czech government and Nova Hut needed financing for this project, and approached the IFC, which since 1995 had been investigating Nova Hut as a potential privatization project.

18.     In December 1996, the IFC proposed a $250 million financing package for Nova Hut. The proposed package provided for a $75 million loan from the IFC and $175 million in a 10-year senior syndicated loan from 17 international financial institutions in Japan, Germany,

Austria and elsewhere. The purpose of the package was to pay for the proposed mini-mill. The IFC board approved the mini-mill package in April 1997, and the IFC signed the financing in June 1997.

19. Pursuant to its charter, the IFC can lend money only to private entities. At the time that Nova Hut sought financing for its modernization project, Nova Hut was 68% owned by the Czech government.

20. To circumvent the private ownership requirement, in June 1997, the Czech Fund of National Property, the government entity that technically held the Czech government's shares of stock in Nova Hut, attempted to reduce its stake in Nova Hut to 49% by transferring a 19% stake to CS First Boston ("CSFB"). CSFB was to attempt to sell the stock to other parties. Under the terms of the transfer, if CSFB failed to sell the Nova Hut stock, which was the eventual outcome, the Czech government was required to take the shares back from CSFB. There was in fact virtually no chance and likely no intention that CSFB would sell the 19% interest in Nova Hut, a fact that was known to both the IFC and Nova Hut. The IFC was fully aware of the illusory nature of Nova Hut's transfer to CSFB and privatization. Indeed, after the transfer to CSFB, the National Property Fund retained the rights to any dividends and, more importantly, the right to vote the 19% block of shares.

21. In 1999, Nova Hut's financial situation began to deteriorate. In fact, the Debtors have information that the IFC was investigating reports that money loaned to Nova Hut was not being used for project purposes. This caused the IFC to become concerned about its investment. The IFC began to pressure Nova Hut to sell the mill, and the IFC began to look for a purchaser.

22. In 1999, Lakshmi Mittal, an Indian steel company owner, expressed an interest in purchasing Nova Hut. At the time, Mittal operated through a number of companies, including

Ispat International N.V. and LNM Holdings N.V. The IFC suggested Mittal as a purchaser, but the Czech government was not interested in selling the mill to Mittal and wanted the company to remain Czech owned. Nova Hut, therefore, developed several alternative plans to privatize Nova Hut, including a proposal to merge Nova Hut with other large Czech steel producers.

23.  The IFC opposed Nova Hut's proposed merger plan and instead, for no transparent reason, lobbied for a sale to Mittal in a non competitive transaction. Mittal's Ispat International, the company that Mittal proposed at that time for the purchase of Nova Hut, was not financially healthy. The price of Ispat International stock fell 97% to $.90 between 1997, the year it went public, and October 2001. The company carried $4.8 billion in debt, and the stock market valued Ispat at just $108 million. It is not readily apparent why the IFC would support and reportedly insist on the sale of Nova Hut to such a financially weak company.

24.  In February, 2002, the Czech Government, at the urging of the IFC, granted three months to Mittal have the exclusive right to negotiate the purchase of Nova Hut. The Czech Government made this agreement under pressure from the IFC, even though other parties such as U.S. Steel and domestic Czech steel interests were reportedly interested in the purchase of Nova Hut.

25.  In May 2002, Nova Hut agreed to a sale to Mittal's LNM Holdings. In order to force Nova Hut to sell to Mittal, the IFC threatened to put Nova Hut in bankruptcy if it did not agree to the sale, which was not a politically viable option to the Czech government.

26.  The terms of the sale were favorable to the IFC, although not necessarily to the Czech government. At the time of the sale, Nova Hut owed the Czech government $116 million. Under the agreement, the government cancelled this $116 million debt, and Mittal did not have to repay these loans. The loan to the IFC, however, was not forgiven, and in December 2004

Mittal fully repaid the $250 million IFC loan. As noted previously, it was earlier in May 2004 that the IFC granted LNM Holdings a $100 million loan.

27. After the sale of Nova Hut to Mittal, the IFC's Charles Van der Mandele, then the IFC's head of special operations for Central and Eastern Europe, was appointed to Nova Hut's supervisory board, a position that paid Van der Mandele $16,000 annually. Van der Mandele remains on the board of the company, now called ArcelorMittal Ostrava.

28. This evidence shows the extraordinary role that the IFC played in the affairs of Nova Hut, including virtually dictating the entity to whom the sale would be made. It also shows the extent that the IFC is willing to go to protect its interests, regardless of the harm to other parties. Finally, the evidence shows that the IFC is involved in all aspects of Nova Hut's affairs.

29. This evidence directly supports the Debtors' allegations. As set forth in the Debtors' motion, representatives of Nova Hut stated that during the mini-mill construction project the IFC controlled all decisions concerning resolution of project issues, including explicitly preventing Nova Hut from agreeing on a settlement with the Debtors' concerning contractual disputes.

30. Kaiser needs discovery regarding the IFC's involvement in the contractual relationship between Kaiser and Nova Hut, as well as any influence by the IFC on the proceedings and outcome of the arbitration. Given the history of the IFC's involvement with Nova Hut, there is reason to believe that discovery will disclose such involvement.

31. This new evidence meets the requirements of Rule 60(b)(2). While the evidence was in existence at the time the Debtors filed their discovery motion, it was hidden and not readily available. Indeed, the evidence only came to light as the result of an extraordinary

investigation by the Debtors following specific reports of World Bank corruption that were only made public in the summer of 2007.

32.   This evidence substantiates the evidence in the Debtors' discovery motion and establishes the need for discovery in the Bankruptcy Court. This evidence, further, makes it probable that the Bankruptcy Court would change its decision. Certainly, this evidence shows a need for further discovery – discovery that in all likelihood will not be available in an arbitration. In any event, neither this Court nor the Bankruptcy Court should refuse the Debtors the opportunity to perform meaningful inquiry into corrupt practices that impact a pending case.

WHEREFORE, in light of this evidence, which is both compelling and likely would have resulted in a different decision in Bankruptcy Court, the Debtors respectfully request leave to supplement the record, or in the alternative, request that this case be remanded to the bankruptcy court for reconsideration based on the newly discovered evidence.

Respectfully submitted,

SAUL EWING LLP

Mark Minuti (No. 2659)
Jeremy W. Ryan (No. 4057)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
302-421-6840

-and-

George E. Rahn, Jr.
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
215-972-7165

-and-

Jonathan M. Landers
Robert K. Dakis
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York. NY 10166
212-351-4000

Attorneys for Debtors
and Debtors in Possession

Dated: March 6, 2008

UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KAISER GROUP INTERNATIONAL, INC., *et al.*, | Case No. 00-2263 (MFW) <br> Adv. No. 01-928( (MW) |
| Debtors. | (Jointly Administered) |
| KAISER INTERNATIONAL, INC., *et al.*, | |
| Appellant, | |
| v. | C.A. No. 07-124 (JJF) |
| MITTAL STEEL OSTRAVA a.s., formerly known as NOVA HUT a.s. and INTERNATIONAL FINANCE CORPORATION, | |
| Appellees. | |
| KAISER INTERNATIONAL, INC., *et al.*, | |
| Plaintiffs, | |
| v. | C.A. No. 07-125 (JJF) |
| MITTAL STEEL OSTRAVA a.s., formerly known as NOVA HUT a.s. and INTERNATIONAL FINANCE CORPORATION, | |
| Defendants. | |

## ORDER

AND NOW, this ____ day of _____, 2008, upon consideration of the Debtors' motion for leave to supplement the record,

557053 1 3/6/08

IT IS HEREBY ORDERED that the motion is GRANTED.

BY THE COURT:

_____ J.

UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KAISER GROUP INTERNATIONAL, INC., *et al.*, | Case No. 00-2263 (MFW)<br>Adv. No. 01-928( (MW) |
| Debtors. | (Jointly Administered) |
| KAISER INTERNATIONAL, INC., *et al.*, | |
| Appellant, | |
| v. | C.A. No. 07-124 (JJF) |
| MITTAL STEEL OSTRAVA a.s., formerly known as NOVA HUT a.s. and INTERNATIONAL FINANCE CORPORATION, | |
| Appellees. | |
| KAISER INTERNATIONAL, INC., *et al.*, | |
| Plaintiffs, | |
| v. | C.A. No. 07-125 (JJF) |
| MITTAL STEEL OSTRAVA a.s., formerly known as NOVA HUT a.s. and INTERNATIONAL FINANCE CORPORATION, | |
| Defendants. | |

## **ALTERNATE ORDER**

AND NOW, this _____ day of _____, 2008, upon consideration of the Debtors' motion to remand the case to the United States Bankruptcy Court for reconsideration based on newly discovered evidence pursuant to Federal Rule of Civil Procedure 60(b)(2),

557053.1 3/6/08

-2-

IT IS HEREBY ORDERED that the motion is GRANTED.

BY THE COURT:

_____ J.

557053.1 3/6/08                             -2-

UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| KAISER GROUP INTERNATIONAL, | : | Case No. 00-2263 (MFW) |
| INC., *et al.*, | : | Adv. No. 01-928( (MW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| KAISER INTERNATIONAL, INC., *et al.*, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | C.A. No. 07-124 (JJF) |
| | : | |
| MITTAL STEEL OSTRAVA a.s., formerly known as NOVA HUT a.s. and INTERNATIONAL FINANCE CORPORATION, | : | |
| | : | |
| Appellees. | : | |
| KAISER INTERNATIONAL, INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 07-125 (JJF) |
| | : | |
| MITTAL STEEL OSTRAVA a.s., formerly known as NOVA HUT a.s. and INTERNATIONAL FINANCE CORPORATION, | : | |
| | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I, Jeremy W. Ryan, Esquire of Saul Ewing LLP hereby certify that on March 6, 2008 a copy of the foregoing **Debtors' Motion for Leave to Supplement the Record or, Alternatively, to Remand the Case to the Bankruptcy Court for Reconsideration Based on Newly Discovery**

557053.1 3/6/08

**Evidence Pursuant to Rule 60(b)(2)** was served on the parties on the attached service list in the manner indicated.

                                     Jeremy W. Ryan (No. 4057)
                                     **SAUL EWING LLP**
                                     222 Delaware Avenue, Suite 1200
                                     P.O. Box 1266
                                     Wilmington, DE  19899
                                     (302) 421-6800

KAISER GROUP INTERNATIONAL, INC., *et al.* v. NOVA HUT, *et al.*
Service List

**Via Hand Delivery:**
Victoria Watson Counihan, Esquire
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Robert J. Stearn, Jr., Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

**Via Overnight Delivery:**
Adam D. Cole, Esquire
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166

Annapoorni R. Sankaran, Esquire
Greenberg Traurig, LLP
One International Place, 20th Floor
Boston, MA 02110

Warren E. Zirkle, Esquire
McGuire Woods LLP
1750 Tysons Blvd., Suite 1800
McLean, VA 22102