## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KAISER GROUP INTERNATIONAL, INC. *et al.*, | Case No. 00-2263 (MFW) Adv. no. 01-928 (MW) |
| Debtors | (Jointly Administered) |

KAISER INTERNATIONAL, INC., *et al.*

Appellant

v.                                              C.A. No. 07-124 (JJF)

NOVA HUT a.s. and
INTERNATIONAL FINANCE CORPORATION,

Appellees

KAISER INTERNATIONAL, INC., *et al.*

Plaintiffs

v.                                              C.A. No. 07-125 (JJF)

NOVA HUT a.s. and
INTERNATIONAL FINANCE CORPORATION,

Defendants

## INTERNATIONAL FINANCE CORPORATION'S OPPOSITION TO DEBTORS' MOTION FOR LEAVE TO SUPPLEMENT THE RECORD OR, ALTERNATIVELY, TO REMAND THE CASE TO THE BANKRUPTCY COURT FOR RECONSIDERATION BASED ON NEWLY DISCOVERED EVIDENCE PURSUANT TO RULE 60(b)(2)

Defendant Appellee International Finance Corporation (the "IFC"), by counsel,

hereby objects to Debtors' Motion for Leave to Supplement the Record or, Alternatively,

to Remand the Case to the Bankruptcy Court for Reconsideration Based on Newly

Discovered Evidence Pursuant to Rule 60(b)(2) (the "Motion to Supplement"). For the reasons stated below, the Motion to Supplement should be denied.

### INTRODUCTION

Debtor Plaintiffs' ("Plaintiffs") Motion to Supplement represents yet another example of Plaintiffs' willingness to say whatever is necessary without regard for truth in their attempt to revive claims against the IFC that the Bankruptcy Court has already evaluated and stayed pending mandatory arbitration. Rather than identify any "newly discovered evidence," Plaintiffs offer nothing more than speculation and conjecture and fail to provide even a single affidavit or document in support of any of their outrageous allegations. More importantly, the Bankruptcy Court has already considered and rejected similar arguments as irrelevant, concluding that since Plaintiffs' claims are "subject to arbitration … any discovery relating to those disputes should be conducted in that forum in accordance with the applicable arbitration rules." *Kaiser Group Int'l, Inc. v. Nova Hut a.s. (In re Kaiser Group Int'l, Inc.)*, 375 B.R. 120, 123 (Bankr. D. Del. 2007).

Plaintiffs' Motion to Supplement seeks, in the alternative, either: (1) leave to supplement the record on appeal from the Bankruptcy Court; or (2) remand of the case to Bankruptcy Court for reconsideration based on newly discovered evidence pursuant to Rule 60(b)(2)[1]. As set forth further below, there is absolutely no legal or factual basis for either of Plaintiffs' frivolous requests and both should be denied.

### PROCEDURAL HISTORY

Beginning on May 16, 2001, Plaintiffs filed four complaints (the original complaint and three amended complaints) against Nova Hut a.s., k/n/a Mittal Steel

---

[1] All "Rule" references are to the Federal Rules of Civil Procedure.

Ostrava, a.s. ("Nova Hut") and the IFC. The complaints arise out of a 1997 Design and Construction Agreement (the "Construction Agreement") between Nova Hut and Kaiser Netherlands, a non-debtor subsidiary of Plaintiffs, under which Kaiser Netherlands was to construct a steel mill for Nova Hut in the Czech Republic. At the heart of Plaintiffs' claims against Nova Hut and the IFC is a dispute between Nova Hut and non-debtor Kaiser Netherlands as to whether the steel mill passed a performance test required by the Construction Agreement.

The Construction Agreement provides that any disputes relating to that agreement must be arbitrated in Vienna, Austria, under Austrian law. In light of this arbitration requirement in the Construction Agreement, and because Plaintiffs' claims arise out of that Agreement, Nova Hut and the IFC each separately moved to stay Plaintiffs' claims pending arbitration.

Meanwhile, on January 2, 2004, pursuant to the arbitration clause of the Construction Agreement, Kaiser Netherlands filed for arbitration against Nova Hut in Vienna, Austria before the International Chamber of Commerce's ("ICC") International Court of Arbitration. On March 18, 2004, the United States District Court for the District of Delaware ruled that the proceedings as to the claims against Nova Hut should be stayed pending mandatory arbitration. *See Kaiser Group Int'l, Inc. v. Nova Hut a.s. (In re Kaiser Group Int'l, Inc.)*, 307 B.R. 449 (D. Del. 2004). Plaintiffs did not initiate arbitration against Nova Hut, but instead had Kaiser Netherlands, their wholly-owned subsidiary, arbitrate the dispute against Nova Hut in Austria. Consistent with the District Court's opinion, Plaintiffs' claims against Nova Hut remain stayed.

On June 29, 2005, the Bankruptcy Court stayed the proceedings against the IFC pending mandatory arbitration. (the "June 2005 Order")[2]. As with their claims against Nova Hut, Plaintiffs did not commence arbitration against the IFC. Instead, they had their wholly-owned subsidiary Kaiser Netherlands arbitrate what the Court had described in the June 2005 Order as the "bulk of the issues and predicate facts that need to be determined in deciding the claims of the Third Amended Complaint against the IFC." *Id.* at ¶ 5. Consistent with the June 2005 Order, Plaintiffs' claims against the IFC remain stayed.

On or about May 16, 2006, the ICC issued the final award in the Vienna Arbitration. In the award, the panel concluded that Kaiser Netherlands had failed the performance test required by the Construction Agreement. In light of the arbitration award, on December 13, 2006, Nova Hut moved that the Bankruptcy Court lift the stay of proceedings against Nova Hut and enter summary judgment on the grounds of *res judicata* and collateral estoppel. Shortly thereafter, on January 25, 2007, Plaintiffs filed a cross-motion for summary judgment as well as a discovery motion, which sought an order authorizing Plaintiffs to conduct virtually unlimited discovery from Nova Hut and the IFC. (the "Discovery Motion")[3]. Plaintiffs' Discovery Motion was premised on outlandish and unsupported allegations of an international conspiracy involving Cleary Gottlieb, Nova Hut, the IFC, and other parties to corruptly influence the Vienna Arbitration.

---

[2] See Exhibit 1, Order Granting Defendant International Finance Corporation's Renewed Motion To Stay Further Proceedings Pending Arbitration, Dated June 29, 2005.

[3] See Exhibit 2, Debtors' Motion For An Order Pursuant to Federal Rule Of Bankruptcy Procedure 2004, Or Alternatively A Bill Of Equitable Discovery, Directing Examination Of, And Production Of Documents By The International Finance Corporation, Nova Hut, And Related Parties, Filed January 25, 2007.

4

At an April, 2007 hearing on these various motions, the Bankruptcy Court "denied the Discovery Motion on the same grounds that the adversary proceeding had been stayed … that the disputes between the parties were subject to arbitration and that, therefore, any discovery relating to those disputes should be conducted in that forum in accordance with the applicable arbitration rules." *In re Kaiser Group Int'l, Inc.*, 375 B.R. at 123. As the Bankruptcy Court explained, "[t]he adversary proceeding has been stayed and the Debtors were directed to arbitrate all their claims against Nova Hut. Three years later, the Debtors still have not commenced an arbitration proceeding. Therefore, any lack of discovery on these claims is attributable to the Debtors' lack of action." *Id.* at 128.

On May 31, 2007, the Bankruptcy Court issued an order formally denying Plaintiffs' Discovery Motion. (the "Discovery Order")[4]. In September 2007, the Bankruptcy Court also denied both Nova Hut's and Plaintiffs' cross-motions for summary judgment. *In re Kaiser Group Int'l, Inc.*, 375 B.R. at 129. Plaintiffs have appealed the Bankruptcy Court's Discovery Order.

**ARGUMENT**

**I. The Purportedly "Newly Discovered Evidence" Cited In Plaintiffs' Motion To Supplement Has Absolutely No Relevance To The Discovery Order Or Plaintiffs' Appeal Of That Order.**

While Plaintiffs' Motion to Supplement suffers from a number of fatal procedural shortcomings, the most significant is that none of the so-called newly discovered evidence cited by Plaintiffs has any relevance to the Bankruptcy Court's denial of their

---

[4] See Exhibit 3, Order Denying Debtors' Motion For An Order Pursuant To Federal Rule Of Bankruptcy Procedure 2004, Or Alternatively A Bill Of Equitable Discovery, Directing Examination Of, And Production Of Documents By The International Finance Corporation, Nova Hut, And Related Parties, Dated May 31, 2007.

Discovery Motion. In their Discovery Motion, Plaintiffs set out every allegation of corruption or improper influence of which they could conceive, no matter how facially ridiculous or potentially libelous.[5] At the end of the day, the Bankruptcy Court held that none of these allegations were in any way relevant since "any discovery relating to [the disputes between the parties] should be conducted in that forum in accordance with the applicable arbitration rules." *In re Kaiser Group Int'l, Inc.*, 375 B.R. at 123. As the Bankruptcy Court explained, "discovery and issues related to the integrity of the Arbitration Award must be brought in the Arbitration Tribunal in accordance with its rules and … the bankruptcy court is not the proper forum for attacking the integrity of the Arbitration Award." *Id.* at 128. Since Plaintiffs "still have not commenced an arbitration proceeding … any lack of discovery on [their] claims is attributable to [their] lack of action." *Id.*

As the Bankruptcy Court's holding makes clear, neither the quality nor quantity of Plaintiffs' evidence regarding their corruption and improper influence claims ever entered into the equation. Simply stated, so long as Plaintiffs' proceedings against the IFC remain stayed pending arbitration, neither Plaintiffs nor the IFC may conduct discovery in the Bankruptcy Court. *See Corpman v. Prudential-Bache Sec. Inc.*, 907 F.2d 29, 31 (3d Cir. 1990) ("Where an action has been stayed pending arbitration, a [trial] court may not permit the parties to conduct discovery under the Federal Rules of Civil

---

[5] Plaintiffs have already argued, among other things, that: "there are serious questions of integrity and impartiality" of the arbitration; the IFC "appeared to exercise control over the business of Nova Hut"; "IFC and/or Nova Hut may have exerted influence over the tribunal's decision"; the IFC "actively interfered with the contractual relationships between [Plaintiffs] and Nova Hut"; and "there are serious questions about [sic] integrity of the arbitration, including possible improper contact between Nova Hut and/or the IFC and the arbitrators, as well as other improprieties." Discovery Motion at 2-3, 17, 22, 31.

6

Procedure.")  For Plaintiffs now to argue that the introduction of even more baseless and
unsupported allegations could somehow justify supplementation of the record or remand
is absurd.

**II.    Plaintiffs' So-Called "Newly Discovered Evidence" Was Not Before The Bankruptcy Court And Thus Cannot Be Included In The Record On Appeal.**

One of the basic tenets of appellate jurisprudence is that the appellate court is not
the initial trier of fact, but instead reviews the trial court's findings based on the facts that
were presented to the trial court.  For this reason, District Courts within this Circuit have
repeatedly held that, in reviewing a decision of the Bankruptcy Court, "[t]he District
Court is limited to the factual record before the Bankruptcy Court." *Gessman v. United
States (In re Applied Paging Techs., Inc.)*, 250 B.R. 496, 499 (D.N.J. 2000) (citing
*Mellon Bank, N.A. v. Delaware & Hudson Ry. (In re Delaware and Hudson Ry.
Company)*, 129 B.R. 388, 396 (D. Del. 1991)).  Thus, "[i]tems not before the Bankruptcy
Court and not considered by it in rendering its decision may not be included in the
record." *In re Neshaminy Office Bldg. Ass'n*, 62 B.R. 798, 802 (E.D. Pa. 1986); *see also
Sipes v. Atlantic Gulf Cmtys. Corp. (In re Gen. Dev. Corp.)*, 84 F.3d 1364, 1369 (11th
Cir. 1996) (supplementation of record on appeal allowed only by documents considered
by the Bankruptcy Court).  Likewise, "if an item was not considered by the [Bankruptcy]
court, it should be *stricken* from the record on appeal." *Metro North State Bank v. The
Barrick Group, Inc. (In re The Barrick Group, Inc.)*, 100 B.R. 152, 154 (Bankr. D. Conn.
1989) (emphasis added).

Plaintiffs have cited *no* authority in support of the argument that the purportedly
new evidence they claim to have discovered provides any basis for supplementing the
record on appeal in this case.  Indeed, the Third Circuit has made clear that a party may
submit "newly discovered evidence" on appeal only in the most "extraordinary

circumstances." *In re Application of Ariel Adan*, 437 F.3d 881, 388 n.3 (3d Cir. 2006).
Such "extraordinary circumstances" are limited to situations in which the newly
discovered evidence "are facts" that "render the case moot or alter the appropriateness of
injunctive relief, a change in pertinent law, or facts of which a court may take judicial
notice." *Id.* Plaintiffs' so-called newly discovered evidence obviously does not fall into
any of these narrow categories and thus does not present any "extraordinary
circumstances" that would justify supplementing the record.

Since Plaintiffs' purported "new evidence" was not presented to the Bankruptcy
Court and no "extraordinary circumstances" merit its inclusion, their motion to
supplement the record with that evidence should be denied. *See also Ideal Sys., Inc. v.
CPDC, Inc. (In re CPDC, Inc.)*, 337 F.3d 436, 443 (5th Cir. 2003) ("[I]tems [may not] be
added to the record on appeal to the district court if they were not part of the record
before the bankruptcy court.")

### III.  Plaintiffs Have Failed To Satisfy Any Of The Requirements For Reconsideration Pursuant To Federal Rule Of Civil Procedure 60(b)(2).

Rule 60(b)(2) provides that "the court may relieve a party or its legal
representative from a final judgment, order, or proceeding for … newly discovered
evidence that, with reasonable diligence, could not have been discovered in time to move
for a new trial under Rule 59(b)." Plaintiffs allege that they have "uncovered evidence …
that was not available at the time [that the Bankruptcy Court issued the Discovery Order],
could not have been discovered before the Bankruptcy Court's order, and … [that] may
change the result in the Bankruptcy Court." *See* Motion to Supplement at ¶ 10. On that
basis, Plaintiffs argue that if this Court does not grant them leave to supplement the
record, it should remand this matter to the Bankruptcy Court for further proceedings in
accordance with Rule 60(b)(2).

8

A. **Rule 60(b)(2) is not applicable because the Bankruptcy Court's denial of the Discovery Motion is not a "final judgment, order or proceeding."**

As an initial matter, regardless of whether the purportedly "new evidence" identified by Plaintiffs satisfies the high standards imposed by Rule 60(b)(2), Plaintiffs' Motion to Supplement fails because the Discovery Order is not a final judgment, order, or decree. By its plain terms, Rule 60(b) applies only to "final judgment[s], order[s] or proceeding[s]." *See also Penn West Assoc., Inc. v. Cohen*, 371 F.3d 118 (3d Cir. 2004) (previous order marking civil action closed due to "having been advised of the full and final settlement" was not a final decision under Rule 60(b) since the parties had not in fact executed the settlement); *Indemnity Ins. Co. of N. Am. v. Reisley*, 153 F.2d 296, 299 (2d Cir. 1946) (specifically noting that Rule 60(b) "relates only to a final order"). Indeed, Rule 60(b) was amended in 1946 by adding the word "final" so as to "emphasize[] the character of the judgments, orders or proceedings from which Rule 60(b) affords relief." *See* FED R. CIV. P. 60, Advisory Committee Notes, 1946 Amendment. A "final order" is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Penn West Assoc.*, 371 F.3d at 125 (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945) (internal quotations omitted)).

"Pretrial discovery decisions are not 'final decisions'... ." *New York v. United States Metals Refining Co.*, 771 F.2d 796, 799 (3d Cir. 1985); *see also FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269, 276 (1991) (noting that discovery decisions are "clearly interlocutory," and that the "belief that such a decision is a final judgment would *not* be reasonable"). This holds true whether a discovery decision is issued by a district court or a bankruptcy court. *See In re Jeannette Corp.*, 832 F.2d 43, 46 (3d Cir. 1987); *see also Indemnity Ins. Co.*, 153 F.2d at 299 (stating that "no order in a

9

bankruptcy proceeding is final … until the proceeding has been terminated").

Accordingly, the Discovery Order is not a final order from which the Plaintiffs are

entitled to request relief under Rule 60(b)(2), and their motion to remand pursuant to that

rule should be denied.

**B.      Plaintiff cannot satisfy the demanding standard required for the
          Bankruptcy Court to grant relief under Rule 60(b)(2).**

Notwithstanding the interlocutory nature of the Discovery Order, Plaintiffs argue

that they are entitled to remand of this matter based upon the possibility that the

Bankruptcy Court might grant them relief from the Discovery Order under Rule 60(b)(2).

As set forth below, even if the Discovery Order were a final order, Plaintiffs' argument is

without merit.

### 1.  *Plaintiffs have applied the incorrect standard for evaluating Rule 60(b)(2).*

In their Motion to Supplement, Plaintiffs inexplicably rely upon a line of

Delaware *state* cases interpreting Delaware Superior Court Rule 60(b)(2) and argue that

the standards applied by Delaware state courts govern the availability of relief in this

Court under Rule 60(b)(2).  Although Delaware Superior Court Rule 60(b)(2) is similar

to Rule 60(b)(2), Delaware state courts have interpreted that provision to impose different

requirements than those imposed by federal courts in the Third Circuit applying Rule

60(b)(2).

In the Third Circuit, a moving party is entitled to relief under Rule 60(b)(2) "only

if such evidence (1) is material and not merely cumulative, (2) could not have been

discovered prior to trial through the exercise of reasonable diligence, *and* (3) would

probably have changed the outcome of the trial."  *Bohus v. Beloff*, 950 F.2d 919, 930 (3d

Cir. 1991) (citing *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983)).  Courts "view

10

Rule 60(b) motions as 'extraordinary relief which should be granted only where extraordinary justifying circumstances are present.'" *Id.* (citing *Plisco v. Union R.R. Co.*, 379 F.2d 15, 17 (3d Cir. 1967)). A party moving for relief under Rule 60(b) thus "bears a heavy burden" and must demonstrate "more than … the potential significance of the new evidence." *Id.*

Plaintiffs do not begin to satisfy this heavy burden in their Motion to Supplement and therefore are not entitled to the extraordinary relief they seek.

### 2. *Plaintiffs fail to present to the Court any "evidence of facts in existence at the time of trial."*

"Newly discovered evidence," for purposes of Rule 60(b)(2), is "evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant." *Bohus*, 950 F.2d at 930. To constitute "evidence," however, the newly discovered information proffered by the moving party must be admissible and credible. *See, e.g., New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195,1201 (5th Cir. 1993) (holding that affidavits attesting to moving party's search for evidence and discussing what evidence the moving party might be able to obtain constituted mere speculation and was not competent "evidence" to be considered under Rule 60(b)(2)).

Plaintiffs' Motion to Supplement contains no admissible or credible evidence. Plaintiffs have offered nothing more than speculation and conjecture that they might ultimately be able somehow to show that "the IFC may have acted improperly in this matter." Motion to Supplement at ¶ 4. Although Plaintiffs assert that they have undertaken an "extraordinary investigation," *id.* at ¶ 31, and uncovered evidence of IFC's allegedly improper conduct, Plaintiffs never once identify any specific "evidence" that will bear out Plaintiffs' allegations. Tellingly, Plaintiffs fail even to identify any of the sources for the allegations contained in their Motion to Supplement, much less offer any

11

affidavit or other documentation in support of those allegations. Plaintiffs have simply

failed to present for the Court's consideration any evidence, much less any newly

discovered evidence, that is admissible and credible as required by Rule 60(b)(2).

### 3. The allegations in Plaintiffs' Motion to Supplement are not material to the Discovery Order and are merely cumulative of matters already considered by the Bankruptcy Court.

As noted above, Rule 60(b)(2) requires the newly discovered evidence identified

by the moving party to be "material and not merely cumulative" of other information

already presented to the court. *See Bohus*, 950 F.2d at 930. Even assuming, *arguendo*,

that Plaintiffs had produced actual evidence that is newly discovered and that supports

the allegations in their Motion to Supplement, that evidence would be immaterial and

merely cumulative.

Plaintiffs' claimed newly discovered evidence is immaterial because it is

irrelevant to the Bankruptcy Court's rationale for denying their Discovery Motion.

Materiality, under Rule 60(b)(2), is evaluated by looking to whether the newly discovered

evidence is offered to prove a proposition at issue in the case. *See, e.g., Longden v.

Sunderman*, 979 F.2d 1095, 1103 (5th Cir. 1992) (finding that agreement between

attorneys in class action regarding division of fees was immaterial because "it is the

court, not Class Counsel, who is the final judge of the appropriate fee," regardless of

agreement between attorneys). The Bankruptcy Court explained that it denied Plaintiffs'

Discovery Motion because "the disputes between the parties were subject to arbitration

and that, therefore, any discovery relating to those disputes should be conducted in that

forum in accordance with the applicable arbitration rules." *In re Kaiser Group Int'l, Inc.*,

375 B.R. at 123. The Bankruptcy Court found Plaintiffs' corruption allegations totally

irrelevant and placed the blame for any lack of discovery squarely on Plaintiffs, noting

12

that "[t]hree years later, the Debtors still have not commenced an arbitration proceeding
... [and] any lack of discovery on these claims is attributable to the Debtors' lack of
action." *Id.* at 128. Plaintiffs' rehashed allegations of corruption are, therefore, irrelevant
and immaterial to the Discovery Order and do not support relief under Rule 60(b)(2).

Even if material, in order to satisfy Rule 60(b)(2), newly discovered evidence
must also not be cumulative of evidence already introduced or evidence that could have
been introduced through the exercise of due diligence. *See Lyons v. Jefferson Bank &
Trust*, 994 F.2d 716, 728 (10th Cir. 1993) (where a party "fails to present evidence that
was available, it may not find a refuge under Rule 60(b)(2) by finding substantially
similar evidence from a newly discovered source"). Plaintiffs' Motion to Supplement is
obviously simply a continuation of the same type of baseless allegations contained in
their Discovery Motion. Plaintiffs have already alleged, for instance, in their Discovery
Motion that the IFC "used its influence over Nova Hut to frustrate [Plaintiffs'] ability to
obtain payments to which [they were] contractually entitled." Discovery Motion at 8.
Indeed, Plaintiffs essentially concede this point by arguing that the "evidence" in their
Motion to Supplement "substantiates the evidence in [Plaintiffs'] discovery motion." *Id.*
at ¶ 32. Because this alleged evidence is merely cumulative to that which was presented
by Plaintiffs to the Bankruptcy Court in their Discovery Motion, it cannot form the basis
for relief under Rule 60(b)(2).

### 4. Plaintiffs fail to demonstrate that the basis for their allegations could not have been discovered prior to issuance of the Discovery Order by the Bankruptcy Court.

The party requesting relief under Rule 60(b)(2) must also show that its failure to
present the newly discovered evidence during the first proceeding was not the result of its
failure to exercise reasonable diligence. *See Catasauqua Area School Dist. v. Eagle-*

13

*Picher Indus., Inc.*, 118 F.R.D. 566, 570 (E.D. Pa. Jan. 19, 1988) (citing *Stridiron v.*

*Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983)). The focus of the reasonable diligence

inquiry is therefore what the moving party could have presented as evidence, not what the

moving party did present as evidence. *See, e.g., Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 44

(4th Cir. 1990) (finding lack of due diligence where moving party could have obtained

test results showing contamination if it had hired consultant and ordered tests before

trial).

It is not sufficient for the moving party to simply allege in conclusory fashion that

it exercised reasonable diligence yet was unable to locate the newly discovered evidence;

rather, the moving party must set forth facts detailing why it was unable to present the

newly discovered evidence at the prior trial. *See Kender v. Gen. Expressways, Ltd.*, 34

F.R.D. 237, 239 (E.D. Pa. May 14, 1963) (citing *United States. v. Rutkin*, 208 F.2d 647,

649-50 (3d Cir. 1953)). Plaintiffs' Motion to Supplement is devoid of any facts

explaining their failure to present this alleged newly discovered evidence when the

Bankruptcy Court previously considered their Discovery Motion. As Plaintiffs openly

acknowledge, their purported "location" of this "information" was merely the result of

their ongoing investigation into the relationship between IFC and Nova Hut. *See* Motion

to Supplement at ¶ 9. Plaintiffs likewise offer no factual basis for their contention that

this information "was hidden and not readily available" at the time that Plaintiffs filed

their Discovery Motion. *See id.* at ¶ 31.

### 5. *Plaintiffs' allegations would not change the outcome in the Bankruptcy Court because Plaintiffs' allegations of corruption were irrelevant to its decision to deny the Discovery Motion.*

Finally, even if the moving party can demonstrate that the newly discovered

evidence is of facts that were in existence at the time of trial, that such evidence is

14

material and not merely cumulative, and that it could not have been discovered prior to trial through the exercise of reasonable diligence, the moving party *still* is not entitled to relief under Rule 60(b)(2) unless the newly discovered evidence "would *probably* have changed the outcome of the trial." *See Bohus*, 950 F.2d at 930 (emphasis added). To satisfy this requirement, the moving party must "present a cogent explanation as to *why* the [newly discovered evidence] would have produced a different result." *Resolution Trust Corp. v. Kent*, 951 F.2d 657, 664 (5th Cir. 1992). Information that is merely cumulative such as that offered by Plaintiffs will not be found to have probably produced a different result. *See, e.g., Mancuso v. Consol. Edison Co. of New York*, 905 F. Supp. 1251, 1265 (S.D.N.Y. 1995) (finding no likelihood of a different result because "the newly discovered evidence [was] merely cumulative").

As discussed above, the Bankruptcy Court did not rely upon Plaintiffs' allegations of an improper relationship between IFC and Nova Hut in denying Plaintiffs' Discovery Motion, although Plaintiffs argued extensively that such an improper relationship existed. Rather, the basis for the Discovery Order was the Bankruptcy Court's ruling that this case has been stayed pending arbitration by the parties and that "any discovery relating to [the disputes between the parties] should be conducted in that forum in accordance with the applicable arbitration rules." *In re Kaiser Group Int'l, Inc.*, 375 B.R. at 123.

Stated simply, this cumulative "evidence" cited in Plaintiffs' Motion to Supplement was considered by the Bankruptcy Court previously, was rejected by the Bankruptcy Court as a basis for granting Plaintiffs the opportunity to conduct discovery, and is irrelevant to the Bankruptcy Court's basis for denying Plaintiffs' Discovery Motion. Therefore, such "evidence" is not likely to result in a different outcome.

CONCLUSION

Plaintiffs' Motion to Supplement is frivolous and provides no legal or factual basis for either supplementing the record on appeal or for reconsideration pursuant to Federal Rule of Civil Procedure 60(b)(2).  Plaintiffs' Motion to Supplement should, therefore, be denied.

Respectfully submitted,

Dated: March 17, 2008
      Wilmington, Delaware

Robert J. Stearn, Jr. (No. 2915)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
P.O. Box 551
One Rodney Square
Wilmington, Delaware  19899
(302) 651-7700

- and -

Warren E. Zirkle
McGUIRE WOODS LLP
1750 Tysons Blvd., Suite 1800
McLean, Virginia 22012
(703) 712-5000

Counsel for Defendant International Finance Corporation

RLF1-3263576-1

# EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | )    **Chapter 11** |
| | ) |
| **KAISER GROUP INTERNATIONAL,** | )    **Case No. 00-2263 (MFW)** |
| **INC., et al.,** | ) |
| | )    **Jointly Administered** |
| Debtors. | ) |
| | ) |

| | |
|---|---|
| **KAISER GROUP INTERNATIONAL,** | ) |
| **INC., et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    **Adv. No. 01-928 (MFW)** |
| | ) |
| **NOVA HUT, a.s., and** | ) |
| **INTERNATIONAL FINANCE** | ) |
| **CORPORATION,** | ) |
| | ) |
| Defendants. | ) |

### ORDER GRANTING DEFENDANT
### INTERNATIONAL FINANCE CORPORATION'S RENEWED
### MOTION TO STAY FURTHER PROCEEDINGS PENDING ARBITRATION

Defendant International Finance Corporation's (the "IFC") Renewed Motion to

Stay Further Proceedings Pending Arbitration, dated April 12, 2005 (the "Motion")

seeks a stay of all proceedings in this matter under § 3 of the Federal Arbitration Act, 9

USC § 3 or, alternatively, for a stay pending the outcome of ongoing arbitration

between ICF Kaiser Netherlands B.V. ("Kaiser Netherlands") and Nova Hut a.s. (k/n/a

ISPAT Nova Hut, a.s.) ("Nova Hut").

Due and sufficient notice of the Motion having been given and no further or

other notice being required; the Court having considered the allegations of the Third

Amended Complaint, the parties' briefing and argument on the Motion; and good and just cause appearing therefore; the Court finds that:

    1.    The claims of Kaiser Group International, Inc., et al. ("Debtors") against the IFC in the Third Amended Complaint are premised on the Phase I Agreement and the underlying parties' obligations under that Agreement, which contains an arbitration clause.

    2.    Although Debtors are not signatories to the Phase I Agreement, the District Court has held that the Debtors are bound to arbitrate the claims asserted in the Third Amended Complaint against Nova Hut because those claims were based on the underlying contract containing an arbitration clause.

    3.    The District Court's analysis likewise applies to the Debtors' claims against the IFC.

    4.    The IFC has agreed to arbitrate all claims raised by the Third Amended Complaint.

    5.    The bulk of the issues and the predicate facts that need to be determined in deciding the claims of the Third Amended Complaint against the IFC will be determined in the ongoing arbitration between Kaiser Netherlands and Nova Hut (the Vienna Arbitration).

    6.    Alternatively, if a mandatory stay pending arbitration were not warranted, discretionary abstention and a stay of all proceedings pending the outcome of the ongoing Vienna Arbitration would be necessary to avoid the waste of judicial resources that would result from trying the same issues in this Court.

2

**IT IS HEREBY ORDERED** that:

1.     The Motion is granted.

2.     Further proceedings in this matter are stayed pending mandatory arbitration of the claims of Debtors Kaiser Group International, Inc., et al. against the International Finance Corporation pursuant to the arbitration provision of the Phase I Agreement between Kaiser Netherlands and Nova Hut.


Dated: June 29 , 2005          _Mary Walrath_____
        Wilmington, Delaware          UNITED STATES BANKRUPTCY JUDGE


\\COM\515998 2

3

# EXHIBIT 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KAISER GROUP INTERNATIONAL, | ) | |
| INC., *et al.*, | ) | Case Nos. 00-2263 to 00-2301 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

| | | |
|---|---|---|
| KAISER INTERNATIONAL, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 01-928 (MFW) |
| | ) | |
| INTERNATIONAL FINANCE | ) | |
| CORPORATION, *et al.* | ) | |
| | ) | Hearing Date: February 20, 2007 @ 11:30 a.m. |
| Defendants. | ) | Objection Deadline: February 13, 2007 @ 4:00 p.m. |

## <u>NOTICE OF MOTION</u>

TO:

Victoria Counihan, Esquire
Dennis Meloro, Esquire
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Adam D. Cole, Esquire
Greenberg Traurig, LLP
885 Third Avenue
New York, NY 10022

Robert J. Stearn, Jr., Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Warren E. Zirkle, Esquire
J.L. Novak, Esquire
McGuire Woods LLP
1750 Tysons Blvd., Suite 1800
McLean, VA 22102

**PLEASE TAKE NOTICE** that on January 25, 2007, Kaiser Group International, Inc., *et al.* (the "Debtors"), through their undersigned counsel, filed the **Debtors' Motion For An Order Pursuant To Federal Rule Of Bankruptcy Procedure 2004, Or Alternatively A Bill Of Equitable Discovery, Directing Examination Of, And Production Of Documents By The International Finance Corporation, Nova Hut, And Related Parties** (the "Motion").

1941/283
1-25-07

544678 1 1/25/07

You are required to file a response to the attached Motion on or before **February 13, 2007 at 4:00 p.m.**

At the same time, you must also serve a copy of the response on the following:

| | |
|---|---|
| Mark Minuti, Esquire<br>Saul Ewing LLP<br>222 Delaware Avenue, Suite 1200<br>P.O. Box 1266<br>Wilmington, DE 19899 | George E. Rahn, Jr., Esquire<br>Risa B. Greene, Esquire<br>Saul Ewing LLP<br>Centre Square West<br>1500 Market Street, 38th Floor<br>Philadelphia, PA 19102 |
| Jonathan M. Landers, Esquire<br>Robert K. Dakis, Esquire<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166 | |

HEARING ON THE MOTION, IF NECESSARY, WILL BE HELD before the Honorable Mary F. Walrath, United States Bankruptcy Court, 824 N. Market Street, Wilmington, Delaware 19801 on **February 20, 2007 at 11:30 a.m.**

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

SAUL EWING LLP



Mark Minuti (No. 2659)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
302-421-6840

and-

George E. Rahn, Jr.
Risa B. Greene
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
215-972-7165

Jonathan M. Landers
Robert K. Dakis
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
212-351-4000

Attorneys for Debtors
and Debtors in Possession

Dated: January 25, 2007

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KAISER GROUP INTERNATIONAL, | ) | |
| INC., *et al.*, | ) | Case Nos. 00-2263 to 00-2301 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

| | | |
|---|---|---|
| KAISER INTERNATIONAL, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 01-928 (MFW) |
| | ) | |
| INTERNATIONAL FINANCE | ) | |
| CORPORATION, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## DEBTORS' MOTION FOR AN ORDER
## PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004,
## OR ALTERNATIVELY A BILL OF EQUITABLE DISCOVERY, DIRECTING
## EXAMINATION OF, AND PRODUCTION OF DOCUMENTS
## BY THE INTERNATIONAL FINANCE CORPORATION,
## <u>NOVA HUT, AND RELATED PARTIES</u>

### <u>INTRODUCTION</u>

Debtors seek discovery from the International Finance Corporation, Nova Hut and others

regarding a series of events that began with active interference of the IFC in the affairs of Nova

Hut and appear to have culminated in a tainted international arbitration. The issues arise out of

the construction of a minimill for Nova Hut in the Czech Republic by Kaiser Netherlands, a non-

debtor subsidiary of Debtors; Debtors provided financial support for the project; and the IFC

provided financial support to, and was directly involved in the affairs of, Nova Hut. More than

six years ago, both Nova Hut and the IFC filed proofs of claim against Debtors in connection

with these transactions and, even though the claims were withdrawn, this Court retained jurisdiction and the Third Circuit later held that the IFC waived sovereign immunity. Debtors have repeatedly sought discovery from Nova Hut and the IFC relating to the issues between the parties and, although discovery is fundamental both in bankruptcy cases and in federal litigation, Nova Hut and the IFC have successfully avoided discovery. Notwithstanding the absence of discovery, Debtors have obtained facts which suggest that the IFC interfered in and manipulated the affairs of Nova Hut, that there are serious questions of the integrity and impartiality of an arbitration for which Nova Hut is seeking the recognition of this Court, and that Debtors have viable legal claims against both Nova Hut and the IFC. If Nova Hut and the IFC can continue to prevent discovery, there is a good chance that justice will be denied.

On May 16, 2006, Kaiser Netherlands BV ("Kaiser Netherlands"), a nondebtor subsidiary, was informed it had lost an arbitration (the "Kaiser Netherlands Arbitration") against Nova Hut a.s. ("Nova Hut") of claims arising from the construction of the minimill. The arbitration award, however, is surrounded by questionable events. Specifically, a press release dated April 26, 2006 (three weeks before Kaiser Netherlands received notice of the arbitration award) on the Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb") website announced "Mittal Steel Ostrava in ICC Arbitration Victory" and stated that Mittal (successor to Nova Hut) was successful in the "unexpected outcome" even though (i) Mittal had "not strongly opposed Kaiser's claim that it successfully completed the performance tests" and (ii) the steel mill at issue had achieved "record production volumes." This press release is archived sequentially to suggest that the article was in fact posted on April 26, 2006, three weeks prior to the award's release. Other suspicious circumstances surrounding the arbitration award included an unexplained delay

in rendering the award, as well as arbitration findings which were directly contradicted by prior statements by Nova Hut.

Prior to these events, the International Finance Corporation ("IFC") had become directly involved in the affairs of Nova Hut, appeared to exercise control over the business of Nova Hut, and actively interfered with the contractual relationships between Kaiser and Nova Hut. Now, pursuant to orders of this Court and the District Court, Debtors are preparing for arbitrations with Nova Hut (the "Kaiser-Nova Hut Arbitration") and the IFC (the "Kaiser-IFC Arbitration" and, together with the Kaiser-Nova Hut Arbitration, the "Arbitrations") and information regarding the Kaiser Netherlands Arbitration and the involvement of the IFC in Nova Hut's affairs directly impacts the assets of Debtors, potential claims of Debtors, and the administration of Debtors' estates. For these reasons, Debtors seek the aid of this Court to obtain discovery so as to maximize the assets of Debtors' estate for the benefit of all its stakeholders. As shown below, an order of this Court is the only way for them to obtain the necessary information.

More specifically, Debtors are moving for the entry of an order pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"), Federal Rule of Civil Procedure 56(f) ("FRCP 56(f)"), or in the alternative pursuant to the Court's equitable powers to render a bill of discovery, directing the oral examination of and production of documents from the IFC, Nova Hut,[1] and other related parties. Previously, Debtors filed an adversary proceeding against IFC and Nova Hut alleging tortious interference with their business relations and prospective economic advantage. Ultimately, this Court stayed the adversary proceeding between Debtors and IFC pending arbitration of the dispute (i.e., separate from the non-debtor Kaiser Netherlands Arbitration), and Debtors are now preparing to file a request for arbitration against the IFC with

---

[1]    Nova Hut has since been purchased by the LNM Group and, following a merger, changed its name to Mittal Steel Ostrava, a.s

the International Chamber of Commerce (the "ICC").  As this Court recognized, the various disputes between Kaiser Netherlands, Debtors, Nova Hut and the IFC are somewhat related, but now there is a new and significant twist:  if the suspicions regarding the Kaiser Netherlands Arbitration are confirmed by discovery, such information could be relevant in connection with the completed Kaiser Netherlands Arbitration, the soon to be commenced Arbitrations and the continued supervision of this Court over Debtors' bankruptcy case.

The request for discovery has taken on additional urgency; on the basis of the potentially tainted award in the Kaiser Netherlands Arbitration, Nova Hut has moved for summary judgment in an adversary proceeding by Debtors against Nova Hut now pending in this Court, and is seeking such relief without ever submitting to discovery.  See Fed. R. Civ. P. 56(f).  One of the issues on summary judgment is whether Debtors had a full and fair opportunity to litigate in the Kaiser Netherlands Arbitration.    The questions raised here regarding the integrity and impartiality of the arbitration are directly relevant to this issue and therefore discovery is essential.

Given the information which Debtors have learned in the absence of discovery suggesting active interference of IFC in Debtors' contractual and business relationships with Nova Hut, discovery is imperative.  As shown below, the necessary discovery simply cannot be obtained by the ICC -- in which discovery is essentially limited to documents which the IFC chooses to disclose for its case -- and there is no provision for turnover of other relevant documents or for oral depositions.  Significantly, the IFC has successfully avoided any meaningful investigation into its actions for years, despite the direction of the Third Circuit Court of Appeals that Debtors'

causes of action against the IFC should proceed on the merits.[2] Accordingly, for the purposes of

this case, the IFC is to be treated as any other actor in a commercial setting. In this bankruptcy

case, the IFC and Nova Hut specifically invoked the jurisdiction of this Court by filing a proof of

claim and moving for summary judgment, and should not be permitted to avoid the meaningful

inquiry into their own actions specifically permitted by both Rule 2004 and the strong federal

policies in favor of discovery. They certainly should not be rewarded for a determined effort to

resist such disclosure. The Third Circuit Court of Appeals already has determined that the IFC

has waived its sovereign immunity rights and thus discovery should proceed forthwith.

Discovery is also necessary against Nova Hut both in connection with Debtors' claims against

Nova Hut as well as in connection with circumstances surrounding the Kaiser Netherlands

Arbitration. Finally, discovery is necessary against all of these parties pursuant to FRCP 56(f) to

enable Debtors to respond to Nova Hut's motion for summary judgment.[3]

Discovery here is warranted by the strong federal policy in favor of discovery as well as

the special bankruptcy policy reflected in Rule 2004. Ordinarily, both in civil actions and

bankruptcy cases, broad discovery is warranted without any preliminary showing. Almost sixty

years ago, the Supreme Court admonished that the "time-honored cry of fishing expedition" was

---

[2]    See, e.g., In re Kaiser Group Int'l Inc. (Int'l Finance Corp. v. Kaiser Group Int'l Inc.), D.C. No. 03-cv-00038, at 17-18 (Feb. 25, 2005). ("Indeed, the Third Amended Complaint's further alleges [sic] that International had independent agreements with Nova Hut and IFC whereby International (1) agreed to post the collateral for the Letter of Credit and (2) agreed to extend the Letter of Credit in exchange for Nova Hut's representation that it would not draw down on the Letter of Credit. Thus, International has alleged causes of action predicated on its own – not Netherlands' – agreements that it had with Nova Hut. International's claims are therefore 'property of the estate' and assets to which its creditors in bankruptcy can look.").

[3]    This Court and the District Court have already ruled that the close connection between Debtors and Kaiser Netherlands required Debtors to arbitrate disputes against Nova Hut and IFC, even though Debtors were not parties to any arbitration agreement, including the one between Kaiser Netherlands and Nova Hut. This same rationale warrants discovery by Debtors of Kaiser Netherlands matters. Indeed, Nova Hut's motion for summary judgment has alleged that Kaiser Netherlands and Debtors were in privity in the arbitration and that Debtors should be barred by the arbitration award, which further supports the request for discovery with respect to matters involving Kaiser Netherlands.

not a bar to inquiry, but that "[m]utual knowledge of all the relevant facts is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947). Such a policy is even more strongly articulated by Rule 2004, which permits unfettered and broad discovery with extremely limited rules of relevance and without precondition. In re Mittco, 44 B.R. 35, 36 (Bankr. E.D. Wash. 1984). Here, Debtors have not obtained and will not be able to obtain any discovery absent relief from this Court. The need for discovery is especially compelling because this is far from a fishing expedition, and there is already substantial evidence of possible improper actions in connection with the Kaiser Netherlands Arbitration as well as a pattern of interference of the IFC in the affairs of Nova Hut and its relationships with Debtors. These facts, when coupled with the strong federal discovery policy, require further inquiry and Debtors would be unduly prejudiced in both the Arbitrations and the administration of these cases if discovery is denied.

## BACKGROUND

1.  Background.  This motion seeks discovery regarding (a) the IFC's conduct with respect to Debtors, (b) matters connected to the construction of the mini mill, (c) matters relating to the relationship between the IFC and Nova Hut, and the IFC's involvement in the affairs of Nova Hut, (d) the IFC's involvement in certain performance tests, (e) matters relating to the conduct, integrity and impartiality of the arbitration award in the Kaiser Netherlands Arbitration including the possible availability of the award to Nova Hut three weeks before it was released, (f) matters raised by Nova Hut's motion for summary judgment and (g) matters related to Debtors' claims in the Third Amended Complaint and potential claims against Nova Hut.  The motion is accompanied by the Declaration of Nicholas Burakow (the "Burakow Decl."), filed in conjunction herewith.

## The Parties

2. <u>Debtors</u>. Kaiser Group International, Inc. (formerly known as ICF Kaiser International, Inc.) ("Kaiser International") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the Commonwealth of Virginia. Kaiser International and certain affiliated debtor subsidiaries (together the "Debtors") filed for Chapter 11 bankruptcy protection in this Court.[4]

3. <u>Kaiser Netherlands/Nova Hut</u>. Kaiser Netherlands is a corporation organized under the laws of The Netherlands. Kaiser Netherlands is an affiliated subsidiary of debtor Kaiser International, but is not a debtor in these proceedings. Nova Hut is a corporation organized under the laws of the Czech Republic with its principal place of business in the Czech Republic. On or about June 27, 1997, Kaiser Netherlands and Nova Hut entered into a contract for the construction of a steel-producing minimill (the "Minimill") in Ostrava, Czech Republic. This transaction is at the center of this dispute.

4. <u>IFC</u>. IFC is a corporate entity and member of the World Bank Group. IFC maintains an office at 2121 Pennsylvania Avenue, N.W., Washington, D.C. 20433. Under its Articles of Agreement, IFC can sue and be sued in a court of competent jurisdiction within a

---

[4]    The affiliated debtor subsidiaries are EDA, Incorporated, Kaiser/Georgia Wilson, Inc., Kaiser Engineers Massachusetts, Inc., Kaiser Technology Holdings, Inc., Kaiser Advanced Technology, Inc., Tudor Engineering Company, Cygna Group, Inc., Liability Risk Management, Inc., Kaiser Europe, Inc., Kaiser Engineers Group, Inc., International Waste Energy Systems, Inc., Henry J. Kaiser Company, Kaiser Engineers, Inc., IFC Kaiser Advanced Technology of New Mexico, Inc., Kaiser Engineers & Builders, Inc., Kaiser Engineers International, Inc., Kaiser Engineers (California) Corporation, KE Services Corporation, Kaiser Engineers of Michigan, Inc., Kaiser Engineers and Constructors, Inc., Kaiser Overseas Engineering, Inc., KE Livermore, Inc., Kaiser Engineers Pacific, Inc., Kaiser Hanford Company, Phase Linear Systems Incorporated, Kaiser R.G.P. No. 1, Inc., Henry J. Kaiser Development Corporation, Inc., Global Trade & Investment, Inc., HBG Hawaii, In., HBG International, Inc., Kaiser Holdings Unlimited, Inc., American Venture Investments Incorporated, American Venture Holdings, Inc., Excell Development Construction, Inc., Kaiser Leasing Corporation, Inc., Kaiser DPI Holding Co., Inc., and Cygna Consulting Engineers and Project Management, Inc.

member country at which IFC maintains an office. The Third Circuit has specifically ruled that
IFC waived sovereign immunity in this case by filing a proof of claim.

### Relevant Facts

5. <u>IFC Involvement in Nova Hut Transaction</u>. Although Kaiser Netherlands
contracted with Nova Hut -- not the IFC -- to construct the Minimill, the IFC repeatedly inserted
itself into the parties' relationship and interfered with Nova Hut's performance of the contract.
As shown in more detail below, during the contract negotiation and throughout the acceptance
phase, the IFC regularly called meetings and requested Debtors and Kaiser Netherlands to attend,
the IFC's representatives or lawyers usually ran the meetings, and representatives of the IFC
publicly stated on several occasions that Nova Hut had nothing to say because it was in default to
the IFC and the IFC had taken over. In particular, Debtors believe, based on information and
events to date, that the IFC used its influence over Nova Hut to frustrate Kaiser's ability to obtain
payments to which it was contractually entitled. (<u>See</u> Burakow Decl. ¶ 4.)

6. <u>Performance Test</u>. Pursuant to its contract with Nova Hut, Kaiser Netherlands
was required to pass a test (the "Performance Test") in order to achieve acceptance of the
project. This test was called the "four-week integrated production performance test," and was
designed to demonstrate that the Minimill could produce steel in the quantities contemplated by
the contract. (<u>See</u> Burakow Decl. ¶ 5.)

7. <u>IFC is Lead Lender for Project</u>. The IFC arranged the financing for Nova
Hut's modernization and restructuring of the Minimill, and participated in and arranged for a
total investment package of approximately $600 million. Pursuant to its agreement with Nova
Hut, Kaiser Netherlands was required to submit a performance letter of credit in the amount of
$11.1 million, which would be released upon satisfaction of certain performance-related goals.

First Union Bank, which issued the letter of credit, required collateral as security for the letter of credit, and debtor Kaiser International, Inc. deposited $11.1 million in cash. As Nova Hut's lead lender for the Minimill, the IFC had a direct interest in Kaiser Netherlands' compensation for the project and whether or not it passed the Performance Test and, therefore, whether Kaiser International obtained the return of its collateral. There is reason to believe that the IFC insisted that Nova Hut take the position that Kaiser Netherlands failed the Performance Test so the IFC could obtain the benefits of the letter of credit. Moreover, Debtors have reason to believe that Nova Hut's finances were not strong from the start, that its finances deteriorated as construction progressed and that the IFC became directly involved in the business affairs, management and decisions of Nova Hut (and may have had actual control) to protect its loan and/or investment. Debtors have no access to information about these matters without discovery. And, as shown below, the known circumstances are strongly suggestive that the IFC exercised control over the affairs of Nova Hut.

        8.  IFC Interferes in Nova Hut/Kaiser Netherlands Relationship. Throughout the course of the Performance Test, the IFC repeatedly interfered with Kaiser Netherlands' relationship with Nova Hut. In the presence of senior Nova Hut managers, IFC told Kaiser Netherlands that it was in charge of all issues related to determining whether the Performance Test was passed. After the completion of the test, IFC representatives told Kaiser Netherlands that Nova Hut was in default of its loan repayments, that the IFC had assumed control of the project and that the IFC suspected that some of the money it had lent to Nova Hut was "going out the back door." The IFC's representatives subsequently told Kaiser Netherlands that only they -- and not Nova Hut -- would decide whether Kaiser Netherlands had passed the test. At the IFC's insistence, all negotiations regarding test passage were held with and led by the IFC, in

some cases without any participation by Nova Hut. (See Burakow Decl. ¶ 6.) In short, the IFC as senior lender inserted itself directly into the financial affairs of Nova Hut and the Minimill project.

       9. Need for Discovery. The above facts make it clear that the IFC claimed the right to exercise control over Nova Hut's affairs and the Minimill project, and its efforts to control the outcome of the testing process appear to have begun at an early stage. But, Debtors cannot be expected to have the details regarding the IFC's involvement and its role in Nova Hut's affairs, and need more specific information about the manner and extent of such control. For example, at the start of the four-week production performance test, Nova Hut signed documents in which its representatives agreed to the results of the test for each day. After the ninth day of the test, Nova Hut's personnel mysteriously refused to continue to sign the documents. The Nova Hut representatives explained to Kaiser Netherlands that their management directed this action, but that they were not told why they were to both continue with the test and not to sign the test result documents. This action frustrated the purpose of the test, which was to calculate the test results and create a record of each day's activities, and made it difficult, if not impossible, to determine later whether the test had been passed. (See Burakow Decl. ¶ 7.)

       10. Nova Hut Acknowledges Test Was Passed. After completion of the test, Nova Hut's own project manager, Gerhardt Pretsch, wrote a letter to the IFC in which he reported and confirmed that Kaiser Netherlands had passed the Performance Test. A copy of Nova Hut's letter is attached as Exhibit 1 to the Burakow Decl. Kaiser Netherlands was not copied on the letter and was not aware of the letter when it was issued by Nova Hut. Inexplicably, despite Pretsch's letter, Nova Hut refused to acknowledge it passed the

Performance Test. The fact that the letter was sent to IFC and thereafter Nova Hut refused to acknowledge that the test had been passed, strongly suggests that the IFC responded to the letter, and that the IFC's response led to Nova Hut's refusal to acknowledge the test was passed. The IFC's apparent influence on Nova Hut to change its position regarding passage of the test is also reflected by Nova Hut's other admissions that Kaiser Netherlands had, in fact, passed. Indeed, at a dinner with representatives of Debtors and Kaiser Netherlands, Nova Hut operations officers stated to the assembled group that Kaiser had passed the test. (See Burakow Decl. ¶ 8.) The need for discovery – both documentary and testimonial – is obvious.

           11. Later Negotiations. In keeping with its earlier threats, the IFC exerted considerable influence over Nova Hut during the parties' subsequent negotiations. This is evidenced by Nova Hut's continued shifts in its negotiating positions in response to statements of the IFC, as well as the IFC's own statements during negotiations. For example, during discussions after Kaiser Netherlands completed the four-week test, the General Manager of Nova Hut stated that it did not intend to -- and could not afford to -- take another four-week test. Nevertheless, after completion of the test, representatives of the IFC suggested that Kaiser Netherlands take a new test under different standards for a reduced length of time. This statement was puzzling, at best, in light of Nova Hut's earlier statements that it could not afford another test, and it suggests possible IFC involvement (including a possible funding commitment) in Nova Hut's decisions regarding the Performance Test. The IFC's suggestion of a new test also contradicted the November 24, 2000 letter from Nova Hut's Pretsch, who had previously told the IFC that Kaiser had passed the test. (See Burakow Decl. ¶ 9.)

           12. IFC Nixes Possible Settlement Offer. In January 2001, Kaiser attended another meeting with representatives of Nova Hut and the IFC to discuss the disputes between

the parties, including the four-week integrated production performance test. At the conclusion of the first day of meetings, representatives of Nova Hut stated that Nova Hut and the IFC would make a proposal to resolve the disputes the next morning, and asked Kaiser's representatives to return at that time. When Kaiser's representatives arrived the next morning, Nova Hut informed them that the IFC refused to permit Nova Hut to make the proposal. (See Burakow Decl. ¶ 10.)

13.    IFC States It Will Control Performance Test Issues. Douglass Craig, the IFC representative in charge of the Nova Hut project, stated further at the January 2001 meeting that the IFC would control any decision as to whether Nova Hut would agree that Kaiser Netherlands passed the Performance Test and, therefore, whether Kaiser International would obtain the return of its collateral for the letter of credit, and whether Kaiser Netherlands would obtain release of a project retention account. (See Burakow Decl. ¶ 11.)

14.    Washington Meeting. On January 18, 2001, in a follow-up to the January meeting in Ostrava, Czech Republic, Kaiser representatives met with the IFC at its headquarters in Washington, D.C. At that meeting, Kaiser International and Kaiser Netherlands made a presentation to demonstrate that Kaiser Netherlands had passed the production performance test and properly achieved final acceptance. No Nova Hut representatives were present at this meeting, and Debtors were told by both the IFC and Nova Hut that Nova Hut had not been invited because only the IFC would decide whether the Performance Test had been passed. (See Burakow Decl. ¶ 12.)

15.    IFC Direct Proposals. During the course of these and later discussions, the IFC proposed that Kaiser Netherlands agree to remain on the project site and provide technical assistance without compensation. This proposal was made directly by the IFC without any involvement by Nova Hut.

## Procedural History of the Case

16.  Filing; Proofs of Claim.  On June 9, 2000, Debtors filed their respective voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  (Docket No. 1.)  On August 14, 2000, Nova Hut and IFC filed separate Proofs of Claim with the Court against Debtors for unspecified amounts, purportedly exceeding $46,000,000.  The Nova Hut and IFC Proofs of Claim alleged that Debtors were liable to Nova Hut and IFC in connection with Kaiser Netherlands' design and construction of the Minimill. (Nova Hut's Claim at ¶¶ 9, 15 and 21; IFC's Claim at ¶¶ 10 and 16.)  In this way, the IFC and Nova Hut specifically placed matters involving Nova Hut, IFC and the Minimill before this Court.

17.  Confirmation of Plan.  While Nova Hut and IFC each litigated separately their Proofs of Claim for several months, see, e.g., Nova Hut's and IFC's Responses to Debtors' Objection to Claim on or about November 18, 2000 (Docket Nos. 742 & 748),  on December 5, 2000, this Court issued its Findings of Fact, Conclusions of Law, Order and Judgment Confirming Debtors' Second Amended Plan of Reorganization ("Confirmation Order") (Docket No. 792), wherein the Court stated, inter alia, that it retained jurisdiction over the matters set forth in the Plan including claims administration.  (Paragraph N of Plan.)  The Plan became effective on December 18, 2000.

18.  Withdrawal of Proof of Claim.  On April 9, 2001, Debtors filed their Amended Objection to Claims Number 1918 and 1714, of Nova Hut and IFC respectively, and filed an adversary proceeding setting forth its Counterclaim Against Nova Hut and IFC. (Adversary Proceeding Docket No. 1.)  In June 2001, the IFC and Nova Hut moved to withdraw their Proofs of Claim prior to submitting to any discovery therewith.  (Docket Nos. 1180 and

1186.)[5]  This Court granted those motions on January 9, 2002, but only on the express condition

that (1) this Court would retain jurisdiction over the above-captioned adversary proceeding, and

(2) Nova Hut and the IFC were barred from asserting any claims against Debtors.  (See

January 9, 2002 Memorandum and Order, Docket Nos. 1336 & 1337).

        19.  Third Amended Complaint.  On October 21, 2002, Debtors filed their Third

Amended Complaint (Docket No. 146.)  A copy of the Third Amended Complaint is attached as

Exhibit A.  Briefly, the complaint alleges that as a result of the IFC's tortious conduct – e.g., the

IFC representative explicitly told Dr. Burakow that the IFC would determine whether or not the

letter of credit would be drawn – Nova Hut first drew down on the letter of credit and First

Union Bank applied the cash deposit to reimburse the draw, thus causing damages to Debtors of

over $11.1 million.[6]  In addition, the Third Amended Complaint alleges that Nova Hut and the

IFC engaged in a coordinated scheme to deny Debtors their rights.

        20.  IFC Motion to Dismiss Denied.  On or about July 27, 2001, the IFC filed a

motion to dismiss the adversary proceeding for lack of subject matter jurisdiction, alleging that it

was entitled to sovereign immunity and therefore had immunity from liability and had absolute

protection from responding to any discovery.  This Court denied the IFC's motion on

December 9, 2002.

        21.  District Court of Appeal.  On appeal, the United States District Court for the

District of Delaware reversed the order of this Court and ruled that the IFC was entitled to

---

[5]     There is little doubt that the IFC sought to withdraw its proof of claim to avoid further litigation in this
Court, including the type of discovery that is routinely part of federal court litigation.  That effort ultimately
proved unsuccessful because the Third Circuit Court of Appeals ruled that the IFC was not entitled to
sovereign immunity.  Nevertheless, despite several attempts, Debtors have still not obtained any discovery
from the IFC.

[6]     Debtors respectfully submit that this Court need not examine the merits of the dispute at this time.  These
will be matters initially for the arbitration  Debtors are simply seeking the aid of the Court to obtain
discovery so that they can properly and fully present their claims.

sovereign immunity and, therefore, Debtors were precluded from proceeding against the IFC and barred from obtaining any discovery.

22.    Court of Appeals.  Debtors appealed this ruling.  On February 25, 2005, the United States Court of Appeals for the Third Circuit reversed the order of the district court and ruled, *inter alia,* that the IFC had waived its right to assert the defense of sovereign immunity. The Court of Appeals ordered on remand that Debtors' case against the IFC should proceed on the merits.  Accordingly, for purposes of this case, the IFC is to be treated as any other actor in a commercial setting.

23.    Nova Hut Arbitration Motion.  On or about October 28, 2002, in response to the Third Amended Complaint,  Nova Hut filed a motion to compel arbitration, or in the alternative to dismiss the complaint.  This Court entered an order denying Nova Hut's motion to compel arbitration, which Nova Hut then appealed.  By order dated March 16, 2004, the District Court ruled that Debtors must submit the disputes against Nova Hut to arbitration pursuant to the terms of the contract between Kaiser Netherlands and Nova Hut, which provides for arbitration in accordance with the Rules of Arbitration of the ICC.

24.    IFC Arbitration Motion.  On or about April 12, 2005, after the Court of Appeals ruled that Debtors' case against the IFC should proceed on the merits, the IFC filed a motion to stay further proceedings pending arbitration.

25.    Bankruptcy Court's Ruling on IFC Arbitration.  On June 29, 2005, the Court entered an order that Debtors' case against the IFC be stayed pending submission of that dispute to arbitration.  Again, Debtors' arbitration with the IFC is to be in accordance with the contract between Kaiser Netherlands and Nova Hut, and therefore, pursuant to the ICC Rules of Arbitration.

26. <u>Present Status of Nova Hut and ICC Arbitrations</u>.  As a result of these rulings, Debtors' cases against both the IFC and Nova Hut have been stayed pending submission of these separate disputes to arbitration under the ICC Rules of Arbitration.[7]  Debtors are still attempting to investigate the underlying claims and have not yet initiated the arbitrations.  Initiation of an ICC arbitration prior to completion of the requested discovery would unduly prejudice Debtors by foreclosing on their best chance to obtain the necessary information.

27. <u>Kaiser Netherlands Arbitration Against Nova Hut</u>.  In 2004, Kaiser Netherlands -- not a debtor to this case -- commenced an arbitration against Nova Hut.  The Kaiser Netherlands Arbitration was conducted pursuant to the ICC Rules of Arbitration.  The arbitration tribunal organized in the Kaiser Netherlands Arbitration issued an award released on May 16, 2006.

28. <u>Summary of Arbitrations</u>.  In sum, there are three arbitrations referred to in this Motion.  The first was the Kaiser Netherlands Arbitration which was recently completed.  In this motion, Debtors seek discovery in respect of various questions regarding the integrity of the award in the Kaiser Netherlands Arbitration.  The second arbitration, which has not yet been commenced, is an arbitration of disputes between Debtors and the IFC.  In this motion, Debtors seek discovery both in connection with the claims in the arbitration as well as matters relating to the IFC's involvement with the affairs of Nova Hut and its possible involvement in matters relating to the integrity of the award in the Kaiser Netherlands Arbitration.  The third, which has not been commenced, is an arbitration of disputes between Debtors and Nova Hut.  Nova Hut has moved for summary judgment on the basis of the Kaiser Netherlands/Nova Hut award, which motion directly implicates the integrity and impartiality of that award.  In this motion, Debtors

---

[7]    These orders staying the cases pending arbitration are not subject to appeal at this time.

seek discovery relating to the IFC's involvement with the affairs of Nova Hut and matters relating to the conduct and integrity of the arbitration, and matters relating to potential claims against Nova Hut.

29. Possible IFC Influence in Arbitration Decision. The Kaiser Netherlands Arbitration tribunal issued its award on May 16, 2006, ruling that Kaiser Netherlands had not passed the Performance Test. The Kaiser Netherlands Arbitration tribunal's determination that Kaiser Netherlands did not pass the contractually-mandated four-week performance test was not based on the test results that Kaiser Netherlands alleged had been mutually agreed to at the time the test was performed. Rather, the finding was based in large part on Nova Hut's repudiation of the test results that had been previously agreed to, and Kaiser Netherlands believes that this repudiation was the direct result of influence from the IFC, which can be proven if Debtors are permitted to take discovery. Kaiser also believes that the IFC and/or Nova Hut may have exerted influence over the tribunal's decision, which would demonstrate continued active interference by the IFC that could again be corroborated through discovery. There are several bases for this belief. (See Burakow Decl. ¶ 14.)

30. IFC Financial Interest in Nova Hut. The IFC, which was the lead lender for the project, had a significant motive to secure a favorable award in the Kaiser Netherlands Arbitration. On information and belief, a substantial number of shares of Nova Hut stock are pledged to the IFC as collateral for its lending program. If the Kaiser Netherlands Arbitration panel had ruled in Kaiser Netherlands' favor, Nova Hut might have been pushed into bankruptcy. If that had occurred, the IFC would not have been able to obtain full repayment of its loan, and could have been forced to assume ownership of the collateral. This would have made the IFC an owner of a bankrupt steel producing company. (See Burakow Decl. ¶ 15.) The extent of the

IFC's concern for its financial stake and direct involvement with Nova Hut is demonstrated by the fact that, independent of Nova Hut, the IFC filed a claim against Debtors in the bankruptcy proceeding. (See Burakow Decl. ¶ 16.)

       31. <u>Nova Hut's Admissions Regarding the Performance Test</u>. The Tribunal's award also contradicts Nova Hut's own prior admissions that Kaiser Netherlands had passed the test. As noted above, after completion of the test, Nova Hut's own project manager, Gerhardt Pretsch, wrote a letter to the IFC in which he reported and confirmed that Kaiser Netherlands had passed the Performance Test and indeed had exceeded the required minimum test score. Moreover, in informal meetings, Nova Hut's production personnel involved in the test told Kaiser Netherlands' personnel that they knew that Kaiser Netherlands had passed the Performance Test. Nova Hut's own 2001 and 2002 SEC filings, which are posted on Nova Hut's website, concede that Kaiser Netherlands passed the test's production volume standard. The four-week test is a quantity test and production volume was the test's sole pass/fail criterion. (See Burakow Decl. ¶ 17.)

       32. <u>Refusal to Sign Performance Test Results</u>. Yet another reason to question the award is found in the testimony of Nova Hut's managers at the Kaiser Netherlands Arbitration. The managers testified that they did not know why they were instructed to stop signing the daily test results that they had signed for the first nine days of the test. This may have been because the IFC instructed Nova Hut's executives to tell the managers to stop signing the results, and Nova Hut's executives could not tell their managers that the IFC was controlling the test. Without discovery, Debtors will never know the source of this mysterious instruction. (See Burakow Decl. ¶ 18.)

33. <u>The Cleary Gottlieb Press Release</u>. The most damning evidence is a press release issued by the Paris office of the law firm of Cleary Gottlieb, counsel for Nova Hut. Significantly, the facts concerning the press release cannot be disputed. To understand the significance of the press release, a bit of background relating to ICC procedures is necessary.

(a) Under the Rules of Arbitration promulgated by the ICC, each party is to submit a written statement of their case supported by appropriate documentation. <u>See</u> International Chamber of Commerce, <u>Rules of Arbitration</u>, Article 4 (rev. ed. 2001) (governing filing of a written request for arbitration); <u>Rules of Arbitration</u>, Article 5 (governing filing of an answer and counterclaims). There are no provisions in the Rules of Arbitration entitling the parties to additional discovery beyond the documents submitted with the arbitration statement and answer.

(b) The ICC arbitration takes place before three arbitrators. After hearing the evidence, the arbitrators make a preliminary decision which is not shown to either of the parties. Instead, the preliminary decision is forwarded to the ICC Secretariat in Paris for review and is not issued to the parties until the decision is confirmed. The parties thus are unaware of the preliminary decision.

(c) Here, the decision was signed on April 26, 2006 by the three arbitrators. Presumably, the award was then forwarded on a confidential basis to the Secretariat in Paris for review and approval.

34. As noted above, Debtors have found a press release on the website of the Cleary Gottlieb law firm, which represented Nova Hut in the Kaiser Netherlands Arbitration. The parties were notified of the award on May 16, 2006. The Cleary Gottlieb press release is dated April 26, 2006, which is three weeks before the parties were notified of by the ICC of the

award. The press release appears sequentially in the Cleary Gottlieb website's news archive, which suggests that the release was in fact posted on April 26, 2006. The website describes in some detail the results of the award, which was over 300-pages in length and addresses many issues, including a net amount due Nova Hut. Considerable time and effort was required to calculate the net amount due based on the award. This suggests that the author had the award or a detailed description of it on or before April 26, 2006, and long before the ICC formally notified the parties of the award. These undisputed facts strongly raise questions of possible direct contact between Nova Hut/IFC and the arbitrators and standing alone furnish probable cause for further inquiry.

35. Because of its obvious importance, the press release is quoted here in its entirety (Mittal Steel Ostrava is the successor to Nova Hut):

[Cleary Gottlieb, News and Publications, News Detail]

**Mittal Steel Ostrava in ICC Arbitration Victory**
April 26, 2006

Cleary Gottlieb successfully represented Mittal Steel Ostrava, the Czech subsidiary of Mittal Steel Holdings N.V., in an International Chamber of Commerce arbitration commenced in 2004 by Kaiser Netherlands, a Dutch corporation.

The arbitration arose from a June 1997 contract for the design and construction by Kaiser Netherlands of a steel mill at the Mittal Steel facility in Ostrava. Mittal Steel Ostrava terminated the contract in early 2001 and the resolution of the opposing claims turned on whether Kaiser had delivered a facility that conformed to the contract requirements and passed a series of final performance tests.

Kaiser requested an award in the amount of more than $50 million in principal, arguing that it delivered a steel mill in compliance with the contract. Mittal Steel Ostrava denied Kaiser Netherlands' claim and requested an award for $46 million in liquidated damages for lost profits that Mittal suffered because the delivered steel mill did not conform to the contract's terms.

Even though Mittal Steel Ostrava had not strongly opposed Kaiser's claim that it successfully completed the performance tests. and even though the facility has achieved record production

volumes in recent months, the Cleary Gottlieb team was able to convince the ICC Tribunal that Kaiser manipulated the figures in order to claim successful completion of the tests.

In its award, the ICC Arbitral Tribunal upheld Mittal Steel Ostrava's defense that the steel mill delivered by Kaiser Netherlands did not comply with the contractual requirements, dismissed Kaiser Netherlands' entire claim and granted Mittal Steel Ostrava's counterclaim. The unexpected outcome is an approximately $5 million net debt from Kaiser Netherlands to Mittal Steel Ostrava.

36.  Delay in Award.  Finally, the issuance of the award was inexplicably delayed well beyond the time frame in which the arbitrators had originally intended to issue it.  At the Kaiser Netherlands Arbitration, the Chair of the tribunal informed the parties that "by the end of January or early February we would be able to file an award with the ICC."  The arbitrators do not appear to have signed the award until April 26, and the parties were not formally notified of the award until May 16, 2006.  A copy of the relevant page of the hearing transcript is attached to this motion as Exhibit B.  While some delay on the part of the ICC is not unusual, a delay of two and a half months seems extraordinary.  This delay too suggests that the IFC may have intervened in this interim period to influence the decision.

37.  Request for ICC Investigation.  Under ICC rules and procedures, neither the arbitrators nor the ICC is to advise a party of the results of the arbitration until official notification by the ICC.  Debtors requested that the ICC investigate the independence and conduct of the arbitrators assigned to the Kaiser Netherlands/Nova Hut arbitration, but the ICC declined to do so, stating that the ICC does not conduct such investigations.  The timing of the Cleary Gottlieb press release raises the question as to whether Nova Hut, the IFC or other Nova Hut representatives had improper contact with the arbitrators concerning the award, and if so, whether the contact impaired the integrity of the award.  Since they lack any other avenue to obtain information of potential interference with the arbitration tribunal's decision, Debtors need discovery to determine whether there was improper conduct and, if so, the party responsible.

38. <u>Unanswered Questions</u>. The facts above raise serious questions whether the IFC and/or Nova Hut, or their representatives or agents had any communication with either Nova Hut or the arbitration panel in the Nova Hut/Kaiser Netherlands arbitration before the ICC's official notification to the parties of the arbitration award. Under ICC Rules, until official notification is made, parties involved in an ICC arbitration shall know nothing of the contents of the award. CRAIG, W. LAWRENCE ET AL., INTERNATIONAL CHAMBER OF COMMERCE ARBITRATION 400 (3d ed. 2000). As shown above, Cleary Gottlieb posted a news release to its website dated April 26, 2006 - three weeks before the ICC's official notification. Debtors are entitled to discovery to determine when and under what circumstances Nova Hut's attorneys learned of the arbitration award. If discovery reveals that either the IFC or Nova Hut learned of the award before its release by the ICC, in addition to violating ICC Rules, this could reveal a lack of impartiality and bias of the ICC towards Kaiser Netherlands. <u>See</u> <u>id.</u> at 234.

39. <u>Challenging the Award</u>. Bias of an arbitrator falls within two of seven grounds upon which a foreign arbitral award can be challenged, indicating the great importance placed on impartiality throughout arbitration proceedings and until the notification of the award.[8] If an arbitrator had *ex parte* communications with Nova Hut or the IFC before official notification of the Kaiser Netherlands Arbitration award, opportunity existed for the arbitrators

---

[8]    Article V of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards details seven circumstances under which an arbitration award may be refused at the request of the party against whom it was invoked. 9 U S.C.A. § 201. Bias of an arbitrator has been invoked as a ground for refusing to enforce an award under two of these seven grounds. The first, Article V(1)(d), provides that one ground upon which to challenge an award is if "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or failing such agreement, was not in accordance with the law of the country where the arbitration took place." This was invoked to challenge an alleged undisclosed partiality of an arbitrator  Imperial Ethiopian Gov't v. Baruch-Foster Corp., 535 F.2d 334 (5th Cir. 1976). Second, bias has been included under Article V(2)(b), which provides that a foreign arbitration award can be challenged if enforcement would be contrary to public policy. Debtors also believe that, in light of Nova Hut's motion for summary judgment, the award can be challenged under U.S. law

to be influenced in their decision. This is critical because the Kaiser Netherlands Arbitration award may be influential in the future Arbitrations between the IFC, Nova Hut and Debtors. It is also relevant because Nova Hut has specifically requested this Court to recognize the arbitration award as the basis for its motion for summary judgment. Accordingly, Debtors must have the opportunity to discover any impartiality that may have affected the earlier arbitration proceedings to have a fair opportunity at presenting its case in arbitration against the IFC.

40. <u>Summary</u>. In sum, the facts show that the IFC exercised significant control over Nova Hut, that it used such control to interfere and attempt to control and dictate the relationship between Nova Hut and Debtors, that the IFC intervened at a number of times during the Minimill project to reverse positions taken by Nova Hut or to provide direction to Nova Hut, and that there is a strong basis to infer ICC and Nova Hut interference with the arbitration. These facts are pertinent to Debtors' claims against both Nova Hut and the IFC, its ability to investigate the impartiality and integrity of the arbitration, and the Nova Hut summary judgment motion. Considering the complete lack of discovery to date and the secretive nature of the IFC, it is remarkable how much evidence of interference by the IFC in the affairs of Nova Hut has been collected. Discovery is not otherwise available and, as noted, the ICC has specifically declined to investigate the circumstances of the arbitration. These facts more than establish a need for further discovery.

**JURISDICTION AND VENUE**

41. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter arises in a bankruptcy case and under the Bankruptcy Code. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

42. For the reasons stated above, Debtors seek authorization pursuant to Rule 2004 and Rule 56(f) to take discovery, including but not limited to the issuance of subpoenas and/or requests for the production of documents and oral testimony from the IFC, Nova Hut, their agents, employees, corporate representatives, and attorneys, as well as any other entity or individuals, or in the alternative, an equitable bill of discovery to obtain such information.

## RULE 2004

43. Rule 2004 provides in pertinent part that:

> (a) *Examination on Motion*: On motion of any party in interest, the court may order the examination of any entity.
>
> (b) *Scope of Examination*: The examination of an entity under this rule or the debtor under § 343 of the Code may relate only to the acts, conduct, or property or the liabilities and financial condition of the debtor, or to any matter which may effect the administration of the debtor's estate .
> . . .
>
> (c) *Compelling Attendance and Production of Documentary Evidence*: The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at trial.

Fed. R. Bankr. P. 2004.

44. Rule 2004 and its predecessors reflect a long-standing policy to permit debtors and other parties in interest broad power to inquire into the assets, liabilities and affairs of the debtor. A major purpose of Rule 2004 examinations is to permit the debtor and other parties in interest to discover assets and investigate potential claims. Such examinations are particularly useful in determining the existence of claims on behalf of a debtor where fraud has occurred. In re Recoton Corp., 307 B.R. 751, 756-57 (Bankr. S.D.N.Y. 2004); In re Hughes, 281

B.R. 224, 226 (Bankr. S.D.N.Y. 2002); In re Sun Medical Mgmt., 104 B.R. 522, 524 (Bankr. M.D. Ga. 1989); In re Hammond, 140 B.R. 197, 204 (S.D. Ohio 1992).

45.    The scope of a Rule 2004 examination is "unfettered and broad" and has been described as a "permitted fishing expedition." See In re GHR Energy Corp., 33 B.R. 453, 454 (Bankr. D. Mass. 1983); see also In re Continental Forge Co., Inc., 73 B.R. 1005, 1007 (Bank. W.D. Pa. 1987). It is not a valid objection that the discovery is exploratory and groping. In re Shapiro, No. 79-1789G, 1980 Bankr. LEXIS 4799, at *13, n.16 (Bankr. E.D. Pa. 1980) (citing Sachs v. Hadden, 173 F.2d 929, 930 (2d Cir. 1949)) (holding that Rule 205, from which Rule 2004 was derived, allows for broad discovery to uncover any relevant information); see also In re Table Talk Inc., 51 B.R. 143, 145 (Bankr. D. Mass. 1985). "[A] large latitude of inquiry should be allowed in the examination of persons closely connected with the bankrupt in business dealings, or otherwise, for the purpose of discovering assets and unearthing frauds." In re Drexel, Burnham Lambert Group, 123 B.R. 702, 708-09 (Bankr. S.D.N.Y. 1991) (citing In re Foerst, 93 F. 190, 191 (S.D.N.Y. 1899)). To be granted, the motion must demonstrate only the "mere possibility" that requested discovery will lead to information concerning the debtor's financial affairs. In re Vantage Petroleum Corp., 34 B.R. 650, 652 (Bankr. E.D.N.Y. 1983); see also Drexel, 123 B.R. at 712 (finding that it is not the court's function to speculate on the possible connection between requested discovery and the filed claims, so long as there exists some relationship or effect on the administration or estate).

46.    On its face, Rule 2004 requires no showing of good cause or other prerequisites for an examination so long as the proposed examination is within the accepted purposes of Rule 2004. Investigation of potential claims of the debtor, especially in light of fraud or other wrongdoing, falls squarely within the scope of a Rule 2004 examination. See In re

Recoton Corp., 307 B.R. at 755-56 (granting 2004 discovery against former directors and officers to determine whether wrongdoing has occurred); In re Sun Medical Mgmt., 104 B.R. at 524 (permitting Rule 2004 examination to uncover potential fraud claims); In re Table Talk, Inc., 51 B.R. 143 (Bankr. D. Mass. 1985) (granting 2004 examination to uncover wrongful acts by debtors' vendors). Here, the examination is justified because it specifically relates to property of Debtors (including claims against third parties) and the administration of the estate (the integrity of the arbitration process and the conduct of IFC during the arbitration bear directly on Debtors' administration of its estate). The purpose of the examination is thus well within the long-standing purposes of a Rule 2004 examination.

47. However, even if Debtors are required to make a showing of cause for the examination, Debtors have clearly met such a standard. Good cause for a Rule 2004 motion can be shown by demonstrating that the requested discovery is necessary to establish a claim or that denying such discovery would cause undue hardship or injustice. Drexel, 123 B.R. at 712; see also In re Metiom, Inc. v. Katz, 318 B.R. 263, 268 (S.D.N.Y. 2004) (finding good cause to grant Rule 2004 discovery where minimal evidence existed in support of the claim, and relying on case law holding that an attorney's unsupported statement that discovery was necessary to respond to a motion was sufficient "good cause"). Once the movant has demonstrated that discovery is necessary, the burden of persuasion shifts to the party opposing the examination to show that such discovery is oppressive or burdensome. In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985).

48. The facts set forth above -- many of which cannot be disputed -- suggest that the IFC may have illegally interfered in Kaiser Netherlands' contractual relationship with Nova Hut and that the integrity and impartiality of the arbitration are, at least, in question. These facts

directly relate to the claims of Debtors and matters relating to the administration of this Estate. In this regard, both this Court and the District Court have required arbitration of <u>future</u> disputes before the ICC. Debtors strongly believe that such orders necessarily assumed the integrity of the arbitration process, and neither Court would have ordered such arbitration if there were the slightest questions of integrity and impartiality.

49. Moreover, Debtors would be seriously prejudiced if not able to conduct discovery on the aforementioned matters because (a) Debtors have no ability to obtain the information in other ways and the ICC has refused to inquire into the integrity of the arbitration, (b) the facts are solely in control of the parties from whom discovery is sought, and (c) Debtors have already made a significant showing of both need and the existence of circumstances that warrant further investigation. Rule 2004 discovery should be granted where discovery is otherwise not available. <u>See</u> <u>In re International Fibercom, Inc.</u>, 283 B.R. 290, 293 (Bankr. D. Ariz. 2002). In <u>International Fibercom</u>, a guarantor, whose rights were subrogated to the debtors, moved for 2004 discovery against an adversary in a state-court proceeding to discern its exposure in the bankruptcy case. The court granted the Rule 2004 motion, in part, because discovery was unavailable in the non-bankruptcy forum as a result of the automatic stay. <u>Id.</u> at 292-293.

50. The Court has stayed Debtors' case against the IFC pending submission of the dispute to arbitration in accordance with the provisions of the Kaiser Netherlands - Nova Hut contract. That contract calls for arbitration under the Rules of International Arbitration of the ICC. The ICC rules do not entitle parties to take discovery. To be afforded an equal position in the mandated arbitration against the IFC, Debtors must have the opportunity to further explore these claims. This is especially true where no other avenue for discovery exists, and there is at

best limited potential for discovery in arbitration. Debtors, therefore, respectfully request the Court to exercise its discretion and permit discovery under Rule 2004.

      51. A legitimate Rule 2004 motion will not be denied simply because the possibility exists that the resulting evidence could be used in collateral litigation. In re Best Craft Gen. Contractor and Design Cabinet, Inc., v. Wong, 239 B.R. 462, 465 (Bankr. E.D.N.Y. 1999). Debtors are aware of a line of cases which suggests that Rule 2004 examinations are not appropriate when there is already pending litigation between the parties, on the theory that discovery in such circumstances should be in accordance with the discovery rules for the litigation. See 9 L. King, et al., Collier on Bankruptcy, ¶ 2004.01 [1], at nn. 5,6 (15th ed. 1978)(citing authorities). Such cases have no application here but, quite the contrary, reinforce the need for discovery. The rationale of the cited cases is that discovery is available in the pending litigation and Debtors should not be able to circumvent the discovery rules in the pending litigation by using Rule 2004 examinations. Indeed, in virtually all cases denying Rule 2004 discovery as a result of pending litigation, the discovery rules in the pending litigation were either those in the Federal Rules of Civil Procedure or comparable state statutes, and the party requesting discovery was seeking discovery under Rule 2004 as a means of circumventing the limits of the discovery process. See In re International Fibercom, 283 B.R. at 293 (noting that the policies underlying the "pending litigation" rule are not applicable where discovery is otherwise not available); In re Table Talk, Inc., 51 B.R. at 145 (noting that pending litigation is not a valid reason to deny a motion for 2004 discovery). Here, in contrast, the parties are not entitled to discovery in the arbitration proceedings, whether with respect to wrongful conduct of IFC in connection with the arbitration or the IFC's actions in interfering with the relationship of Debtors and Nova Hut. Moreover, any attempt by Debtors to obtain information from the IFC in

the arbitration faces a further obstacle in the form of a claim of sovereign immunity; as discussed earlier, the Third Circuit has specifically held that the IFC has waived such claim in the bankruptcy case and the adversary proceedings. In short, discovery here is clearly warranted by Rule 2004.

52. The IFC, Nova Hut, and their employees and agents were closely connected in Kaiser's business dealings, and have a relationship with Kaiser such that information they maintain could lead to the discovery of assets; as such they are proper parties subject to a Rule 2004 examination.

## RULE 56(f)

53. FRCP 56(f), as incorporated by Bankruptcy Rule 7056, provides that if it appears that a party cannot present "facts essential to justify the party's opposition [to the motion], the court . . .may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had . . . ." Rule 56(f) has generally been applied to delay or deny summary judgment when the opposing party has not had an opportunity for discovery. See Cotslow v. Vis., 552 F.2d 560 (3d Cir. 1977) (holding Rule 56(f) contemplates discovery in connection with a motion for summary judgment and stating "[W]here the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course."). This is, of course, the situation here.

54. Additionally, no discovery has occurred in this case and, under controlling Supreme Court precedent, "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Anderson v. Liberty Lobby, 477 U.S. 242, 250 n.5 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (summary judgment is appropriate only "after adequate time for discovery"). The

Supreme Court has specifically noted that the Federal Rules of Civil Procedure do not allow a nonmoving party to be "railroaded by a premature motion for summary judgment." Celotex, 477 U.S. at 326. When a motion is prematurely filed, courts may deny or continue the motion under Fed. R. Civ. P. 56(f). See Celotex, 477 U.S. at 326.

55. Nova Hut has moved to lift the stay requiring arbitration and for summary judgment on the basis of res judicata and collateral estoppel from the arbitration award. Nova Hut specifically alleges that "Plaintiffs (i.e., the Debtors) were accorded a full and fair opportunity to litigate their claims in the forum of their own choosing." (SJ Brief, p. 3; see also, p. 15). Such motion has a number of consequences, including the right of Debtors to discovery as described herein.

56. First, Nova Hut has specifically asserted that Debtors had a full and fair opportunity to litigate. It is hornbook law that the existence of a full and fair opportunity to litigate is a prerequisite to applying the doctrines of res judicata and collateral estoppel, and is of special importance when the award involved is that of an arbitration or other nonjudicial forum which lacks the customary protections of judicial proceedings. See, e.g., Wright & Miller, Federal Practice and Procedure § 4475.1 ("courts tend to be suspicious of relaxed arbitration procedures, and are likely to give special meaning to the general requirement that the first proceeding afford a 'full and fair opportunity' to litigate . . .").

57. Second, it is also hornbook law that a party does not have a full and fair opportunity to litigate if there was fraud, a lack of impartiality, improper contact with arbitrators, or any of a myriad of circumstances which go to the integrity of the arbitration. See, e.g., George Chamberlin, Cause of Action to Vacate Arbitration Award on Ground of Partiality or Misconduct of Arbitrator, 25 CAUSES OF ACTION 473 (2006) (collecting authorities). Indeed,

under United States law, an arbitration award which has been obtained by fraud or improper purposes will not be enforced. See 9 U.S.C. § 10.

58. Third, Debtors have raised serious questions about integrity of the arbitration, including possible improper contact between Nova Hut and/or the IFC and the arbitrators, as well as other improprieties. Indeed, the Cleary Gottlieb press release intimates as much. If these facts could be proven, they would show that Kaiser Netherlands and Debtors did not have a full and fair opportunity to litigate in the arbitration, and the award should not be given res judicata or collateral estoppel effect for any purpose, including Debtors' adversary proceeding against Nova Hut.

59. Fourth, Debtors clearly need discovery on these issues, whether pursuant to Bankruptcy Rule 2004 or pursuant to Federal Rules 26-37. Discovery is an essential element in federal litigation, and there is no requirement of good cause or other precondition for a litigation party to obtain discovery. Here, discovery goes directly to a defense asserted by Nova Hut. See FRCP 26(b)(1) (parties may obtain discovery relevant to the "claim or defense of any party"). Moreover, even if some form of cause is necessary, Debtors have more than established such cause in that (a) the parties are not entitled to discovery in the arbitration proceedings and (b) the facts raise serious questions going to the merits of Nova Hut's defense to Debtors' adversary proceeding.

60. Fifth, by seeking relief from the stay and making its motion for summary judgment, Nova Hut has waived any right it had to arbitration and submitted to the jurisdiction of this Court over the adversary proceeding. It was Nova Hut which originally sought arbitration of this dispute, and the District Court granted arbitration notwithstanding the fact that Debtors were not parties to an arbitration agreement. The latter fact is critical because Courts sometimes

-31-

refuse to permit discovery in arbitration matters which would have been available in an ordinary

civil action on the basis that, by agreeing to arbitration, a party implicitly waived its right to

insist on normal litigation procedures.    See, e.g., Hires Parts Serv. v. NCR Corp., 859

F.Supp. 3619 (N.D. Ia. 1994).  Here, of course, there can be no argument that Debtors, as

nonparties to an arbitration agreement, waived anything.  Instead, it is Nova Hut which, by

seeking to terminate the stay and have this Court grant summary judgment, has consented to

litigate the adversary proceeding in this Court and has consented to all of the procedures of this

Court, including discovery.  Having invoked this Court's equitable jurisdiction, Nova Hut should

not be able to avoid discovery, and this Court should therefore require discovery pursuant to both

Bankruptcy Rule 2004 and FRCP 26-37.

## EQUITABLE BILL OF DISCOVERY

61.  A majority of courts, including courts within the Third Circuit, recognize as

valid an equitable bill of discovery to authorize discovery outside of the rules in limited

circumstances for use in pending or soon to be brought actions. See Etienne v. Oyake, 347

F.Supp. 2d 215 (D.V.I. 2005); Lubin v. Hess Oil Virgin Islands Corp., 109 F.R.D. 403 (D.V.I.

1986); Arcell v. Ashland Chem. Co., 378 A.2d 53 (N.J. 1977); See also, Rupert F. Barron,

Existence and Nature of Cause of Action for Equitable Bill of Discovery, 37 A.L.R. 5th 645

(1996) (collecting cases).  These courts hold that the modern discovery rules and statutes do not

abrogate the bill of discovery unless expressly stated. See Berger v. Cuomo, 644 A.2d 333, 337

(Conn. 1994) ("The bill [of discovery] is within the inherent power of a court of equity . . . [and]

has been a procedural tool in use for centuries.  The bill is well recognized and may be

entertained notwithstanding the statutes and rules of court relative to discovery."); see also Leonard v. Latrobe Area Hosp., 549 A.2d 997 (Pa. Super. Ct. 1988).[9]

62. Many courts hold that equitable bills of discovery are available against interested parties in the case, as well as non-parties. Id. at 999; see also, 37 A.L.R. 5th 645 (1996) (collecting cases).

63. In determining whether to allow an equitable bill of discovery, courts look at factors such as (1) the interest of the proposed deponent from whom discovery is sought in the outcome of the litigation; (2) the necessity or importance of the information sought; (3) the ease of supplying the information; (4) the significance of the rights or interest the nonparty seeks to protect; and (5) whether a less burdensome means to accomplish the objective exists. See Berrie v. Berrie, 457 A.2d 76, 81 (N.J. Super. Ct. Ch. Div. 1983). See also, Lubrin, 109 F.R.D at 404-05 (granting the plaintiff's request for equitable discovery where otherwise he would not have been able to determine information critical to his case); Ashland, 378 A.2d at 53 (granting equitable discovery because discovery otherwise unavailable); Stokes v. 835 N. Washington Street LLC, 784 A.2d 1142, 1150 (Md. Ct. App. 2001) (granting equitable bill of discovery where such a bill was the only means of obtaining information necessary to the movant's claims). Here, as already discussed, all of these conditions are more than met: (1) Debtors seek discovery to investigate claims against the IFC and Nova Hut and the integrity of the arbitration, (2) the information sought is critical and otherwise unavailable, (3) the information is in the hands of the IFC and Nova Hut and discovery will not impose undue burdens, (4) the information is critical to the administration of the estate, the carrying out of Debtors' duties and

---

[9]    The prior revision of Rule 34(c) of the Federal Rules of Civil Procedure provided, in pertinent part, that "This rule does not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land." Fed. R. Civ. P 34(c) (1970).

the integrity of an arbitration ordered as an alternative to proceedings in this Court, and (5) there is no less burdensome way to get the information otherwise.

        64. If denied the use of Rule 2004 and Rule 56(f), Debtors will be significantly disadvantaged in their arbitration against the IFC. Discovery in international arbitration is severely limited, and Federal Rules of Bankruptcy Procedure 7026 to 7037 are not currently available because this Court stayed the adversary proceeding between Debtors and the IFC, mandating arbitration. Debtors would be forced to commence arbitration without having the proper background and knowledge to pursue their claims. Further, the arbitration decision rendered in favor of Nova Hut may be influential in Debtors' proceeding against the IFC. In light of the evidence of possible improper influence surrounding that decision, further exploration and reconciliation of those concerns is proper before moving forward with a related arbitration. Accordingly, Debtors ask this Court to grant them equitable relief by granting a bill of equitable discovery on the subject matters detailed in this motion, so that Kaiser has a fair opportunity to preserve its estate.

## CONCLUSION

For the reasons stated herein, the Court should grant the Debtor's motion for discovery, and grant such further relief as is just and equitable.

Respectfully submitted,

SAUL EWING LLP

Mark Minuti (No. 2659)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
302-421-6840

and-

George E. Rahn, Jr.
Risa B. Greene
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
215-972-7165

Jonathan M. Landers
Robert K. Dakis
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
212-351-4000

Attorneys for Debtors
and Debtors in Possession

Dated: January 25, 2007

# Exhibit "A"

## Third Amended Complaint

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KAISER GROUP INTERNATIONAL, | ) | |
| INC., et al., | ) | Case Nos. 00-2263 to 00-2301 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| KAISER GROUP INTERNATIONAL, | ) | |
| INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 01-928 (MFW) |
| | ) | |
| NOVA HUT, a.s. and | ) | |
| INTERNATIONAL FINANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | Related to D.I. Nos. 1 and 77 |

DEBTORS' THIRD AMENDED COMPLAINT AGAINST
NOVA HUT, A.S. AND INTERNATIONAL FINANCE CORPORATION

The above-captioned debtors and debtors in possession (collectively, "Debtors")[1/] by and

through their undersigned counsel, Wilmer, Cutler & Pickering and Saul Ewing LLP, file this

Third Amended Complaint against Nova Hut, a.s. ("Nova Hut") and the International Finance

Corporation ("IFC").

---

[1/] The affiliated debtor subsidiaries are EDA, Incorporated, Kaiser/Georgia Wilson, Inc., Kaiser Engineers Massachusetts, Inc., Kaiser Technology Holdings, Inc., Kaiser Advanced Technology, Inc., Tudor Engineering Company, Cygna Group, Inc., Liability Risk Management, Inc., Kaiser Europe, Inc., Kaiser Engineers Group, Inc., International Waste Energy Systems, Inc., Henry J Kaiser Company, Kaiser Engineers, Inc., ICF Kaiser Advanced Technology of New Mexico, Inc., Kaiser Engineers & Builders, Inc., Kaiser Engineers Corporation, Kaiser Engineers International, Inc., Kaiser Engineers (California) Corporation, KE Services Corporation, Kaiser Engineers of Michigan, Inc., Kaiser Engineers and Constructors, Inc. Kaiser Overseas Engineering, Inc., KE Livermore, Inc., Kaiser Engineers Pacific, Inc., Kaiser Hanford Company, Phase Linear Systems Incorporated, Kaiser R.G.P. No. 1, Inc., Henry J. Kaiser Development Corporation, Inc., Global Trade & Investment, Inc., HBG Hawaii, Inc., HBG International, Inc., Kaiser Holdings Unlimited, Inc., American Venture Investments Incorporated, American Venture Holdings, Inc., Excell Development Construction, Inc., Kaiser Leasing Corporation, Inc., Kaiser DPI Holding Co., Inc., and Cygna Consulting Engineers and Project Management, Inc

DKT. NO. 146
DT. FILED 10-21-02

## THE PARTIES

1.    Kaiser Group International, Inc. (formerly known as ICF Kaiser International, Inc.) ("Kaiser International") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the Commonwealth of Virginia. Kaiser International's affiliated debtor subsidiaries are listed in footnote 1 above, and include Kaiser Engineers, Inc. ("Kaiser Engineers"), a corporation organized under the laws of the State of Ohio with its principal place of business in the Commonwealth of Virginia.

2.    Nova Hut, a.s. ("Nova Hut") is a corporation organized under the laws of the Czech Republic with its principal place of business in the Czech Republic. Nova Hut's address is Vratimovska 689, 70702 Ostrava — Kuncice, Czech Republic.

3.    International Finance Corporation ("IFC") is a corporate entity and member of the World Bank Group. Under its Articles of Agreement, IFC can sue and be sued in a court of competent jurisdiction within a member country at which IFC maintains an office. IFC maintains an office in the United States at 2121 Pennsylvania Avenue, N.W., Washington, D.C. 20433.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and this Court's January 9, 2002 Memorandum and Order. (Docket Nos. 1336 & 1337.)

5.    Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

## PROCEDURAL HISTORY

6.    On June 9, 2000, the Debtors filed their respective voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). (Docket No.

1.) On August 14, 2000, Nova Hut and IFC filed their Proofs of Claim with the Court against Debtors for unspecified amounts, purportedly exceeding $46,000,000. The Nova Hut and IFC Proofs of Claim alleged that Debtors owed monies to Nova Hut and IFC in connection with Kaiser Netherlands' (a wholly owned non-debtor subsidiary of Kaiser International) design and construction of a flat-roll products "minimill" for Nova Hut in the Czech Republic. (Nova Hut's Claim at ¶¶ 9, 15 and 21; IFC's Claim at ¶¶ 10 and 16).

7.    After Nova Hut and IFC litigated their Proofs of Claim for several months (see, e.g., Nova Hut's and IFC's Responses to Debtors' Objection to Claim on or about November 18, 2000; Docket Nos. 742 & 748), on December 5, 2000, this Court issued its Findings of Fact, Conclusions of Law, Order and Judgment Confirming the Debtors' Second Amended Plan of Reorganization ("Confirmation Order") (Docket No. 792), wherein the Court stated, *inter alia*, that it retained jurisdiction over the matters set forth in the Plan. (Paragraph N of Plan.) The Plan became effective on December 18, 2000. Nova Hut was the sole creditor to appeal the Confirmation Order to the Court of Appeals for the Third Circuit. (See Docket No. 858.)

8.    On April 9, 2001, Debtors filed their Amended Objection to Claims Number 1918 and 1714, of Nova Hut and IFC Respectively, and Counterclaim Against Nova Hut and IFC. (Adversary Proceeding Docket No. 1.) In June 2001, IFC and Nova Hut moved to withdraw their Proofs of Claim. (Docket Nos. 1180 and 1186.) This Court granted those motions on January 9, 2002, but only on the express condition that (1) this Court would retain jurisdiction over the above-captioned adversary proceeding, and (2) that Nova Hut and IFC were barred from asserting any claims against Debtors. (See January 9, 2002 Memorandum and Order, Docket Nos. 1336 & 1337). Nova Hut subsequently dismissed its appeal to the Third Circuit.

## FACTS

9. In 1993, Nova Hut adopted a formal modernization plan for increasing the quantities and size ranges of hot rolled coil steel products. After obtaining quotations from several consortiums and equipment suppliers, Nova Hut requested that Kaiser Engineers, one of Debtor-Plaintiffs in this proceeding, evaluate and comment upon the proposals. Debtor Kaiser Engineers performed the requested services.

10. On July 18, 1994, Debtor Kaiser Engineers entered into a binding Letter of Intent with Nova Hut. Pursuant to the terms of the Letter of Intent, Kaiser Engineers agreed to provide Nova Hut with certain advisory services. In exchange for providing these advisory services, which included a technical feasibility study required by IFC (which had not yet agreed to finance the project), Nova Hut agreed to pay Kaiser Engineers $1.5 million in ten equal monthly installments. Nova Hut also agreed that Kaiser Engineers would be awarded the contract for the engineering and construction of the continuous caster and reversing rolling mill in the event that Nova Hut decided to proceed with the construction of the project.

11. On August 14, 1995, Nova Hut issued a purchase order ("Purchase Order"), pursuant to which Kaiser Engineers agreed to provide certain interim engineering services required for the Nova Hut minimill project in exchange for the payment of $4 million.

12. At the time that Kaiser Engineers was performing services under the Letter of Intent and the Purchase Order for interim engineering services, Nova Hut was attempting to obtain financing for the contemplated modernization program through IFC. To obtain this financing, IFC required, in addition to the feasibility study that Kaiser Engineers was performing under the Letter of Intent, that Nova Hut obtain and pay for various appraisal and evaluation

services to be performed by third parties, and obtain and pay for a financial review to be performed by the accounting firm of Price Waterhouse.

13.    To enable Nova Hut to pay the fees for the required appraisal and evaluations services and the financial review before it obtained financing for the project, Kaiser Engineers agreed that Nova Hut could temporarily defer payment of certain amounts due Kaiser Engineers under the Letter of Intent and the Purchase Order for interim engineering services until the financing from the IFC was in place.  Kaiser Engineers ultimately agreed that Nova Hut could defer the payment of the following:  (1) $200,000 due Kaiser Engineers for services under the Letter of Intent — Nova Hut was to pay this amount directly to IFC for an appraisal and evaluation fee; (2) $10,000 due Kaiser Engineers under the Letter of Intent — Nova Hut was to pay this amount to Price Waterhouse for a financial review required by IFC; and (3) $300,000 due Kaiser Engineers under the Purchase Order for interim engineering services — Nova Hut was to pay this amount directly to IFC for payment of a second appraisal fee.  Payment of the $510,000 was due Kaiser Engineers upon receipt by Nova Hut of IFC's financing for the project, although no payments would be due if the project was not financed by IFC.

14.    After Nova Hut obtained financing from IFC, Kaiser Engineers sent Nova Hut an invoice for $510,000, the amount due in connection with the deferred payments.  Despite repeated demands for payment, Nova Hut has failed to pay Debtor Kaiser Engineers the $510,000.

15.    IFC knows of, and has directly benefited from, the services that Kaiser Engineers provided to Nova Hut pursuant to the Letter of Intent and the Purchase Order for engineering and financial services as set forth in paragraphs 9 to 13.

16.    On or about November 8, 1996, Kaiser International, Kaiser Netherlands and Nova Hut entered into a Memorandum of Understanding. This Memorandum of Understanding established the total price for Phase 1 of the minimill project at $168.5 million, $160 million of which would be paid under a fixed price contract and financed by IFC, with the remaining $8.5 million to be paid as a contingency from Nova Hut's alternate sources of funding.

17.    In accordance with the terms of the Memorandum of Understanding, on or about June 27, 1997, Kaiser Netherlands and Nova Hut entered into a contract for the Phase 1 portion of the project (the "Agreement"), pursuant to which Kaiser Netherlands agreed to design, procure and construct a reheat furnace and flat products reversing rolling mill, which is referred to as a "minimill," together with certain associated buildings and infrastructures, in exchange for the agreed payment of $160 million. The formal title of the Agreement is "Contract Between Nova Hut, a.s. and ICF Kaiser Netherlands B.V. for the Design and Construction of Phase 1 of the Flat Roll Products Minimill."

18.    On the same day that Kaiser Netherlands and Nova Hut executed the Agreement, Debtor Kaiser International and Nova Hut executed the "Guaranty of the Performance of ICF Kaiser Netherlands B.V." (the "Guaranty").

19.    Thereafter, Kaiser International and Nova Hut entered into further negotiations and discussions in connection with the payment of the contingency amount covered in the Memorandum of Understanding. To accommodate Nova Hut's stated requirements for funding, Kaiser International and Nova Hut eventually agreed that the final contingency amount would be reduced to $7 million, and that Nova Hut would pay Kaiser International $3.5 million of the contingency following preliminary acceptance of the minimill. Nova Hut agreed to pay the second $3.5 million in the form of a warranty reserve to guarantee performance by Kaiser

Netherlands of its warranty obligations. The portion of this reserve that was not used for warranty repairs was to be divided evenly between Kaiser International and Nova Hut at the end of the warranty period.

20.    On or about November 7, 1997, Nova Hut and IFC executed a "Contract Assignment and Security Agreement" assigning a first ranking continuing security interest in Nova Hut's rights in the Agreement to IFC.

21.    Kaiser Netherlands successfully achieved preliminary acceptance of the minimill project. Despite achieving preliminary acceptance, and despite repeated assurances from Nova Hut that it would satisfy its obligations, Nova Hut has refused to pay Kaiser International the agreed $3.5 million contingency fee. In addition, Nova Hut failed to establish the $3.5 million warranty reserve agreed to with Kaiser International. On or about May 2, 2001, Nova Hut wrongfully terminated the Agreement, which relieved Kaiser Netherlands of any warranty obligations. Accordingly, Kaiser International is entitled to receive one-half of the warranty reserve, or $1.75 million, in addition to the $3.5 million contingency fee.

22.    Pursuant to the terms of the Agreement, Kaiser Netherlands was required to establish a performance letter of credit. The obligations of the letter of credit terminated upon Final Acceptance, which should have been granted in November 2000.

23.    Kaiser Netherlands sought a letter of credit from First Union Bank in the amount of $11.1 million. The letter of credit was fully collateralized by $11.1 million in cash provided by Kaiser International. Nova Hut and IFC have full knowledge of these facts.

24.    Kaiser International was responsible for renewing the letter of credit in 1998, 1999, 2000 and 2001. As Nova Hut and IFC knew from the correspondence and negotiations

with Kaiser International concerning the letter of credit, Kaiser International was in fact the applicant for the letter of credit.

25.    The $11.1 million letter of credit was entered into, negotiated, and performed in Virginia.

26.    Kaiser International reasonably expected, and was entitled to, the return of its $11.1 million in cash collateral for the letter of credit, upon achieving Final Acceptance.

27.    Section 14.7 of the Agreement sets forth the requirements for Final Acceptance, which begins with the successful passage of what was referred to in the Agreement as the four-week integrated production performance test.

28.    The four-week integrated production performance test was conducted between October 16 and November 13, 2000. Kaiser Netherlands successfully passed the test.

29.    As a result of passing the production performance test and the actions it has taken after successful passage of the test, Kaiser Netherlands met all requirements for Final Acceptance under the Agreement.

30.    Instead of granting Final Acceptance to Kaiser Netherlands following the successful completion of that test, however, Nova Hut, in collusion with IFC, refused to declare that Kaiser Netherlands had passed the production performance test.

31.    IFC has controlled and directed Nova Hut's conduct with respect to Debtors by, *inter alia*, assertion of the rights under the Contract Assignment and Security Agreement. IFC representatives have evidenced that control and direction by stating on several occasions that, as Nova Hut's assignee, IFC has the exclusive right to control and direct Nova Hut's actions with respect to the Agreement. Moreover, since late November 2000, IFC has, on numerous occasions, openly stepped into the shoes of Nova Hut and stated that, as its assignee, IFC had the

right to control and direct the actions of Nova Hut with respect to the Agreement and the Guaranty. In addition, Nova Hut, on numerous occasions, represented to Kaiser International that IFC had asserted exclusive control and direction of Nova Hut's obligations with respect to Kaiser International and Kaiser Netherlands.

32.    On January 18, 2001, Nova Hut sent a letter to Kaiser International threatening to draw on the letter of credit if it was not extended until July 31, 2001. Nova Hut's demand was without any legal right or authority, and in contravention of the fact that Kaiser Netherlands had met the requirements for Final Acceptance. As of January 18, 2001, Nova Hut had no right to draw on the letter of credit, and neither Kaiser International nor Kaiser Netherlands had any obligation to extend the letter of credit. Moreover, July 31, 2001 was an arbitrary date that was not mentioned by the Agreement.

33.    Despite having no obligation to extend the letter of credit, representatives of Kaiser International and Kaiser Netherlands repeatedly advised Nova Hut and IFC verbally and in writing that Kaiser International had made arrangements to extend the letter of credit and that Kaiser International would extend the letter of credit before it expired. In response to these assurances, Nova Hut and IFC agreed that they would not draw on the letter of credit, provided that it was extended before it expired on March 7, 2001.

34.    In reliance upon the agreement with Nova Hut and IFC, and in accordance with its representations, on February 16, 2001, Kaiser International extended the letter of credit until July 31, 2001, and provided notice of the extension to Nova Hut and IFC.

35.    After Debtor Kaiser International had extended the $11.1 million letter of credit, Nova Hut, on February 16, 2001, wrongfully drew on the letter of credit.

36.   Nova Hut's draw was in breach of the agreements made by Nova Hut and IFC in connection with the letter of credit and was made despite the knowledge of Nova Hut and IFC that Kaiser International had extended the letter of credit. Nova Hut's draw on the $11.1 million letter of credit also violated the Agreement because Kaiser Netherlands had successfully passed the production performance test, Kaiser Netherlands had met the conditions required for Final Acceptance, and Kaiser Netherlands was entitled to release of the letter of credit, which would have resulted in the return to Kaiser International of its $11.1 million in cash, which Kaiser International rightly and reasonably expected.

37.   As a result of Defendants' wrongful draw on the letter of credit, First Union took Kaiser International's cash collateral and charged Kaiser International $33,341.96 in administrative/processing fees.

38.   IFC authorized and directed Nova Hut's wrongful draw on the $11.1 million letter of credit for its interest and benefit and contrary to the assurances, representations, and agreements upon which Kaiser International relied. IFC's wrongful and improper means and methods to cause Nova Hut to draw on the letter of credit included, *inter alia*, intimidation, threat, misrepresentation, deceit, duress, overreaching, and undue influence, and were in willful disregard of Kaiser International's rights and interests. For example, around the time of the draw on the letter of credit, an IFC representative in charge of the Nova Hut project threatened and tried to intimidate Debtor Kaiser International's Dr. Nicholas Burakow.

39.   Nova Hut initially deposited the $11.1 million from the wrongful draw on the letter of credit into the Retention Account with Československá obchodní banka, a.s., which was the escrow account established by Nova Hut and Kaiser Netherlands under the Agreement. Then, on March 20, 2001, without notice to Kaiser International or Kaiser Netherlands, Nova

Hut withdrew the $11.1 million obtained from the letter of credit from the Retention Account. This was in further contravention of the Agreement.

40.    Nova Hut's wrongful draw on the letter of credit has directly resulted in Kaiser International's loss of $11.1 million. Nova Hut and IFC have directly benefited from Kaiser International's $11.1 million loss.

41.    Despite Kaiser International's repeated demands for payment, Nova Hut and IFC have wrongfully failed to return the $11.1 million.

42.    IFC directly benefits from any monies not properly paid to Debtors in a number of ways, including but not limited to those set forth in this paragraph. First, Nova Hut has already paid, or will ultimately pay, IFC some or all of the $11.1 million from the letter of credit to IFC to satisfy its debt to them. On information and belief, shortly after Nova Hut drew on the letter of credit, Nova Hut made substantial payments to IFC, which included monies from the letter of credit. Second, IFC benefits from the refusal to pay because IFC possesses a security interest in the minimill. Upon information and belief, this security interest is evident, by, among other things, the fact that nearly all of the machinery in the minimill bears a plate that identifies the equipment as pledged to IFC as security for the minimill. Third, IFC benefits from the money wrongfully taken from Debtors because Nova Hut has already paid, or will ultimately pay, IFC some or all of the money owed to Kaiser International and Kaiser Engineers from the goods and services Debtors have provided to Nova Hut. Fourth, IFC directly benefits from the minimill and the sale of steel from that mill because Nova Hut is likely to use (and may have already used) the proceeds from the minimill to repay its loan to IFC.

43.    Notwithstanding Nova Hut's failure to pay the amounts set forth above, Nova Hut has been using the minimill to produce rolled steel coils for commercial sale and use without

compensating Kaiser Netherlands or Kaiser International for its use of the minimill. Nova Hut's representatives have publicly reported that Nova Hut is operating in commercial production the "non-accepted" minimill that is the subject of the Agreement. Nova Hut has also publicly stated that the minimill is fully capable of rolling the most-demanded gauges between 1.6 and 3 millimeters.

44.    The wrongful draw on the $11.1 million letter of credit and the failure to pay the other amounts set forth in this Complaint substantially interfere with the administration of the Debtors' estates threaten to disrupt Debtors' business affairs, and jeopardize the rights of creditors under the Confirmation Order.

45.    Prompt adjudication of Debtors' Amended Complaint is in the collective interest of the Debtors' creditors insofar as it facilitates the swift and efficient distribution to all creditors of the amounts to which they are entitled under the plan that the District Court confirmed on December 5, 2000.

### DEBTORS' FIRST CLAIM: BREACH OF WARRANTY AGAINST NOVA HUT AND IFC

46.    Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

47.    Kaiser International was in fact the applicant for the letter of credit. Kaiser International provided all of the cash collateral required for the $11.1 million letter of credit. Nova Hut and IFC have full knowledge of this fact. Nova Hut and IFC negotiated and corresponded with Kaiser International for the extensions to the $11.1 million letter of credit.

48.    As a prerequisite to drawing on the $11.1 million letter of credit, Nova Hut, at the direction and authorization of IFC, made representations required before drawing on the letter of

credit, and warranted to the applicant and all interested parties that it had complied with the conditions of the letter of credit, which expressly required that there be "funds due" before a draw on the letter of credit could be made. This representation and warranty was false because there were no "funds due" to Nova Hut. By making this representation, Nova Hut and IFC failed to comply with the *prima facie* conditions of the letter of credit. The actions of Nova Hut and IFC breached Kaiser International's warranty rights with regard to the letter of credit.

49. As another prerequisite to drawing on the $11.1 million letter of credit, Nova Hut, at the direction and authorization of IFC, made representations required before drawing on the letter of credit, and warranted to the applicant and all interested parties that Nova Hut had complied with the conditions of the letter of credit, which Nova Hut and IFC amended and modified. Contrary to the representations of Nova Hut and IFC, Kaiser International was not required to extend the letter of credit 30 days before March 7, 2001, because Nova Hut and IFC had amended and modified that 30-day requirement. In accordance with its agreement with Nova Hut and IFC, Kaiser International had in good faith extended the letter of credit before March 7, 2001, and, in any event, before Nova Hut drew on the letter of credit. Nova Hut and IFC were notified of the extension before the draw occurred. The actions of Nova Hut and IFC breached Kaiser International's warranty rights with regard to the letter of credit.

50. As a further prerequisite to drawing on the $11.1 million letter of credit, Nova Hut, at the direction and authorization of IFC, made representations required before drawing on the letter of credit, and warranted to the applicant and all interested parties that Kaiser Netherlands had not met its obligations under the Agreement. These representations and warranties were false because Nova Hut and IFC were not authorized to draw on the letter of credit because Kaiser Netherlands had successfully completed the four-week integrated

production performance test. The actions of Nova Hut and IFC breached Kaiser International's warranty rights with regard to the letter of credit.

51.    IFC controlled and directed Nova Hut's wrongful draw for IFC's benefit. IFC is liable for the breach of warranty to the same extent as Nova Hut.

52.    As a result of this breach of warranty, Kaiser International is entitled to recover damages in the amount of $11.1 million collateral for the letter of credit, the $33,341.96 in bank administrative/processing fees, plus interest.

53.    Despite Debtors' repeated demands, Nova Hut and IFC have refused to pay these amounts.

**DEBTORS' SECOND CLAIM:**
**BREACH OF CONTRACT I (LETTER OF CREDIT)**
**AGAINST NOVA HUT AND IFC**

54.    Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

55.    Debtor Kaiser International possessed an agreement with Nova Hut that it would establish the letter of credit on behalf of Kaiser Netherlands. Kaiser International performed its obligations under this agreement by providing all of the cash collateral required for the $11.1 million letter of credit.

56.    Debtor Kaiser International possessed an agreement with Nova Hut and IFC that Nova Hut would not draw on the letter of credit if Kaiser International extended the letter of credit before it expired on March 7, 2001. Kaiser International relied to its detriment on the representations and promises of Nova Hut and IFC. Kaiser International performed its obligations under the agreement by extending the letter of credit on February 16, 2001.

57.    Nova Hut and IFC breached Kaiser International's contractual rights by wrongfully drawing on the $11.1 million letter of credit.

58.    As a result of the successful completion of the four-week integrated production performance test and the extension of the letter of credit before it expired on March 7, 2001, Debtors are entitled to the return of their $11.1 million collateral for the letter of credit, the $33,341.96 in bank administrative/processing fees charged to Debtors as a result of the wrongful draw on the letter of credit, and interest on the above amounts.

59.    Despite Debtors' repeated demands, Nova Hut and IFC have refused to pay these amounts.

**DEBTORS' THIRD CLAIM:**
**BREACH OF CONTRACT II (LETTER OF INTENT)**
**AGAINST NOVA HUT**

60.    Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

61.    Nova Hut owes Kaiser Engineers $510,000 in connection with the engineering and financial services performed by Kaiser Engineers pursuant to the Letter of Intent for engineering and financial services and the Purchase Order for interim engineering services.

62.    As a result of this breach, Kaiser Engineers has been damaged in the amount of $510,000 plus interest.

63.    Despite Debtors' repeated demands, Nova Hut has refused to pay this amount.

### DEBTORS' FOURTH CLAIM:
### BREACH OF CONTRACT III (MEMORANDUM OF UNDERSTANDING)
### AGAINST NOVA HUT

64.    Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

65.    Pursuant to the agreement of the parties, Nova Hut owes Kaiser International a $3.5 million contingency fee payment based upon successful completion of preliminary acceptance under the Phase 1 contract. In addition, Nova Hut owes Kaiser International $1.75 million in connection with the release of the warranty reserve.

66.    Nova Hut's termination of the Agreement relieves Kaiser Netherlands of its warranty obligations. Accordingly, Kaiser International is entitled to the release of the warranty reserve in the amount of $1.75 million.

67.    As a result of this breach, Kaiser International has been damaged in the amount of $5.25 million plus interest.

68.    Despite Debtors' repeated demands, Nova Hut has refused to pay this amount.

### DEBTORS' FIFTH CLAIM:
### UNJUST ENRICHMENT I (LETTER OF CREDIT)
### AGAINST NOVA HUT AND IFC

69.    Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

70.    In the event that there is no adequate remedy at law for Debtor Kaiser International on its first breach of contract claim (paragraphs 54 to 59), Debtor Kaiser International is entitled, in the alternative, to restitution for the $11.1 million, plus interest, in benefits that it has conferred on Nova Hut and IFC.

71.    Nova Hut's wrongful draw on the letter of credit benefited Nova Hut for $11.1 million and correspondingly impoverished Kaiser by $11,133,341.96.  Nova Hut's draw on the letter of credit in the circumstances stated above is improper, without justification, and contrary to principles of justice and equity.

72.    IFC directed, authorized, and controlled Nova Hut's wrongful draw on the letter of credit.  IFC directly benefited from Nova Hut's wrongful draw on the $11.1 million letter of credit for the first, second, and fourth reasons, among others, set forth in paragraph 42 above. Nova Hut's draw has directly impoverished Kaiser International by $11,133,341.96.  IFC was on notice that Kaiser International reasonably expected that the $11.1 million be returned to Kaiser International.

73.    Despite Debtors' repeated demands, Nova Hut and IFC have refused to pay restitution.

### DEBTORS' SIXTH CLAIM:
### UNJUST ENRICHMENT II (ENGINEERING AND FINANCIAL SERVICES) AGAINST NOVA HUT AND IFC

74.    Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

75.    In the event that there is no adequate remedy at law for Debtors on its second breach of contract claim (paragraphs 60 to 63), Debtors are entitled, in the alternative, to restitution for the engineering and financial services conferred on Nova Hut and IFC.

76.    As set forth above, Debtor Kaiser Engineers' services benefited Nova Hut by providing it with engineering and financial services worth $510,000, and correspondingly impoverished Kaiser Engineers' in an amount to be determined by this Court.  Nova Hut's

failure to pay Debtors is improper, without justification, and contrary to principles of justice and equity.

77.     IFC directly benefited from the engineering and financial services that Debtor Kaiser Engineers provided to Nova Hut for the second to fourth reasons, among others, set forth in paragraph 42 above. This benefit correspondingly impoverished Debtors in an amount to be determined by this Court. IFC was on notice that Debtor Kaiser Engineers reasonably expected payment for the engineering and financial services rendered to Nova Hut.

78.     Despite Debtors' repeated demands, Nova Hut and IFC have refused to pay restitution.

## DEBTORS' SEVENTH CLAIM:
## UNJUST ENRICHMENT III
## (ENGINEERING AND CONSTRUCTION GOODS AND SERVICES)
## AGAINST NOVA HUT AND IFC

79.     Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

80.     In the event that there is no adequate remedy at law for Debtor Kaiser International on its third breach of contract claim (paragraphs 64 to 68), Debtor Kaiser International is entitled, in the alternative, to restitution for the $5.25 million in engineering and construction goods and services (which consists of $3.5 million in contingency fee payment and $1.75 million for release of the warranty reserve), plus interest, that it has conferred on Nova Hut and IFC.

81.     As set forth above, Kaiser International benefited Nova Hut by providing it with $5.25 million in goods and services, plus interest, and correspondingly impoverished Kaiser International in an amount to be determined by this Court. Nova Hut's failure to pay Kaiser

International in these circumstances is improper, without justification, and contrary to principles of justice and equity.

82.    IFC directly benefited from the $5.25 million, plus interest, that Kaiser International provided to Nova Hut for the second to fourth reasons, among others, set forth in paragraph 42 above. IFC was on notice that Kaiser Engineers reasonably expected that it be fully paid for the engineering and financial services rendered to Nova Hut. This benefit correspondingly impoverished Kaiser Engineers' in an amount to be determined by this Court.

83.    Despite Debtors' repeated demands, Nova Hut and IFC have refused to pay restitution.

**DEBTORS' EIGHTH CLAIM:**
**QUANTUM MERUIT I (LETTER OF CREDIT)**
**AGAINST NOVA HUT AND IFC**

84.    Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

85.    In the event that there is no adequate remedy at law for Debtor Kaiser International on its first breach of contract or first unjust enrichment claims (paragraphs 54 to 59 and 69 to 73), Debtor Kaiser International is entitled, in the alternative, to payment in quantum meruit for the $11.1 million, plus interest, in benefits that it has conferred on Nova Hut and IFC.

86.    As set forth above, Nova Hut's draw on the letter of credit benefited Nova Hut for $11.1 million (plus the interest it has earned on that $11.1 million). Nova Hut's draw was wrongful, and Nova Hut was not entitled to this benefit. Nova Hut's continued enjoyment of this $11.1 million would be inequitable and detrimental to Debtor Kaiser International.

87.    Nova Hut's draw on the letter of credit, which was authorized by IFC, directly benefits IFC for the first, second and fourth reasons, among others, set forth in paragraph 42

above. IFC's continued enjoyment of any or all of this $11.1 million is inequitable and detrimental to Debtor Kaiser International.

88.    Despite Debtors' repeated demands, Nova Hut and IFC have refused to pay restitution.

**DEBTORS' NINTH CLAIM:**
**QUANTUM MERUIT II (ENGINEERING AND FINANCIAL SERVICES)**
**AGAINST NOVA HUT AND IFC**

89.    Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

90.    In the event that there is no adequate remedy at law for Kaiser Engineers on its second breach of contract or second unjust enrichment claims (paragraphs 60 to 63 and 74 to 78), Kaiser Engineers is entitled, in the alternative, to payment in quantum meruit for the engineering and financial services and benefits that it conferred on Nova Hut and IFC.

91.    As set forth above, Kaiser Engineers provided Nova Hut with engineering and financial services. By providing these services to build a new, world-class steel mill for Nova Hut that is currently producing steel for sale on the world market, Kaiser Engineers has conferred a substantial benefit on Nova Hut. Nova Hut was on notice that Kaiser Engineers reasonably expected to be paid for these engineering and financial services. Nova Hut was not entitled to this benefit without payment therefor. Nova Hut's continued enjoyment of these engineering and financial services without payment for them would be inequitable and detrimental to Debtor Kaiser Engineers.

92.    IFC directly benefited from Kaiser Engineers' engineering and financial services for the second to fourth reasons, among others, set forth in paragraph 42 above. IFC is not entitled to any or all of these monies or to the mill itself. IFC's continued enjoyment of any or

all of these monies or the mill itself is inequitable and detrimental to Debtor Kaiser International. Moreover, IFC's cooperation, direction and control of Nova Hut in its refusal to pay for the engineering and financial services is inequitable and detrimental to Debtor Kaiser Engineers.

93.    Despite Debtors' repeated demands, Nova Hut and IFC have refused to pay restitution.

### DEBTORS' TENTH CLAIM:
### QUANTUM MERUIT III
### (ENGINEERING AND CONSTRUCTION GOODS AND SERVICES)
### AGAINST NOVA HUT AND IFC

94.    Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

95.    In the event that there is no adequate remedy at law for Debtor Kaiser International on its third breach of contract or third unjust enrichment claims (paragraphs 64 to 68 and 79 to 83), Debtor Kaiser International is entitled, in the alternative, to payment in quantum meruit for the engineering and construction goods and services that it has conferred on Nova Hut and IFC.

96.    As set forth above, Kaiser International provided Nova Hut with engineering and construction goods and services. By providing the goods and services to build a new, world-class steel mill for Nova Hut that is currently producing steel for sale on the world market, Kaiser Engineers has conferred a substantial benefit on Nova Hut. Nova Hut was on notice that Kaiser International reasonably expected to be paid for these engineering and construction goods and services. Nova Hut was not entitled to this benefit without payment therefor. Nova Hut's continued enjoyment of these engineering and construction goods and services without payment for them would be inequitable and detrimental to Debtor Kaiser International.

97.     IFC directly benefited from Kaiser International's engineering and construction goods and services for the second to fourth reasons, among others, set forth in paragraph 42 above. IFC is not entitled to any or all of these monies or to the mill itself. IFC's continued enjoyment of any or all of these monies or the mill itself is inequitable and detrimental to Debtor Kaiser International. Moreover, IFC's cooperation, direction and control of Nova Hut in its refusal to pay for the engineering and construction goods and services is inequitable and detrimental to Debtor Kaiser International.

98.     Despite Debtors' repeated demands, Nova Hut and IFC have refused to pay restitution.

## DEBTORS' ELEVENTH CLAIM:
## TORTIOUS INTERFERENCE WITH CONTRACT AGAINST IFC

99.     Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

100.    In the event that the Court finds that Kaiser International or Kaiser Engineers possessed a contract with Nova Hut, Debtors are entitled, in the alternative, to damages from IFC for tortious interference with contract.

101.    IFC knew and knows of the existence of the Kaiser International's contracts, which include (a) the Guaranty, (b) the $11.1 million letter of credit, and (c) the Memorandum of Understanding.

102.    IFC knew and knows of the existence of Kaiser Engineers' contract with Nova Hut.

103.    By reason of its actions as alleged herein, IFC has intentionally, wrongfully, improperly and tortiously interfered with Kaiser International's and Kaiser Engineers' contracts

set forth above. IFC's means and methods included, *inter alia*, the use of intimidation, threat, misrepresentation, deceit, overreaching, and undue influence, and were in willful disregard of Kaiser International's rights and interests.

104.    Absent IFC's intentional, wrongful and improper interference and misconduct, Nova Hut would not have (i) refused Final Acceptance, (ii) wrongfully drawn on the $11.1 million letter of credit, (iii) refused the payments rightfully due Kaiser Engineers in the amount of $510,000 pursuant to the Letter of Intent, or (iv) refused the payments rightfully due Kaiser International in the amount of $5.25 million pursuant to the Memorandum of Understanding, and Debtors would have realized their expectancy.

105.    IFC's tortious interference with Kaiser International's and Kaiser Engineering's contracts with Nova Hut has caused damage to them in an amount to be determined.

### DEBTORS' TWELFTH CLAIM:
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### AND PROSPECTIVE ECONOMIC ADVANTAGE AGAINST IFC

106.    Debtors incorporate the allegations in paragraphs 1 through 45 of this Third Amended Complaint.

107.    In the event that the Court finds that Kaiser International and/or Kaiser Engineers did not possess an enforceable contract with Nova Hut, Debtors are entitled, in the alternative, to damages from IFC for tortious interference with business relations and prospective economic advantage.

108.    Debtors Kaiser International and Kaiser Engineers possessed business relationships with Nova Hut. These business relationships were independent of any business relationships between Kaiser Netherlands and Nova Hut.

109.    Debtor Kaiser International's business relationship with Nova Hut consisted of (a) the Guaranty, (b) the $11.1 million letter of credit, (c) the provision of engineering and construction goods and services to Nova Hut, and (d) all other elements that comprise the business relationship between Kaiser International and Nova Hut.

110.    Debtor Kaiser Engineers' business relationship with Nova Hut consisted of (a) the provision of engineering and financial services to Nova Hut, and (b) all other elements that comprise the business relationship between Kaiser Engineers and Nova Hut.

111.    Debtors Kaiser International and Kaiser Engineers enjoyed a prospective economic advantage as a result of their business relationships with Nova Hut.

112.    IFC knew about the business relationship between Kaiser International and Nova Hut as well as the prospective economic advantage that Kaiser International would enjoy as a result of the business relationship between Kaiser International and Nova Hut. Likewise, IFC knew about the business relationship between Kaiser Engineers and Nova Hut as well as the prospective economic advantage that Kaiser Engineers would enjoy as a result of the business relationship between Kaiser Engineers and Nova Hut.

113.    Since approximately November 2000, IFC intentionally, wrongfully and improperly interfered with the relationships between Debtors and Nova Hut, such that it induced or caused a breach of the relationship between them, and intentionally, wrongfully and improperly interfered with the monies that Kaiser International would have received from the $11.1 million letter of credit, the payments for engineering and financial services due Kaiser Engineers, and the payments for construction and engineering goods and services due Kaiser International. Kaiser International and Kaiser Engineers reasonably expected payment for these amounts.

114. IFC specifically intended to cause the breach of the relationships and utilized improper means and methods in accomplishing this objective. IFC's means and methods included, *inter alia*, the use of threat, intimidation, misrepresentation, deceit, duress, overreaching, and undue influence, and were in willful disregard of Debtors' rights and interests.

115. Absent IFC's intentional, wrongful and improper interference and misconduct, Debtors would have realized their expectancy, and Kaiser International would have received the return of the collateral for the $11.1 million letter of credit, payments for engineering and financial services due Kaiser Engineers, and the payments for construction and engineering goods and services due Kaiser International.

116. IFC's tortious interference with Kaiser Engineers' and Kaiser International's business relations and prospective economic advantage has caused damage to them in an amount to be determined.

## PRAYER AND REQUEST FOR RELIEF

WHEREFORE, for the reasons set forth above, Debtors request that the Court award them a judgment against Nova Hut and IFC jointly and severally for the following relief:

    (1)    an accounting of the whereabouts of the proceeds from the $11.1 million letter of credit;

    (2)    restitution for $11,133,341.91 for the wrongful draw on the $11.1 million letter of credit;

    (3)    payment for engineering and financial services in the amount of $510,000;

    (4)    payment for engineering and construction goods and services in the amount of $5.25 million;

    (5)    alternatively to (1) through (4), an order requiring Nova Hut and IFC to make restitution in an amount to be determined by the Court;

    (6)    from IFC, damages for tortious interference with contract, or, alternatively, damages for tortious interference with business relations and business expectancy;

    (7)    punitive damages in an amount to be determined and as permitted by law;

    (8)    pre- and post-judgment interest as provided by law;

    (9)    reasonable attorneys' fees, costs and expenses of this action; and

(10)  such other and further relief, including injunctive and equitable relief, as the

Court may deem just and proper.

Mark Minuti (No. 2659)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899
(302) 421-6840

-and-

George E. Rahn, Jr.
**SAUL EWING LLP**
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7165

-and-

William J. Perlstein
Joseph E. Killory, Jr.
Joseph R. Profaizer
**WILMER, CUTLER & PICKERING**
2445 M Street, N.W.
Washington, D.C.  20037-1420
(202) 663-6000

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

Dated:  October 21, 2002

465856.1 10/21/02                    -27-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KAISER GROUP INTERNATIONAL, | ) | |
| INC., et al., | ) | Case Nos. 00-2263 to 00-2301 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| KAISER GROUP INTERNATIONAL, | ) | |
| INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 01-928 (MFW) |
| | ) | |
| NOVA HUT, a.s. and | ) | |
| INTERNATIONAL FINANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Mark Minuti, Esquire, hereby certify that on October 21, 2002, I caused a copy of the

attached **Debtors' Third Amended Complaint Against Nova Hut, a.s. And International**

**Finance Corporation** to be served on the attached service list in the manner indicated.

Mark Minuti (No. 2659)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840

465856.1 10/21/02

KAISER GROUP INTERNATIONAL, INC., *et al.* v. NOVA HUT, *et al.*
2002 Service List

**Via Hand Delivery:**
Scott D. Cousins, Esquire
William E. Chipman, Esquire
Greenberg Traurig, LLP
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801

Robert J. Stearn, Jr., Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

John G. Harris, Esquire
Reed Smith LLP
1201 Market Street, 15th Floor
Wilmington, DE 19801-0195

**Via Federal Express:**
Adam D. Cole, Esquire
Greenberg Traurig, LLP
885 Third Avenue
New York, NY 10022

Warren E. Zirkle, Esquire
J.L. Novak, Esquire
McGuire Woods LLP
1750 Tysons Blvd., Suite 1800
McLean, VA 22102

{SystemName}                                  https://ecf.deb.uscourts.gov/cgi-bin/Dispatch.pl?891746002197266

## Complaint/Summons:

01-00928-MFW KAISER GROUP INTERNATIONAL, INC., ET AL. et al v. NOVA HUT, A.S. et al

Warning: The transaction you submitted has already been accepted and posted by this system. If your original submission contained an error, you must contact the court for further instructions on how to void it. If this submission was inadvertently submitted (clicking on the Next link on the previous page twice), you may find details about your original submission by viewing your transaction log. Additional information follows:

| Transaction Id | 622899 |
|---|---|
| Date/Time of Submission | 2002-10-21 15:44:17 |
| User Name | **Minuti, Mark** |
| Case Number | 1-928 |
| Document Number | 146 |
| Text | Amended Complaint *Debtors' Third Amended Complaint Against Nova Hut, a.s. And International Finance Corporation* Filed by KAISER GROUP INTERNATIONAL, INC., ET AL.. (Attachments: # (1) Certificate of Service) (Minuti, Mark) |

# Exhibit "B"

Portions of Hearing Transcript

565

Pages 565 - 623

INTERNATIONAL ARBITRATION

INTERNATIONAL CHAMBER OF COMMERCE

No 13101/EC

KAISER NETHERLANDS BV (The Netherlands)

Claimant
Counter-respondent

vs.

ISPAT NOVA HUT AS (Czech Republic)

Respondent
Counter-claimant

The Arbitral Tribunal

Professor Gabrielle Kaufmann-Kohler  -  President

Dr Johannes Hock                -  Co-Arbitrator

Dr Anton Baier                  -  Co-Arbitrator

M I N U T E S

12 - 15 September 2005

Vienna, Austria

Transcript by Ms Robyn Nott ACR MBIVR,
BRIAULT REPORTING SERVICES, Elton House,
Headley Road, Epsom, Surrey, KT18 6BL, England.
Tele: (44) 1372 278401    Fax: (44) 1372 279239

Page 620

1   this and we need to address it in the award to
2   make sure that it is the same company or it is the
3   company that has the liabilities and the rights
4   that arise out of the contract.
5        For that point I would say you should
6   submit documents as an exception to the general
7   rule there will be no further documents with the
8   post-hearing briefs. I believe that be good if
9   that could be noted.
10       MR GARAUD: If it is merely a change
11  name, that we state that at the beginning of the
12  post-hearing briefs?
13       THE PRESIDENT: We would take an extract
14  from the commercial register.
15       There is another question on this claim
16  of the project development costs or deferred
17  payments of 510,000 USD. In the Terms of
18  Reference you have raised a jurisdictional defence
19  for this claim. It seems to us, unless we missed
20  something, that you have not repeated the
21  jurisdictional objection but you have argued the
22  merits in the Briefs. We understand that you have
23  dropped the jurisdictional defence, or you have
24  not dropped it but we need to know whether we need
25  to rule on it or not.

Page 621

1        One issue that is often not covered is
2   interest for late payment. The rate is given by
3   the contract. We do not know, and I do not
4   believe you have addressed this, is this meant to
5   be compound interest or not, just to make sure we
6   cover that.
7        Another similar issue, which I believe
8   you have both addressed with respect to certain,
9   claims is if amounts were to be awarded to both
10  sides -- and I am not pre-judging, I do not know
11  right now but let us assume this would happen --
12  would you expect the Tribunal to set-off the
13  amounts and award a net amount, or would you not
14  and what would the applicable rules be? This will
15  be governed by Austrian law as the law that
16  governs the two claims.
17       As I mentioned before, no new evidence,
18  no new documents except for the name change or
19  identity issue. That is for the post-hearing
20  briefs.
21       Subject to the post-hearing briefs, we
22  would now close the evidentiary proceedings and no
23  further submissions. The Tribunal will deliberate
24  as soon as we have your second brief. Because it
25  can arise that in the course of the deliberation

Kaiser Netherlands and Ispat Nova Hut     Multi-Page™  ICC Case No: 13101/EC, 15 September 05

Page 622

1   we realise that we are missing some information or
2   some evidence, then we would come back to you and
3   re-open but as a rule we do not think that will be
4   necessary and we will proceed to deliberate and
5   prepare an award.
6          Now we try to draw a schedule among the
7   Tribunal members to see how can we can proceed.
8   We hope, subject to unforeseen circumstances
9   because you never know happens in life, that by
10  the end of January or early February we would be
11  able to file an award with the ICC. Afterwards
12  the timing is not under our control any more.
13  That gives you a broad timeframe when to expect a
14  decision.
15         Your costs submissions, that is
16  attorneys fees and all other costs that you want
17  to claim in the arbitration, should be submitted
18  with the second Reply Brief.
19         MR GARAUD: A short time period to
20  comment possibly, if any?  It is usually not the
21  case.
22         THE PRESIDENT: It is better to submit
23  it with the second Brief.  You can have a week to
24  comment simultaneously on both sides.
25         That is what the Tribunal had to tell

3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KAISER GROUP INTERNATIONAL, | ) | |
| INC., *et al.*, | ) | Case Nos. 00-2263 to 00-2301 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| KAISER INTERNATIONAL, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 01-928 (MFW) |
| | ) | |
| INTERNATIONAL FINANCE | ) | |
| CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATION OF COUNSEL
## PURSUANT TO DEL BANKR. LR 2004-1(b)

I, Mark Minuti, counsel to Kaiser Group International, Inc., et al. (the "Debtors") hereby certify as follows:

1.     On January 25, 2007, the Debtors filed the Debtors' Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004, or Alternatively a Bill of Equitable Discovery, Directing Examination of, and Production of Documents by the International Finance Corporation, Nova Hut, and Related Parties (the "Motion"). By the Motion, the Debtors seek Court authority to obtain discovery from the International Finance Corporation (the "IFC"), Mittal Steel Ostrava, a.s. (formerly Nova Hut, a.s.)("Nova Hut") and related parties.

2.     Prior to filing the Motion, on January 23, 2007, counsel for the Debtors spoke to counsel for the IFC and Nova Hut to inquire into whether the IFC and Nova Hut would consent to the discovery sought by the Motion.

    3.    The IFC declined to consent to the discovery sought by the Motion. As of the date of this certification, Nova Hut's counsel has not responded to the Debtors' counsel's request that Nova Hut consent to the requested discovery.


Mark Minuti (No. 2659)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P. O. Box 1266
Wilmington, DE 19899
(302) 421-6840

Attorneys for Debtors and Debtors-in-Possession

Dated: January 25, 2007

# EXHIBIT 3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| KAISER GROUP INTERNATIONAL, INC., *et al.*, | : | Case No. 00-2263 (MFW) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Related to Docket No. 1941 |
| | : | |
| KAISER INTERNATIONAL, INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Adv. No. 01-928 (MFW) |
| | : | |
| NOVA HUT a.s. and INTERNATIONAL FINANCE CORPORATION, | : | |
| | : | |
| | : | Related to Docket Nos. 281, 282, 283, 299, |
| Defendants. | : | 303, 304, 305, 306 and 310 |

## ORDER DENYING DEBTORS' MOTION FOR AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004, OR ALTERNATIVELY A BILL OF EQUITABLE DISCOVERY, DIRECTING EXAMINATION OF, AND PRODUCTION OF DOCUMENTS BY THE INTERNATIONAL FINANCE CORPORATION, NOVA HUT, AND RELATED PARTIES

AND NOW, this 31st day of May 2007, the Court having considered the Debtors' Motion for an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004, or Alternatively a Bill of Equitable Discovery, Directing Examination of, and Production of Documents by the International Finance Corporation, Nova Hut, and Related Parties (the "Motion"), the oppositions (the "Oppositions") to the Motion filed by the International Finance Corporation and Mittal Steel Ostrava, a.s. (formerly Nova Hut, a.s.), and the additional pleadings and declarations filed in connection with the Motion and Oppositions; and the Court having conducted a hearing (the "Hearing") on the Motion on April 25, 2007; and the Court finding that good and sufficient notice of the Motion having been given; and the Court otherwise being fully advised in the

547196 1 5/30/07

premises; it is HEREBY ORDERED that the Motion is DENIED for the reasons set forth on the

record at the Hearing.

HONORABLE MARY WALRATH
UNITED STATES BANKRUPTCY JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March, 2008 a true copy of International Finance Corporation's Opposition To Debtors' Motion For Leave To Supplement The Record Or, Alternatively, To Remand The Case To The Bankruptcy Court For Reconsideration Based On Newly Discovered Evidence Pursuant To Rule 60(b)(2), was served upon counsel in the manner indicated:

### VIA HAND DELIVERY:

Mark Minuti
Saul Ewing, LLP
222 Delaware Avenue, Suite 1200
P. O. Box 1266
Wilmington, Delaware 19899-1266

David L. Buchbinder
Office of the U.S. Trustee
J. Caleb Boggs Federal Bldg.
844 King Street, Suite 2207
Wilmington, DE 19801

Victoria Counihan
Greenberg Traurig, LLP
1007 N. Orange Street, Suite 1200
Wilmington, Delaware 19801

### VIA FEDERAL EXPRESS:

George E. Rahn, Jr.
Saul Ewing, LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102

Adam Cole
Greenberg Traurig, LLP
200 Park Avenue
Met Life Bldg.
New York, NY 10166

Jonathan M. Landers
Gibson, Dunn & Crutcher
200 Park Avenue
New York, NY 10166

Robert J. Stern, Jr. (No. 2915)